IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CRETE CARRIER CORP.<br>400 NW 56th Street<br>Lincoln, NE 68528 | *<br><br>* | |
| Plaintiff | * | Civil Action No.: |
| v | * | |
| SULLIVAN & SONS, INC. d/b/a/<br>SULLIVAN'S GARAGE<br>7318 Golden Ring Road<br>Baltimore, MD 21221 | *<br><br>*<br><br>* | |
| Serve on: | * | |
| RONALD W. PARKER, ESQ.<br>11450 Pulaski Highway<br>White Marsh, MD 21162<br>*Resident Agent* | *<br><br>*<br><br>* | |
| Defendant | | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## COMPLAINT

Plaintiff, Crete Carrier Corp. (hereinafter "Crete"), by and through its undersigned attorneys, Tamara B. Goorevitz, Renee L. Bowen, James K. Hetzel and FRANKLIN & PROKOPIK, P.C., pursuant to Federal Rules of Civil Procedure 64 and 65, hereby files this Complaint against Defendant Sullivan & Sons, Inc. d/b/a Defendant Sullivan's Garage (hereinafter "Defendant"), and states:

## PARTIES

1. Crete is a business incorporated under the laws of Iowa with its principal place of business located at 400 NW 56th St., Lincoln, NE 68528.

2. Crete is a motor carrier properly licensed and authorized by the Federal Motor Carrier Safety Administration to provide transportation services in interstate commerce for its

customers throughout the United States.

3. Defendant is a Maryland corporation with its principal place of business located at 7318 Golden Ring Road, Baltimore, Maryland, 21221.

4. Defendant is in the business of providing towing and recovery services in both interstate and intrastate commerce. Through its provision of towing and recovery services, even if rendered solely intrastate, Defendant's services directly affect interstate commerce by regularly and routinely providing services to and on commercial motor vehicles that are engaged in interstate commerce.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this claim pursuant to 28 U.S.C. § 1332(a)(1) as there is complete diversity among the parties and the amount in controversy exceeds $75,000.

6. This Court has jurisdiction over the federal claims asserted herein pursuant to 28 U.S.C. § 1331 as the claims arise out of violations of laws of the United States. This Court has jurisdiction under the state claims asserted herein pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b) as the events giving rise to the case *sub judice* took place in Maryland.

## FACTS COMMON TO ALL COUNTS

8. On August 28, 2020, an employee and/or agent of Crete was operating a tractor trailer owned by Crete ("the Vehicle") transporting cargo ("the Load") from CG Sports in Linden, New Jersey to Variety Wholesale in Henderson, North Carolina to deliver the Load pursuant to a contract between Crete and its customer.

9. Pursuant to the contract between Crete and its customer, Crete was to deliver the Load on August 28, 2020.

10. While traveling though Maryland, Crete's employee and/or agent was involved in a single-vehicle accident on I-95 SB at or near Joppa, Maryland ("the Accident").

11. As a result of the Accident, the Maryland State Police ("MSP") were called to the scene to investigate and assist with clearing the scene.

12. The MSP, to assist in its duties of clearing motor vehicle accidents from state highways, maintains a list of towing companies that are authorized by the MSP to perform towing and recovery services at MSP's request. When there is a motor vehicle accident that requires towing and recovery, the MSP selects a towing company from its preapproved list to perform the necessary towing and recovery services. These are referred to as "nonconsensual tows."

13. Defendant is, and at all times pertinent was, one of the approved towing companies on the MSP list and authorized to perform nonconsensual towing and recovery services at the request and direction of the MSP. Upon information and belief, Defendant is also an approved towing company on the preapproved list of other law enforcement agencies throughout the state of Maryland to perform nonconsensual tows at the direction of those law enforcement agencies.

14. Following the Accident, the MSP engaged Defendant to perform the towing and recovery services related to the Vehicle and the Load. Neither Crete nor any of its employees or agents requested, engaged, and/or directed Defendant to perform any towing and recovery services following the Accident.

