IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CRETE CARRIER CORP.,
   *Plaintiff*,

v.

SULLIVAN & SONS, INC. d/b/a
SULLIVAN'S GARAGE,
   *Defendant*.

Civil No. ELH-21-328

**MEMORANDUM OPINION**

This Memorandum Opinion resolves a request for a writ of replevin.

A fifty-three foot tractor trailer (the "Vehicle") owned by plaintiff Crete Carrier Corp. ("Crete"), a long-haul trucking company, was damaged in a serious single-vehicle accident on the evening of August 27, 2020. At the time, the driver was traveling south on Interstate 95 in Harford County, Maryland. He was transporting apparel (the "Load") that was then owned by a third party. As a result of the accident, the Vehicle was not fit to be driven from the scene.

The Maryland State Police ("MSP") responded to the scene and subsequently contacted defendant Sullivan & Sons, Inc. d/b/a Sullivan's Garage ("Sullivan's") to recover the Vehicle. Sullivan's towed the Vehicle, including the Load, and subsequently invoiced Crete. Based on the amount of the invoice, Crete refused to pay the charges, and Sullivan's refused to release both the Vehicle and the Load.

On February 9, 2021, Crete filed suit against Sullivan's (ECF 1, the "Complaint"), supported by exhibits. Jurisdiction is based on diversity, pursuant to 28 U.S.C. § 1332(a), as well as federal question jurisdiction, pursuant to 28 U.S.C. § 1331.

The Complaint contains eight counts, but only one is relevant to this Memorandum Opinion: Count I, which sounds in replevin. Plaintiff alleges that Sullivan's "has no legal right to

possession of or to exercise control over the Vehicle or the Load." *Id.* ¶ 35. Therefore, Crete asks for a writ of replevin "for immediate seizure and delivery of the property to Crete . . . ." *Id.* at 7.

Other claims in the Complaint arise under Maryland law, such as conversion, tortious interference with contract, and a violation of § 11-204 of the Commercial Law Article of the Maryland Code. Plaintiff also alleges a federal antitrust claim under the Sherman Act, 15 U.S.C. § 1, and a claim founded on the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* ECF 1. According to Crete, Sullivan's "and other towing companies . . . improperly conspired . . . to charge for nonconsensual tows by the pound, not by the hour, for the sole and improper purpose of artificially inflating the charges . . . ." ECF 1, ¶ 19.[1]

Sullivan's timely answered the suit. ECF 6. Three weeks later, on March 23, 2021, Sullivan's filed a "Counter-Complaint," asserting claims for quantum meruit and breach of contract. ECF 11. Thereafter, Crete moved to dismiss the Counter-Complaint, pursuant to Fed. R. Civ. P. 12(b)(6). ECF 21. Sullivan's opposes Crete's motion to dismiss. ECF 27. However, the resolution of that motion is for another day.

Crete sought an expedited hearing on its request for replevin. To that end, it filed a memorandum in support of its replevin claim (ECF 24), supported by exhibits. Sullivan's opposes Crete's request for a writ of replevin. ECF 28. Crete did not reply.

On May 28, 2021, the Court held a video hearing, via Zoom, as to plaintiff's request for a writ of replevin contained in Count I. ECF 36.[2] One day earlier, on May 27, 2021, the parties

---

[1] Although not directly pertinent for present purposes, the RICO and Sherman Act claims seem to be heavy artillery for this dispute—akin to bringing a gun to a knife fight. However, no challenge was lodged by Sullivan as to the basis for a RICO or Sherman Act claim. Nonetheless, I remind counsel of the provisions of Fed. R. Civ. P. 11.

[2] The docket erroneously indicates that the hearing was held on Crete's motion to dismiss Sullivan's Counter-Complaint. *See* ECF 36.

submitted joint "Stipulations of Fact" (the "Stipulation"). ECF 34. Following the hearing, Crete submitted a supplemental memorandum. ECF 38. Sullivan's did the same. ECF 44.

For the reasons that follow, I shall issue a writ of replevin for the return of the Vehicle, including the Load, to Crete.