15. Defendant performed the towing and recovery services following the Accident at the request of the MSP, which services included removing the Vehicle and the Load from the roadway and transporting the Vehicle and the Load to Defendant's tow yard.

16. Thereafter, Defendant issued an invoice to Crete, invoice number 520803442, in the amount of $141,975,000 (the "Invoice") for the services rendered following the Accident. *See* Invoice attached and incorporated as **Exhibit A**. Defendant arrived at the amount on the Invoice by charging Crete for Defendant's services on a "per pound" basis based on the weight of the Vehicle and Defendant's incorrect assumption as to the weight of the Load. *Id.*

17. Historically, charges for towing and recovery services have been charged on an hourly basis based on the type of equipment necessary to perform the services. The practice of charging by the hour has been, and is, the accepted industry standard for towing and recovery services involving commercial motor vehicles both for nonconsensual tows and tows performed at the request of the owner or operator of a vehicle alike.

18. The Invoice, by charging for the services rendered by the pound, conflicts with accepted and well-known industry standards.

19. Despite the well settled industry standard of charging for towing and recovery services by the hour, in or about March 2020, Defendant and other towing companies on the MSP and other law enforcement agencies' approved towing lists improperly conspired and agreed to charge for nonconsensual tows by the pound, not by the hour, for the sole and improper purpose of artificially inflating the charges for services associated with nonconsensual tows. Defendant and its co-conspirators, with knowledge that this shift in billing practice was improper and went against accepted industry standards, willingly and intentionally conspired and agreed to the shift in billing practices to fix the price and manner under which nonconsensual tows are performed and eliminate competition in the market.

20. The industry standard of charging by the hour for the necessary labor and equipment bears a relationship to the actual amount of work, *i.e.* the time and man power, required

to perform the services, whereas charging based on the weight of a vehicle and cargo bears absolutely no relationship to the time or man power required to perform the services. By charging per pound based on the weight of vehicle and cargo, Defendant and its co-conspirators have been able to exponentially increase the charges for the services and simultaneously eliminate competition in the marketplace for the services.

21. Before Defendant and its co-conspirators conspired and agreed to shift to per pound billing, Defendant's practice, consistent with acceptable industry standards, was to charge by the hour. Less than a year prior to the Accident, Defendant issued an invoice in the amount of $24,559.00 based on hourly billing for the same and/or similar services for a nonconsensual tow of a commercial vehicle as those that Defendant rendered following the Accident. The conspiracy and agreement between Defendant and its co-conspirators to fix prices has resulted in Defendant and its co-conspirators charging six times the accepted industry standard amount for their services. *See* Prior invoice attached and incorporated as **Exhibit B**.

22. Upon receipt of the Invoice, Crete objected to the charges as unreasonable, excessive, and a deviation from accepted industry standards. At the same time, Crete demanded that Defendant release the Load and the Vehicle to Crete and that Defendant cease assessment of any additional storage and/or other charges.

23. Despite Crete's demand for return of its Vehicle and the Load, Defendant refused to return the Vehicle and Load to Crete and continued to assess storage charges associated with Defendant's retention of Crete's property, advising Crete that Defendant would not return the Vehicle and the Load until Crete paid the full amount of the Invoice.

24. Thereafter, Crete again objected to the Invoice, continued assessment of storage charges, and Defendant's continued detention of the Load and the Vehicle. In doing so, Crete

again demanded that Defendant release the Load and the Vehicle. Defendant again refused to release the Load and Vehicle unless and until Crete pays the full amount of the excessive Invoice.

25. Defendant knows that there is no legal authority under which it can hold the Vehicle and the Load in the case of a nonconsensual tow after Crete has demanded its return. Defendant, with knowledge that its conduct violates applicable law, has nevertheless continued to hold the Vehicle and the Load as a bargaining chip to secure payment of the excessive and improper charges in the Invoice.

26. Defendant has repeatedly refused to return the Vehicle and the Load to Crete, despite repeated demand for return by Crete, and, as of the date of this filing, Defendant continues to illegally hold Crete's Vehicle and Load as security for payment of the Invoice.