## I. Background

Prior to the hearing, Crete filed a handful of exhibits, and Sullivan's did not provide any. The exhibits submitted by Crete do not support all of the factual allegations in the Complaint concerning replevin or the assertions in Crete's memorandum.

At the hearing, two witnesses testified: Denis Lansing, the Crete employee who was driving the Vehicle at the time of the accident, and Wayne Sullivan, the vice president of Sullivan's.[3] Crete also submitted exhibits with its supplemental memorandum.

The following facts appear to be undisputed. The Vehicle was involved in a single-vehicle accident while traveling south on I-95 near Joppa, Maryland, in Harford County. ECF 1, ¶¶ 8, 10; ECF 6, ¶ 10; ECF 34, ¶ 2. Mr. Lansing was driving the Vehicle from New Jersey to North Carolina, transporting clothing for a customer of Crete. *See* ECF 1-2 at 1; ECF 1, ¶ 8. According to Mr. Lansing, Crete owns the Vehicle.

Curiously, the Stipulation fails to mention the date of the occurrence. In the Complaint, plaintiff alleges that the accident occurred on August 28, 2020. ECF 1, ¶ 8. But, Mr. Lansing testified that the accident occurred on the evening of August 27, 2020, around 7 P.M, while it was still light out.

---

[3] I do not have a transcript of the hearing. Therefore, any reference to testimony is derived from my notes.

Mr. Lansing recalled that while he was driving, somewhere in the vicinity of mile marker seventy-nine on I-95 south in Maryland, he suddenly felt ill. He attempted to pull over and bring the Vehicle to a stop. However, he "blacked out" before he could bring the vehicle to a stop, and "came to" in a "ditch" near trees. When Mr. Lansing awoke, he could not locate his cell phone. Mr. Lansing testified that an MSP officer found him and brought him back to the highway, where a team of first responders waited. A towing and recovery crew from Sullivan's was also already at the scene.

The only exhibit that speaks to the details of the crash is contained in an invoice sent by Sullivan's to Crete, sometime after August 28, 2020. ECF 1-2 at 1.[4] Plaintiff submitted it as an exhibit to the suit. As discussed, *infra*, Sullivan's has submitted a near-identical copy of the same invoice, although the total amount of the bill differs. ECF 11-1.

The invoice reflects that the Vehicle drove through a guardrail along the highway and traveled approximately 100 feet down a steep embankment, colliding with a light pole somewhere along the way. ECF 1-2 at 1. The tractor and the trailer were separated in the crash; both "suffered catastrophic damages." *Id.* The invoice elaborates: "The tractor cab area was [in] pieces . . . . The entire cab area was ripped off the chassis . . . axles ripped off the chassis, tires ripped off wheels. The trailer had a large tree and guardrail section under the left side. The trailer axles were ripped out from under the trailer." *Id.*

As noted, the MSP arrived at the scene. It is undisputed that the MSP "maintains a list of towing companies that are authorized by the MSP to perform towing and recovery services at MSP's request." ECF 34, ¶ 4; *see id.* ¶ 3. Sullivan's is one such company. *Id.* ¶ 5. When needed, MSP selects a towing company from a preapproved list. ECF 34, ¶ 4. And, it is undisputed that

---

[4] Neither side has submitted police reports.

the MSP contacted Sullivan to perform the towing and recovery services in issue. *Id.* ¶ 6. According to Crete, Sullivan's performed these services "at the request and under the direction of the MSP . . . ." *Id.* ¶ 7.

As indicated, Mr. Lansing was unable to find his phone when he found himself in the ditch. He testified that a Sullivan's employee located it. Mr. Lansing then used it to call Crete's "accident department." But, he could not recall the name of the Crete representative with whom he spoke. According to Mr. Lansing, the representative asked to speak with the MSP officer on the scene. Mr. Lansing gave the phone to a law enforcement officer; he did not know what the representative and the officer discussed. At that point, Sullivan's employees had begun cutting the guardrail separating the highway from the embankment to enable the recovery of the Vehicle.