27. Defendant's continued retention of the Vehicle and Load is intentional, without justification, constitutes a conversion of Crete's property, and is intended to cause harm to Crete in its lawful business.

28. Defendant's retention of Crete's Vehicle and Load resulted in a breach of the contract between Crete and its customer, resulting in harm to Crete in its business relationship with its customer and has caused Crete's customer to present a cargo claim to Crete for the value of the Load illegally held by Defendant.

29. During the time that Defendant has illegally retained Crete's Vehicle and Load, Crete has suffered economic damages in the form of loss of use, lost profits, and lost revenue, as Crete has been deprived of its ability to generate revenue through operation of the Vehicle in its business. Crete will continue to incur damages for loss of use, lost profits, and lost revenue into the future until the time that Defendant returns the Vehicle and the Load.

30. Crete has also incurred attorney's fees, costs, and expenses associated with Defendant's unlawful conduct and will continue to incur attorney's fees, costs, and expenses associated with Defendant's unlawful conduct into the future.

## COUNT I- REPLEVIN

31. Crete incorporates paragraphs 1- 30 of its Complaint as if fully set forth herein.

32. The Load and Vehicle were valued at approximately $50,000 and $144,152.90, respectively, at the time of the Accident.

33. Crete has repeatedly demanded that Defendant return the Vehicle and the Load.

34. Despite Crete's repeated demands for return of the Vehicle and the Load, Defendant continues to improperly detain Crete's property and exercise control over same.

35. Defendant has no legal right to possession of or to exercise control over the Vehicle or the Load.

**WHEREFORE**, for the foregoing reasons, Plaintiff, Crete Carrier, Corp, respectfully requests this Honorable Court schedule a hearing with prior notice to Defendant to determine whether a writ of replevin should be issued for immediate seizure and delivery of the property to Crete Carrier Corp, and Crete Carrier Corp. demands judgment against Defendant for damages for Defendant's for the continued detention of the property in excess of Seventy-Five Thousand Dollars ($75,000.00), plus attorneys' fees, interest and costs.

## COUNT II- INJUNCTIVE RELIEF (PRELIMINARY AND PERMANENT)

36. Crete hereby incorporates Paragraphs 1-35 of its Complaint as if fully set forth herein.

37. Defendant's improper conduct in commandeering Crete's property and refusing to release the property unless Crete pays an excessive and unreasonable amount has caused, and continues to cause, substantial harm to Crete in its business and in its relationship to its customers.

38. There is a strong likelihood that Crete will prevail on the claims asserted in this Complaint.

39. Despite notice of Crete's objections to the Invoice, and despite Defendant's knowledge that its charges are unreasonable, excessive, and fraudulent, Defendant continues to hold Crete's Vehicle and Load and refuses to return same to Crete in violation of all applicable state and federal laws.

40. As a direct and proximate result of Defendant's past and continuing conduct, Crete has suffered, continues to suffer, and will suffer in the future, substantial and irreparable harm to its business for which there is no adequate compensation by monetary damages.

41. Unless immediately enjoined from (i) the continued improper detention of the Load and the Vehicle, (ii) continued assessment of storage charges, and (iii) continued pursuit of the excessive and unreasonable charges in the Invoice, Defendant's conduct will result in further substantial and irreparable injury to Crete, as Crete's business relationship with its customer is deteriorating as a result of Defendant's illegal actions with each day that Defendant illegally holds the Vehicle and Load and, without immediate Court intervention, will deteriorate beyond repair.

42. The benefits of Crete obtaining injunctive relief are equal to or outweigh the potential harm which Defendant would incur should this Honorable Court grant the requested injunctive relief.

43. The public interest is best served by granting the requested injunctive relief.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter an order granting Crete a preliminary and a permanent injunction (a) requiring Defendant to immediately release the Vehicle and Load into Crete's possession; (b) enjoining Defendant from charging and pursuing collection of the Invoice as excessive and unreasonable; and (c) enjoining Defendant from engaging in deceptive and fraudulent business practices related to excessive and unreasonable charges for its services. Crete further requests that it be awarded its reasonable attorneys' fees, costs, expenses, and other such relief as this court may deem just and proper.