Mr. Sullivan, a Sullivan's executive, testified that he responded to the scene of the accident. And, Sullivan's dispatched heavy duty machinery to the scene, along with nine or ten Sullivan's workers.

Mr. Sullivan recalled that, while he was at the scene, he received a phone call from someone at Crete. However, he did not know the name of the Crete representative with whom he spoke. That representative inquired about Mr. Lansing's condition as well as the condition of the Vehicle. The representative did not explicitly assent to Sullivan's recovery effort. But, neither did he or she ask Sullivan's to terminate its services. Moreover, according to Mr. Sullivan, Sullivan's and Crete had a longstanding relationship, as they had dealt with each other on "hundreds" of prior occasions. In fact, he testified that Crete had an "open account" with Sullivan's.

Following two days of work, Sullivan's towed the Vehicle, together with the Load, to its tow yard. ECF 1, ¶ 15; ECF 6, ¶ 15; *see* ECF 1-2 at 1.[5] Since that time, the Vehicle, including the Load, have remained in Sullivan's possession. ECF 34, ¶ 8.

At the hearing, Crete's counsel disclosed that Crete recently purchased the Load. To that end, Crete subsequently submitted a copy of a check written to "Hub City Terminals, Inc." for approximately $44,000. ECF 38-1.

Both sides agree that the Vehicle had to be removed from the scene; Sullivan's did the work; and plaintiff has not paid defendant a dime. The wrangling concerns the charges for the recovery and the storage of the Vehicle and the Load.

Plaintiff alleges, and Sullivan's seems not to contest, that Sullivan's originally charged approximately $142,000 for the cost of towing and recovery. *See* ECF 1-2. The charges were calculated, in part, based on the weight of the Vehicle and the Load. *See id.* The parties disagree as to whether Sullivan's estimations of weight were correct. *See* ECF 1, ¶ 16; ECF 6, ¶ 16. As an exhibit to its Counter-Complaint, Sullivan's submitted a copy of an invoice charging an additional $69,000 for storage costs through March 10, 2021, at rates of $90 per day for the Vehicle's tractor and "roll debris" and $180 per day for the Vehicle's trailer. ECF 11-1 at 3. With storage costs, the total charge came to $211,455. *Id.* According to Crete, defendant never shared that invoice before filing its Counter-Complaint. ECF 24 at 4 n.1.

During the hearing on May 28, 2021, defense counsel seemed to indicate that defendant had also prepared an invoice based on hourly rates rather than weight. In its supplemental memorandum, Crete asserts that defense counsel shared that alternative invoice with plaintiff's

---

[5] Defendant asserts that "no other individual or corporate entity . . . within the entire State of Maryland" has "immediate access" to the specialized equipment used to perform this tow job." ECF 28 at 1.

6

counsel following the hearing. ECF 38 at 2. Sullivan's does not dispute that it shared the alternative invoice with Crete. ECF 44 at 3.

That invoice, which Crete has submitted as an exhibit (ECF 38-2), reflects charges of approximately $135,000 for towing and recovery, plus approximately $99,000 in storage fees through May 28, 2021. *Id.* It reports about fifteen hours of work, at rates ranging from $50 per hour for the use of "Sonetics safety communication headsets," to $300 per hour for the labor of a "safety supervisor," to $1950 per hour for the use of an "80 ton rotator recovery unit." *Id.* The storage rates are identical to those in the invoice discussed above, which is based on weight.

Notably, the hourly invoice created by Sullivan's arrives at roughly the same total (approximately $135,000) as the invoice based on weight ($142,000), excluding storage costs. Crete rejects the calculations in both invoices.

In Crete's view, the charges based on weight are unreasonable and "***almost two times the industry standard*** . . . ." ECF 24 at 5 (emphasis in original). Although plaintiff indicated during the hearing that it has hired an expert to address this issue, it has not yet provided any evidence in support of a so-called industry standard.