## COUNT III- TORTIOUS INTERFERENCE WITH CONTRACT

44. Crete hereby incorporates by reference Paragraphs 1 through 43 of its Complaint as if fully set forth herein.

45. Crete had a valid and enforceable contract with its customer in which Crete agreed to deliver the Load in exchange for payment.

46. Defendant had knowledge of Crete's contract with its customer.

47. Defendant intentionally interfered with Crete's contract with its customer by taking possession of and refusing to return the Load, despite Crete's repeated demand for its return.

48. Defendant's intentional interference with Crete's contract with its customer resulted in breach of the contract between Crete and its customer, resulting in damage to Crete's business relationship with its customer and Crete's customer pursuing a cargo claim against Crete for the value of the Load.

49. Crete has suffered damages as a result of Defendant's intentional interference with the contract between Crete and its customer.

**WHEREFORE**, Crete demands judgment against Defendant in excess of Seventy-Five Thousand Dollars ($75,000.00), plus all costs, attorney's fees, and expenses of this action, together

with injunctive relief requiring Defendant to immediately return Crete's Vehicle and Load to Crete, and any such other and further relief as this Court deems just and appropriate.

### COUNT IV- TORTIOUS INTERFERENCE WITH ECONOMIC AND BUSINESS RELATIONS

50. Crete hereby incorporates by reference Paragraphs 1 through 49 of its Complaint as if fully set forth herein.

51. Defendant intentionally and willfully interfered with Crete's business relationships by commandeering the Load and Vehicle and interfering with Crete's ability to deliver the Load to its customer.

52. Defendant's conduct was calculated to cause damage to Crete in its lawful business.

53. Defendant's interference was done with the unlawful purpose to cause such damage and loss, without right or justifiable cause.

54. As a result of Defendant's conduct and actions, Crete has suffered and will continue to suffer substantial harm and damages, including but not limited to, lost revenue, lost profits and other damages in excess of Seventy-Five Thousand Dollars.

**WHEREFORE**, Crete demands judgment against Defendant in excess of Seventy-Five Thousand Dollars ($75,000.00), plus all costs, attorney's fees, and expenses of this action, together with injunctive relief requiring Defendant to immediately return Crete's cargo and tractor trailer to Crete, and any such other and further relief as this Court deems just and appropriate.

### COUNT V- CONVERSION

55. Crete hereby incorporates Paragraphs 1 through 54 of its Complaint as if fully stated herein.

56. At the time of Crete's requests to Defendant to release the Vehicle and Load, Crete had the sole right to possess and exercise control over the Vehicle and Load.

57. Despite requests for return of the Vehicle and the Load, and with knowledge that Defendant was not permitted to continue its retention of the Vehicle and the Load, Defendant continues to exercise improper dominion and control over the Vehicle and Load.

58. Defendant's continued detention of the Vehicle and the Load was inconsistent with Crete's right to possess the Vehicle and the Load.

59. As a result of Defendant's actions, Crete has suffered and will continue to suffer substantial harm and damages, including but not limited to, lost revenue, profits and other damages in excess of Seventy-Five Thousand Dollars.

**WHEREFORE**, Crete demands judgment against Defendant in excess of Seventy-Five Thousand Dollars ($75,000.00), plus all costs, attorney's fees, and expenses of this action, together with injunctive relief requiring Defendant to immediately return Crete's cargo and tractor trailer to Crete, and any such other and further relief as this Court deems just and appropriate.

## COUNT VI- VIOLATION OF THE SHERMAN ANTITRUST ACT, 15 U.S.C. § 1

60. Crete hereby incorporates Paragraphs 1 through 59 of its Complaint as if fully stated herein.

61. Defendant, along with other towing companies on the MSP approved towing list, engaged in a contract, combination, and/or conspiracy to deviate from industry standard billing practices and to begin charging for nonconsensual tows of commercial vehicles on a per pound basis for the sole purpose of artificially inflating invoices to excessive amounts that bear absolutely no relation to the amount or nature of the work and/or services performed.