Further, Crete argues that the charges in the invoice based on weight and the charges based on hourly rates exceed the maximum allowed by the Harford County Police-Initiated Towing Regulations (the "Regulations"). *Id.* at 11; *see* ECF 24-3. The Regulations set forth hourly rates and various other fees for services provided in response to a request by law enforcement. *See* ECF 24-3. According to Crete, these rates and fees "may not be exceeded," and additional fees may not be assessed without a "signed agreement." *Id.* at 1. In addition, they are broken down into categories for "Light Duty," "Medium Duty," and "Heavy Duty" equipment. *See id.* In Crete's view, the invoice based on weight is plainly contrary to the method for calculating charges set

7

forth in the Regulations. As for the invoice based on hourly rates, plaintiff seems to challenge only the rates, which exceed those permitted by the Regulations, but not defendant's estimation of hours.

Crete appears to assume that the Vehicle, inclusive of the Load, should have been subject to the Heavy Duty rates. *See* ECF 24 at 13. That category includes, but is not limited to, the following rates: "Basic Load/Tow," $300.00/hour; "Safety/Additional Operator," $100.00/hour; "Winching (per winching vehicle) or Recovery," $200.00/hour; and "Waiting Time (per tow company vehicle)," $200.00/hour. ECF 24-3 at 3.

As an exhibit to its supplemental memorandum, plaintiff submitted a spreadsheet itemizing what it contends are the maximum charges permitted by the Regulations. ECF 38-3. Excluding storage costs, Crete estimates that the maximum permissible charge for the recovery is $29,000. *See id.* at 2.

At the hearing, plaintiff's counsel asserted that Crete demanded the return of the Vehicle and the Load on or around November 24, 2020. Defense counsel asserted, for the first time, that Sullivan's would have returned the Vehicle and the Load if plaintiff had proved ownership, which it did not do. Yet, defense counsel also seemed to suggest that it would only have returned the Vehicle and the Load upon receipt of payment of the invoice issued in August 2020.

Adding to the murkiness, Crete has submitted copies of two emails exchanged between counsel. In an email dated December 3, 2020, defense counsel wrote that defendant "will hold the **debris** (tractor / trailer, cargo) **as evidence** to support the invoice." ECF 24-5 (emphasis in original). On January 19, 2021, plaintiff's counsel relayed that Crete received "a cargo claim" for the value of the Load from the owner of the Load, and asked that Sullivan's, at a minimum, "allow

8

Crete to offload the [Load]." ECF 24-6. But, both the Vehicle and the Load remain under Sullivan's control.

## II. Discussion

Fed. R. Civ. P. 64 recognizes that replevin is a "remedy" available in federal court, as determined by the "law of the state where the court is located." In Maryland, "replevin allows '[a] person claiming the right to immediate possession of personal property [to] file an action for possession before judgment.'" *IFAST, Ltd. v. All. for Telecommunications Indus. Sols., Inc.*, CCB-06-2088, 2007 WL 3224582, at *10 (D. Md. Sept. 27, 2007) (citation omitted) (alterations in *IFAST, Ltd.*). A claimant's success in a replevin action "'depends entirely on his right to possession.'" *Dehn Motor Sales, LLC v. Schultz*, 439 Md. 460, 486, 96 A.3d 221, 237 (2014) (citation omitted) (alteration in *Dehn Motor Sales*). The same is true of a defendant's ability to defeat a replevin claim. *See id.*; *see also Furda v. State*, 193 Md. App. 371, 398 n.17; 997 A.2d 856, 872 n.17 (2010) ("Replevin is appropriate 'in all cases where the object of the suit is to recover possession of specific goods and chattels, to the possession of which the plaintiff claims to be entitled at the time of instituting the suit.'") (citation omitted).

In short, Crete contends that it is entitled to pre-judgment possession of the Vehicle and the Load. And, according to Crete, Sullivan's does not have a valid claim to possession in any event.