62. Specifically, Defendant, acting in concert with other companies on the MSP approved towing list, engaged in and shared a unity of purpose and understanding to join their resources, rights, and economic power to fix prices for nonconsensual towing of commercial motor

vehicles that, but for their concert, would naturally be frustrated by their competing economic interests.

63. The contract, combination, and/or conspiracy in which Defendant engaged imposed an unreasonable restraint on trade in that it prohibits competition in pricing and quality of services for nonconsensual towing of commercial motor vehicles.

64. There is no appropriate or legitimate business justification for Defendant to force motor carriers to pay for nonconsensual towing and recovery services on a per pound basis as determined by the weight of vehicles and cargo, as this manner of billing bears absolutely no relationship to the actual type or amount of work and/or services provided.

65. Defendant's price-fixing agreement with its co-conspirators is *per se* unlawful under Section 1 of the Sherman Act.

66. As a result of Defendant's actions in engaging in the contract, combination, and/or conspiracy imposing an unreasonable restraint on trade, Crete was, and continues to be, injured by being forced to pay to Defendant an excessive and unreasonable sum that bears no relationship to the nature and scope of work performed by Defendant in order to secure the release of the Vehicle and Load.

67. The injury suffered, and continued to be suffered, by Crete is the type of antitrust injury that the antitrust laws were designed to prevent.

68. Defendant's anticompetitive conduct violates the Sherman Antitrust Act, 15 U.S.C. § 1.

**WHEREFORE**, Crete demands judgment against Defendant as follows:

A. Compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00);

B. Treble damages;

  C. All costs, attorney's fees, and expenses of this action;

  D. Injunctive relief requiring Defendant to immediately (i) return Crete's cargo and tractor trailer to Crete; (ii) cease and desist its violation of the Sherman Antitrust Act and immediately cease charging for nonconsensual towing and recovery services on a "per pound" basis; and (iii) reduce the Invoice to comport with accepted industry standards based on hourly billing; and

  E. For any such other and further relief as this Court deems just and appropriate.

## COUNT VII- VIOLATION OF THE RICO ACT

  69. Crete hereby incorporates Paragraphs 1 through 68 of its Complaint as if fully stated herein.

  70. Defendant is an "enterprise" as that term is defined in Title 18 U.S.C. § 1961(4), as it is a legal entity.

  71. Defendant engages in, and its activities affect, interstate commerce.

  72. Defendant has knowingly and willingly conducted and/or participated directly and indirectly in a pattern of racketeering activity as defined by Title 18, U.S.C. § 1961(5).

  73. Defendant's pattern of racketeering activity consists of repeated violations of the Hobbs Act, 18 U.S.C. §1951 *et seq.*, by extorting and/or attempting to extort motor carriers by illegally and improperly holding property under threat of economic harm unless and until Defendant receives payment of money in amounts to which Defendant is not entitled and in an amount that bears absolutely no relation to the nature or amount of work performed and/or services provided by Defendant. Defendant's pattern of racketeering activity began in or around March 2020 and has involved all or the majority of nonconsensual towing and recovery services

Defendant has performed that involve commercial motor vehicles, which has, at a minimum, occurred at least twice.

74. Defendant's predicate acts are part of a scheme and are not isolated events. Defendant's pattern of racketeering activity is ongoing and amounts to or poses a threat of continued criminal activity.

75. As a direct and proximate result of Defendant's conduct, Crete was injured and sustained damages including, but not limited to, (a) loss of use of the Vehicle and Load; (b) damage to its relationship with its customer; (c) costs associated with replacing and/or substituting the Load; (d) lost profits and revenue; and (e) attorneys' fees associated with attempting to secure release of the Vehicle and Load and prosecuting the instant lawsuit.

76. As a result of its injury, Crete is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to Title 18, U.S.C. § 1964(c).