Sullivan's argues that it has a lien on the Vehicle, pursuant to Maryland's Garageman's Lien Statute, Md. Code (2013 Repl. Vol.) § 16-202(c) of the Commercial Law Article ("C.L."). *See* ECF 28 at 2-3. Thus, in defendant's view, it is allowed to retain possession. According to defendant, Crete has not "[p]roved [o]wnership" of either the Vehicle or the Load. ECF 44 at 2. But, at the hearing, defense counsel seemed to acknowledge that Sullivan's does not have a lien

on the Load. And, consistent with this position, Sullivan's concedes in its supplemental memorandum that it does not have a lien on the Load. ECF 44 at 2.

As to Sullivan's argument regarding ownership, the evidence cuts the other way. Mr. Lansing testified that Crete is the Vehicle's owner. Defendant has not submitted any evidence to the contrary. With respect to the Load, as noted, plaintiff's counsel disclosed at the hearing that Crete recently purchased the Load from its original owner. Crete reiterates that assertion in its supplemental brief. ECF 28 at 1. And, it has documented its purchase of the Load. *See* ECF 38-1.

Turning to Sullivan's argument regarding a Garageman's Lien, I begin with the statutory text. The Garageman's Lien Statute provides, in relevant part, *id.* (emphasis added):

> (c) *Motor vehicle lien.* — (1) Any person who, *with the consent of the owner*, has custody of a motor vehicle and who, *at the request of the owner*, provides a service to or materials for the motor vehicle, has a lien on the motor vehicle for any charge incurred for any:
>     (i) Repair or rebuilding;
>     (ii) Storage . . . .

Notably, "Maryland courts construe statutory liens 'strictly' in favor of the debtor to protect a debtor's common law rights." *In re Walker*, 473 Md. 68, 248 A.3d 981, 988 (2021) (citation omitted).

C.L. § 16-203 permits a lienholder, or "lienor," to "retain possession of the property subject to the lien until (1) [t]he charges which give rise to the lien are paid; or (2) [t]he lien is otherwise discharged . . . ." But, C.L. §§ 16-206 and 16-208 "permit the owner" of a motor vehicle "to challenge the garageman's right to enforce the lien in a replevin action or in an appropriate judicial action." *Allstate Lien & Recovery Corp. v. Stansbury*, 445 Md. 187, 206, 126 A.3d 40, 51 (2015). Under § 16-206(b), if the owner of a vehicle subject to a lien disputes the garageman's charge, the

person may repossess his property by filing a corporate bond "for double the amount of the charge claimed."

C.L. § 16-208(a) states: "*Issuance of the writ. — If the owner of property* subject to a lien institutes an action of replevin and establishes a right to the issuance of a writ but for the defendant's alleged lien under this subtitle, the court *shall* issue the writ." (Emphasis added.) This statute is central to the resolution of the dispute at hand. The definition of "owner" applicable to both §§ 16-206 and 16-208(a) is found in C.L. § 16-101, which provides that "'Owner' includes a person lawfully in possession."

Crete takes § 16-208(a) to mean that even if Sullivan's has a lien on the Vehicle, Crete, as owner of the Vehicle, is nonetheless entitled to the issuance of a writ of replevin. *See* ECF 24 at 15. At the hearing, plaintiff's counsel extended the same logic to the Load, contending that plaintiff has demonstrated ownership of it, or at a minimum, has a superior right to possession under C.L. § 16-101.

As the owner of both the Vehicle and the Load, or as the party with a right to possession of them, plaintiff has "establishe[d] a right to the issuance of the writ but for the defendant's alleged lien . . . ." C.L. § 16-208. Moreover, the statute expressly commands that the "the court *shall* issue the writ" despite the alleged lien. (Emphasis added.) It is well settled that "the word 'shall' usually connotes a requirement." *Kingdomware Techs., Inc. v. United States*, ___ U.S.___, 136 S. Ct. 1969, 1977 (2016). Therefore, based on facts of this case, C.L. § 16-208(a) requires the Court to issue the writ.

Sullivan's does not respond to plaintiff's argument concerning the import of C.L. § 16-208. Nevertheless, Sullivan's contends that it has a statutory lien on the Vehicle, pursuant to C.L. § 16-202(c), and thus has a right to possession of the Vehicle, pursuant to § 16-203. ECF 28 at 3.