**WHEREFORE**, Crete hereby demands judgment against Defendant

A. Compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00);

B. Treble damages;

C. Punitive damages;

D. All costs, attorney's fees, and expenses of this action; and

E. For any such other and further relief as this Court deems just and appropriate.

### COUNT VIII- VIOLATION OF ANNOTATED CODE OF MARYLAND, COMMERCIAL LAW ARTICLE § 11-204

77. Crete hereby incorporates Paragraphs 1 through 76 of its Complaint as if fully stated herein.

78. Defendant, along with other towing companies on the MSP approved towing list, engaged in a contract, combination, and/or conspiracy to deviate from industry standard billing

practices and to begin charging for nonconsensual tows of commercial vehicles on a per pound basis for sole purpose of artificially inflating invoices to excessive amounts that bear absolutely no relation to the amount or nature of the work and/or services performed.

79. Specifically, Defendant, acting in concert with other companies on the MSP approved towing list, engaged in and shared a unity of purpose and understanding to join their resources, rights, and economic power to fix prices for nonconsensual towing of commercial motor vehicles that, but for their concert, would naturally be frustrated by their competing economic interests.

80. The contract, combination, and/or conspiracy in which Defendant engaged imposed an unreasonable restraint on trade in that it prohibits competition in pricing and quality of services for nonconsensual towing of commercial motor vehicles.

81. Defendant and its co-conspirators hold one hundred percent (100%) of the market share for MSP initiated nonconsensual towing and recovery services. As such, each and every owner of a commercial motor vehicle that is involved in a motor vehicle accident that requires towing and recovery efforts on a highway over which the MSP has authority and/or control will be subjected to the contract, combination, and/or conspiracy to fix prices in which Defendant is involved.

82. There is no appropriate or legitimate business justification for Defendant to force motor carriers to pay for nonconsensual towing and recovery services on a per pound basis as determined by the weight of vehicles and cargo, as this manner of billing bears absolutely no relationship to the actual type or amount of work and/or services provided.

83. As a result of Defendant's actions in engaging in the contract, combination, and/or conspiracy imposing an unreasonable restraint on trade, Crete was, and continues to be, injured by

being forced to pay to Defendant an excessive and unreasonable sum that bears to relationship to the nature and scope of work performed by Defendant in order to secure the release of the Vehicle and Load.

84. Defendant further directly and/or indirectly is engaged in conduct of discriminating among purchasers of its commercial towing and recovery services for services of like nature and quality. Specifically, Defendant charges at different rates for commercial motor vehicle towing and recovery services that Defendant performs at the direction of the MSP or other law enforcement agencies than those rates it charges for commercial motor vehicle towing and recovery services Defendant performs at the request of owners and/or operators of commercial motor vehicles. Defendant's price discrimination has the effect of substantially lessening competition, tending to create a monopoly in the market of nonconsensual towing and recovery services, and injuring, destroying, and/or preventing competition in the towing and recovery services market.

85. The injury suffered, and continued to be suffered, by Crete is the type of antitrust injury that the antitrust laws were designed to prevent.

**WHEREFORE,** Crete demands judgment against Defendant as follows:

A. Compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00);

B. Treble damages;

C. All costs, attorney's fees, and expenses of this action;

D. Injunctive relief requiring Defendant to immediately (i) return Crete's cargo and tractor trailer to Crete; (ii) cease and desist its violation of the Sherman Antitrust Act and immediately cease charging for nonconsensual towing and recovery services on a "per pound"

basis; and (iii) reduce the Invoice to comport with accepted industry standards based on hourly billing; and

  E.  For any such other and further relief as this Court deems just and appropriate.

             Respectfully submitted,

             */s/ Tamara B. Goorevitz*
             Tamara B. Goorevitz (#25700)
             Renee L. Bowen (#19623)
             James K. Hetzel (#20158)
             FRANKLIN & PROKOPIK, P.C.
             Two North Charles Street, Suite 600
             Baltimore, MD  21201
             (410) 752-8700
             (410) 752-6868 (fax)
             tgoorevitz@fandpnet.com
             rbowen@fandpnet.com
             jhetzel@fandpnet.com
             *Attorneys for Plaintiff*