11

In defendant's view, it has custody of the Vehicle with Crete's "consent," because it provided a towing service to the Vehicle at Crete's "request," thus satisfying the prerequisites of § 16-202(c).

The issue of consent was hotly contested at the hearing. Crete maintained that the evidence, especially the testimony of Mr. Lansing, indicates that Sullivan's initiated the towing and recovery effort in response to a request from the MSP, not Crete. On the other hand, defendant suggests that Crete was aware of Sullivan's role and, at the very least, impliedly consented. Neither Mr. Lansing nor the Crete representative with whom Mr. Sullivan spoke asked Sullivan's to abort the recovery effort. In this regard, Mr. Sullivan's testimony that the two companies have a longstanding business relationship is also pertinent.

Relevant case law construing the terms "consent" and "request" in C.L. § 16-202(c) appears to be lacking. In my view, the evidence presented thus far strongly suggests that Sullivan's has a lien to the Vehicle under the Garageman's Lien Statute. Even though the MSP initially requested Sullivan's assistance, it was not long before various Crete employees—Mr. Lansing, the representative with whom he spoke, and the representative who spoke with Mr. Sullivan—quickly learned that Sullivan's was conducting the recovery effort. There is no evidence that these Crete employees objected to Sullivan's involvement, asked Sullivan's to terminate the recovery, or requested the aid of a different towing company.

Nevertheless, defendant has not attempted to explain how it can overcome plaintiff's replevin claim, in light of C.L. § 16-208(a). In other words, the existence of a lien does not preclude the issuance of a writ.

Moreover, Sullivan's other arguments do not establish that it has a superior right to possession of the Vehicle and the Load. For instance, Sullivan's attempts to rely on the Maryland Code of Regulations ("COMAR"), at 11.07.03.16(A). *See* ECF 28 at 3. This regulation states:

> The operator or owner of a vehicle for which a permittee provides any services under these regulations is responsible for any charge imposed for those services. Neither the Authority nor the State is responsible or liable for any cost associated with services performed by a permittee.

Although this regulation is, arguably, pertinent to the proper amount that Crete owes Sullivan's, that issue is not directly relevant to the replevin claim. Moreover, it is not clear whether this regulation is applicable to these facts. The term "permittee" is defined in COMAR 11.07.03.01(11) as "a towing service company that has been granted a permit by the Chief of Police or the Chief's designee to provide towing, road service, and storage of vehicles *on Authority property*." (Emphasis added.) And, COMAR 11.07.03.01(11)(2) defines "Authority" to mean "the Maryland Transportation Authority." Neither side has indicated whether the Vehicle was on the property of the Maryland Transportation Authority when it was towed.

Nor do the Harford County Regulations sway the result here. Sullivan's points out that Regulation 3.5.4 provides: "A towing company shall be required to release a disabled vehicle upon payment of authorized charges during normal business hours, but may release a motor vehicle to the owner or owner's authorized agent at other times without additional charges being applied." ECF 28 at 2.[6] On its face, this regulation has little bearing on whether a writ should issue; it states only that, upon receiving appropriate payment, a towing company must release a vehicle.

Therefore, I conclude that a writ of replevin should issue for immediate return of the Vehicle and the Load to Crete.

That said, there remains the question of the bond that Crete must file. Although Maryland's rules of civil procedure do not apply in federal court, I note that Maryland Rule 12-601(g) states, in pertinent part:

---

[6] The Regulations are publicly accessible at https://www.harfordcountymd.gov/DocumentCenter/View/321/Towing-Regulations-PDF?bidId= (last visited May 25, 2021). *See* Fed. R. Evid. 201.

13

> If the court determines that the plaintiff is entitled to possession before judgment, the court shall order issuance of a writ directing the sheriff to place the plaintiff in possession of the property, provided that the plaintiff files a bond for the satisfaction of all costs and damages that may be awarded to the defendant or a claimant of the property by reason of the possession. The order shall prescribe the amount of and security for the bond.

Case law construing Maryland Rule 12-601(g) appears to be lacking.

Maryland's Garageman's Lien Statute is also relevant. C.L. § 16-206 provides, in pertinent part, that "the owner of property subject to a lien . . . may repossess his property by filing a corporate bond for double the amount of the charge claimed." This requirement seems consistent with the common law rule that "an action for replevin could be commenced by filing a bond with the clerk of the court in double the value of the personal property claimed to be unlawfully detained by the defendant." *111 Scherr Lane, LLC v. Triangle Gen. Contracting, Inc.*, 233 Md. App. 214, 237, 163 A.3d 248, 261 (2017).

Given that Sullivan's appears to have thrown its weight behind two different methods of calculating the charges owed by plaintiff for the recovery effort—by the hour and by weight—the basis for the charges claimed by defendant is not clear. Regardless, defendant insists that one way or the other, the charge is well over $130,000, and that it is also owed substantial storage fees. Defendant has repeatedly ignored plaintiff's argument that these charges exceed the maximum rates permissible under the Regulations. The issue receives just a handful of sentences in defendant's supplemental brief. *See* ECF 44 at 2-3.

At this stage, I cannot conclude, without more from Sullivan's, that the Regulations do not apply here. The Regulations state that they pertain to towing work performed in response to a request by law enforcement. ECF 24-3 at 1. Despite defendant's repeated assertions to the contrary, the testimony from Mr. Lansing indicated that Crete did not initially request Sullivan's aid; rather, the MSP did so. If Sullivan's believes other facts in this case render the Regulations

14

inapplicable, or that some or all of the Regulations do not apply as a matter of law, it has not offered any substantive arguments to the Court along these lines. Moreover, courts have recognized the validity of similar regulations adopted by other Maryland counties, as well other states. *See, e.g.*, *Cade v. Montgomery Cty.*, 83 Md. App. 419, 423, 575 A.2d 744, 746 (1990) (addressing a Montgomery County regulation establishing maximum towing rates); *Ally Fin., Inc. v. All Cty. Towing & Recovery*, 89 N.Y.S.3d 370, 372 (N.Y. App. Div. 2018) (discussing validity of maximum storages rates for towed vehicles in New York City).

As mentioned, plaintiff has submitted a spreadsheet itemizing the charges that, in its view, are permitted under the Regulations. ECF 38-3. This spreadsheet provides for approximately $19,000 in fees for the recovery effort, and ninety days' worth of storage fees at a rate of fifty dollars per day, as set by the Regulations, for a total of $32,150. *See id.*; ECF 24-3 at 3. In defendant's supplemental brief, it did not specifically contend that even if the Regulations apply here, plaintiff's proposed calculations are still flawed. As for storage fees, plaintiff calculated ninety days' worth because approximately ninety days passed between the date of the accident and November 24, 2020, when plaintiff made its demand for the return of the Vehicle and the Load. Although both remain in storage and under defendant's control, plaintiff points to *T.R. Ltd. v. Lee*, 55 Md. App. 629, 634, 465 A.2d 1186, 1190 (1983), for the proposition that, without a lien, a towing company has "no right" to charge for storage after receiving a demand from a vehicle's owner for its return. *See* ECF 24 at 7. Defendant offers no response to this.

Therefore, I conclude that plaintiff is entitled to a writ of replevin for the return of the Vehicle and the Load. But, the return of the Vehicle and the Load shall be conditioned on payment by plaintiff of $64,300 in security for a bond. That figure is equal to twice the amount proposed by plaintiff as the maximum permissible charge for recovery plus storage.

My conclusion is without prejudice to defendant's right to argue, as the suit progresses, that it is within its rights to charge more than facially permitted by the Regulations, or that plaintiff's proposed calculations based on the rates are flawed.

### III. Conclusion

For the foregoing reasons, I shall issue a writ of replevin, directing Sullivan's to return the Vehicle, including the Load, to Crete, upon payment of $64,300 in security for a bond.

An Order shall follow.

Date: June 30, 2021

/s/
Ellen L. Hollander
United States District Judge