IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CRETE CARRIER CORP.** | * | |
|     **Plaintiff** | * | |
| **v.** | * | Civil Action No.: 1:21−cv−00328−ELH |
| **SULLIVAN & SONS, INC. d/b/a SULLIVAN'S GARAGE** | * | |
| | * | |
|     **Defendant** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**PLAINTIFF'S MOTION TO COMPEL MORTON TOWING AND RECOVERY, INC.'S RESPONSE TO SUBPOENA**

Plaintiff, Crete Carrier Corp. (hereinafter "Crete"), by and through its undersigned attorneys, Tamara B. Goorevitz, Renee L. Bowen, James K. Hetzel, and FRANKLIN & PROKOPIK, P.C., pursuant to Federal Rule of Civil Procedure 26 and 45, hereby submits this Motion to Compel Morton Towing and Recovery, Inc.'s ("Morton's") Response to Subpoena and states as follows:

    **I.**     **INTRODUCTION AND RELEVANT BACKGROUND**

Crete filed the operative Complaint on February 9, 2021 against Defendant Sullivan & Sons, Inc. d/b/a Sullivan's Garage ("Defendant") arising from *inter alia* Defendant's continued and improper retention of Crete's property despite Crete's timely request for return of said property, improper business practices, and interference with Crete's business relationships with its customers. *See* ECF 1. In addition to seeking damages and the return of Crete's property, Crete seeks relief pursuant to the Sherman Anti-Trust Act, the RICO Act, and § 11-204 of the Maryland Commercial Law Code. *Id.* While the immediate catalyst to the above-captioned litigation was Defendant's improper business practices stemming from the towing, recovery, and illegal retention of one (1) of Crete's vehicles, the issues in this litigation go far beyond a single occurrence and

1

relate to Defendant's business and billing practices as a whole, including Defendant's conduct in conspiring with other towing companies to fix prices for police-initiated, nonconsensual towing and recoveries. The issues involved in this litigation concerning Defendant's billing and business practices have far-reaching implications that impact each and every interstate motor carrier that has commercial vehicles traveling in or through the State of Maryland.

To obtain additional information relevant to its claims, Crete issued a Subpoena to Produce Documents, Information, or Objects, or to Permit Inspection of Premises in a Civil Action to the following Maryland State Police ("MSP") approved towing and recovery companies: Mullens Services ("Mullens"), Automotive Support Services, Inc. ("Automotive Support"), McNeal's Towing/Car & Truck Repair Inc., Vinny's Towing & Recovery Specialized Hauling LLC, Vinny's Towing and Recovery, LLC ("Vinny's"), Morton's, and Ted's Towing Service, Inc. (collectively "Towing Companies"). *See* Records Subpoena to Morton's attached hereto as Exhibit A ("the Subpoena").[1]  Additionally, Crete noted the discovery deposition of Morton's employee David Morton in his individual capacity. *See* Subpoena and Deposition Notice to Morton's employee Mr. Morton attached hereto as Exhibit B (collectively "the Deposition Notice").

In response to the Subpoena, Morton's served written objections ("Objections") in late July 2021. *See* Objections attached hereto as Exhibit C.  After service of the Deposition Notice, rather than providing the responsive documents requested in the Subpoena or producing Mr. Morton for deposition, Morton's, and Mr. Morton individually, filed a Motion to Quash Subpoena for Deposition and Notice of Deposition and Motion for Protective Order ("Morton's Motion"). While Morton's Motion largely seeks protection from Mr. David Morton from attending a discovery deposition, it also seeks protection from Morton's from participating in *any* discovery.

---

[1] For the sake of clarity, all of the subpoenas sought identical documents from each of the Towing Companies.

*See* the Motion (ECF 66) at 24 stating "the [Deposition Notice] should be quashed and protective order issued protecting non-parties [Morton's and Mr. Morton] from the expense of participating in **discovery** in this case…" (emphasis added).   Despite attempts to discuss Morton's Objections to the Subpoena as outlined more fully below, Crete has been unable to resolve the disputes, prompting the filing of the instant motion. *See* Good Faith Certificate.

    **II.**       **DOCUMENTS SOUGHT IN THE SUBPOENA**

As stated above, among the relevant allegations of the Complaint is that Defendant and other MSP approved towing companies conspired to change their billing practices from an hourly rate to charging per pound based on the weight of the vehicle and cargo involved, thereby inflating the charges assessed to those individuals and/or entities whose property is the subject of any police initiated, non-consensual tow. Therefore, Crete issued the Subpoena seeking:

> 1. All invoices for towing and recovery services provided or performed by you for any vehicle with a GVW of 25,000 pounds or greater at the request of any law enforcement agency;
>
> 2. All invoices for towing and recovery services provided or performed by you for any vehicle with a GVW of 25,000 pounds or greater at the request of any vehicle owner or operator;
>
> 3. Any and all documents that evidence, reflect, refer, and/or relate your owners, agents, and/or employees' participation in any programs, webinars, seminars, conferences, continuing education, modules, presentations, or any other similar events during which any component of the event dealt with, mentioned, and/or otherwise related to billing practices or billing procedures for towing and recovery services, including, but not limited to, any program agenda, topics, outlines, registration documentation, and/or receipts;
>
> 4. Any and all documents that evidence, reflect, refer, and/or relate to your placement on and/or participation in any list to and/or approval to perform towing and recovery services on behalf or at the request of any law enforcement agency in the State of Maryland, including, but not limited to, all applications, written policies or procedures, training manuals or documents, qualification requirements, correspondence, applicable standards that must be maintained or followed, documents provided to you

>by any law enforcement agency related to police-initiated tows, complaints to the law enforcement agency regarding your services, and any disciplinary actions taken against you by the law enforcement agency;
>
>5.   Any and all documents that evidence, reflect, refer, and/or relate to any communications between you and any other individual or entity (excluding your attorneys), including but not limited to any law enforcement agency and/or any other towing companies approved to perform police-initiated tows, regarding billing practices, including, but not limited to, those communications related to rates charged, manner of calculating rates, and per pound billing; and
>
>6.   Any and all documents that evidence, reflect, refer, and/or relate to all fee schedules and/or rates charged for your towing and recovery services for vehicles with a GVW of 25,000 pounds or greater, to include both services provided at the request of a law enforcement agency and those requested by an owner or operator of a vehicle, including, but not limited to, any fee schedules, rate schedules, website postings, tariffs, or other similar documents.

*See* Exh. A.  Mullens and Automotive Support previously attempted to quash a subpoena seeking documents identical to those sought in the Subpoena for virtually identical reasons to those set forth in Morton's written objections. *See* ECF 48-49.  Mullens' and Automotive Support's Motions were briefed and this Honorable Court issued an Order compelling Mullens and Automotive Support to produce documents in response to the subpoena at issue. *See* ECF 51-51, 65.  Indeed, in denying Mullens' and Automotive Support's Motions this Honorable Court has **already ruled** that, as to the documents sought in an identical subpoena, "it does not take a leap of faith to see the relevance of the items sought by Plaintiff" and affirmatively finding that "Plaintiff has met its burden of showing relevance in the information sought." *See* ECF 65 (emphasis added).  Moreover, this Honorable Court further stated that Crete "has pled sufficient facts to allege that the towing companies approved by the Maryland State Police, **not just Defendant**, have conspired to increase profits by charging per weight rather than per vehicle towing rates." *Id.* (emphasis added).

    a.   **Good Faith Attempts to Resolve Discovery Dispute**

Eleven (11) days after receipt of the Objections outlined in Exhibit C, undersigned counsel e-mailed counsel for Morton's asking for availability to discuss same. *See* August 8, 2021 e-mail attached hereto as Exhibit D.  Additional e-mails seeking availability to discuss Morton's Objections were sent on August 31, 2021, September 3, 2021, and October 1, 2021. *See* August 31, 2021 e-mail attached hereto as Exhibit E; *see* September 3, 2021 e-mail attached hereto as Exhibit F; *see* October 1, 2021 e-mail attached hereto as Exhibit G. Moreover, in these e-mails, undersigned counsel advised counsel for Morton's of this Honorable Court's ruling compelling production of documents sought in an identical subpoena.[2]  In addition to the above e-mail correspondence, undersigned counsel also left various voicemails with counsel for Morton's to discuss the Objections.  No response was received to undersigned counsel's good faith attempts to discuss via telephone or e-mail.

    **b.** **<u>Morton's Objections</u>**

Morton's lodged objections arguing the information sought in the Subpoena was 1) "overly broad" and "not properly limited in time or scope," 2) "may require the disclosure of trade secrets or other confidential and/or proprietary information," 3) "may require disclosure of information protected by the attorney-client privilege and/or attorney work-product," 4) "seeks information that is outside the scope of discovery because it is not relevant to the Plaintiff's claims or the subject matter involved," 5) "seeks information that is not proportional to the needs of the case," and 6) "places an undue burden and expense on Morton's that outweighs the likely benefit." *See* Exh. C.

In support, Morton's provided the affidavit of John Collins stating that Morton's "does not maintain invoices or similar records in a manner that allows indexing or searching with respect to

---

[2] Not only did undersigned counsel advise counsel for Morton's of the ruling, but also provided counsel for Morton's with a copy of this Honorable Court's Memorandum Opinion and Order.

gross vehicle weight," that "Morton's would need to review each and every invoice to determine whether the invoice is responsive," that "with respect to *some* invoices, Morton's may not be able to determine the gross vehicle weight at issue," and estimating that with a one minute per invoice review, it would take 3,330 hours to review the number of invoices. *Id.* Additionally, the affidavit stated Morton's does not have staff to timely review the invoices (in addition to their existing job duties), and that to respond to the Subpoena would "obviously be costly and extremely disruptive to the ongoing operation of Morton's regular business." *Id.* Finally, Morton's states it does not "intentionally disclose to its competitors or otherwise make public" its pricing, customer lists and other similar information" such that disclosure "could potentially result in harm to Morton's." *Id.*

### III. STANDARD OF REVIEW

A party to litigation is permitted to issue subpoenas to non-parties that require the production of documents and other discovery materials provided such requests fall within the scope of discovery. *See generally* FED. R. CIV. PRO. 45, 34 and 26. Indeed, Federal Rule of Civil Procedure 30 permits a party to depose any person with such attendance being compelled by subpoena under Rule 45. Information need not be admissible in evidence to be within the scope of discovery. *See* FED. R. CIV. PRO. 26(c)(3); *see also Innovative Therapies, Inc. v. Meents*, 302 F.R.D. 364, 377 (D. Md. 2014) ("Under Rule 26(b), it is '**relevance** not **admissibility**' that drives the inquiry as to whether the information is discoverable."), quoting *Herchenroeder v. Johns Hopkins Univ. Applied Physics Lab.*, 171 F.R.D. 179, 181 (D.Md.1997) (emphasis in original); & FED. R. EVID. 401 ("Test for Relevant Evidence. Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action"). The limits of discovery issued to non-parties is co-extensive with the general rules governing all discovery that is set forth in Rule 26. *Innovative*

6

*Therapies, Inc. v. Meents*, 302 F.R.D. 364, 381 (D. Md. 2014). Rule 26(b) governing the scope of discovery states:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

*See* F.R.C.P. 26(b).

In addition to permitting the issuance of subpoenas to non-parties, Federal Rule of Civil Procedure 45 also permits the issuing party to file a Motion to Compel production of documents sought in a subpoena in the event written objections are submitted by the non-party. *See* F.R.C.P. 45(d)(2)(b)(i) (stating that "If an objection is made, the following rules apply: (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.").

**IV. ARGUMENT**

*a. Morton's has Failed to Comply with Federal Rule of Civil Procedure 45*

Prior to addressing the merits of any claimed privilege, in responding to a subpoena under Federal Rule of Civil Procedure 45(e), a party withholding information on the basis of claimed privilege must (i) expressly make the claim; and (ii) **describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim**." (emphasis added). Morton's has done nothing more than make unsupported assertions that the information is in fact confidential and/or proprietary, without any of the description required under

7

the Federal Rules. As such, Morton's written objections do comply with Federal Rule of Civil Procedure 45 due to the failure to describe what document(s) contain the allegedly confidential and/or proprietary information or a description of the document(s) that enables Crete to assess the claimed privilege such that Morton's should be compelled to respond to the Subpoena.

> **b.** *Morton's has Failed to Establish that the Information Sought is a Trade Secret or Otherwise Privileged*

The party asserting the existence of a privilege bears the burden of establishing that privilege. *In re Grand Jury Proc., Thursday Special Grand Jury Sept. Term*, *1991*, 33 F.3d 342, 352 (4th Cir. 1994). There is "no absolute privilege for trade secrets and similar confidential information." *Innovative Therapies, Inc.*, 302 F.R.D. at 380 *(citing Gonzales v. Google, Inc.,* 234 F.R.D. 674, 685 (N.D.Cal.2006) (quoting *Centurion Indus., Inc. v. Warren Steurer & Assoc.,* 665 F.2d 323, 325 (10th Cir.1981)). "Trade secret or commercially sensitive information must be 'important proprietary information' and the party challenging the subpoena must make 'a strong showing that it has historically sought to maintain the confidentiality of this information.'" *Innovative Therapies, Inc.*, 302 F.R.D. at 380 *(citing Gonzales,* 234 F.R.D. at 684 (quoting *Compaq Computer Corp. v. Packard Bell Elec., Inc.,* 163 F.R.D. 329, 338 (N.D.Cal.1995)); *Deman Data Systs., LLC v. Schessel,* No. 4:13–mc–00520, 2014 WL 204248, at *2 (M.D.Pa. Jan. 16, 2014) ("[t]he party resisting discovery must first establish that the information is a trade secret and that its disclosure would be harmful.").

Under common law, Maryland Courts have utilized a six-factor test in evaluating whether information qualifies as a trade secret:

> (1) the extent to which the information is known outside of [the employer's] business; (2) the extent to which it is known by employees and others involved in [the employer's] business; (3) the extent of measures taken by [the employer] to guard the secrecy of the information; (4) the value of the information to [the employer]

8

>
> and to his competitors; (5) the amount of effort or money expended by [the employer] in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Padco Advisors, Inc. v. Omdahl*, 179 F. Supp. 2d 600, 610 (D. Md. 2002) (*citing Dworkin v. Blumenthal*, 77 Md.App. 774, 551 A.2d 947, 950 (Md.1989)). Pursuant to the Maryland Uniform Trade Secrets Act, a "trade secret" is:

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
> (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Md. Code Ann., Com. Law § 11-1201

Regardless of what definition is used, Morton's has fallen woefully short of its burden of establishing that the information sought in the Subpoena is a trade secret, or otherwise confidential information. The only attempt to make the requisite showing is a self-serving affidavit stating that Morton's "does not intentionally disclose to its competitors or otherwise make public Morton's pricing, customer lists and other similar information."[3] There is no information regarding the extent to which the information sought is known outside Morton's business, what (if any) efforts have been undertaken to keep this information confidential in the past, what (if any) efforts were undertaken to develop this allegedly confidential information, or any of the other information needed to evaluate the legitimacy of the claimed trade secret and/or confidential information

---

[3] Although a protective order pursuant to Federal Rule 26 is not at issue here, Morton's has still not met the burden of establishing protection under the applicable standard. To establish that a document is entitled to protection from disclosure under Rule 26(c), a party must show that (1) the material in question is a trade secret or other confidential information within the scope of Rule 26(c), and (2) disclosure would cause an identifiable, significant harm. *Minogue v. Modell*, 2011 WL 1308553, at *4 (D.Md. Mar. 30, 2011) (quoting Deford v. Schmid Prods. Co., 120 F.R.D. 648, 653 (D.Md.1987)). Where the party seeking protection under Rule 26 is a business, "it must show that disclosure 'would cause significant harm to its competitive and financial position.'" *Id.* (*quoting Deford*, 120 F.R.D. at 653).

protection alleged by Morton's. Indeed, "[t]he normal and expected reluctance of business firms to disclose sales information, however, is in itself an insufficient basis on which to deny discovery of that information under appropriate protection from divulgement to competitors." *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1211 (Fed. Cir. 1987). It flies in the face of logic that an invoice containing information voluntarily added by Morton's such as pricing, the make and model of vehicles, and the customer and which are sent to individuals outside of Morton's (*i.e.* their customers) can now be claimed as confidential. Morton's has failed to meet its burden of establishing that the documents sought in the Subpoena are trade secrets or otherwise privileged such that Morton's should be compelled to comply with the Subpoena.

       **c.** *The Discovery Sought is Both Relevant and Proportional to the Reasonable Needs of the Case*

In assessing whether the discovery sought is permissible under the Federal Rules of Civil Procedure, Court must consider whether the information sought is relevant, and if so, then determine whether the discovery sought is proportional to the reasonable needs of the case, taking into account the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26.

The information sought in the Subpoena is clearly relevant, and as stated above, this Honorable Court has already held as much with regard to an identical subpoena to another towing company who raised the same arguments as those raised by Morton's. Morton's billing practices, communications regarding same, and any documents provided by the MSP in conducting non-consensual tows would have a "tendency to make a fact more or less probable than it would be without the evidence" and is "of consequence in determining the action." *See infra*.   Moreover,

the threshold for relevance is a low threshold to meet. *Walters v. Prince George's Cty., Md.*, 2013 WL 497920, at *4 (D.Md. 2013).

As the information sought in the Subpoena is relevant the inquiry next shifts to whether the discovery sought is indeed proportional to the reasonable needs of the case, taking into account the above named factors. The first factor is the importance of the issues at stake in the action. The billing practices of MSP approved towing companies is not just an important issue for Crete and the commercial transportation industry, but the public at large as any company can potentially be subjected to a non-consensual tow in the event of a motor vehicle accident. The second factor to consider is the amount in controversy. Here, owing to the treble and punitive damages at issues, the amount in controversy is significant in light of the alleged damages, treble damages, punitive damages and attorneys' fees such that the discovery sought is proportional to the reasonable needs of the case. The third factor to consider is the parties' relative access to the relevant information. Here, Crete has no access to this information as these invoices and documents are not readily available in the public forum or any other source, and Morton's outright refusal to provide any documentation is prejudicial to Crete's efforts to litigate its good faith claims against Defendant.

The fourth factor is the importance of the discovery in resolving the issues. Here, the Subpoena and the documentation sought therein, and the Deposition Notice, is of great importance in resolving the issues involved in this litigation. Crete has information that suggests that Defendant conspired with other MSP towing companies to change their billing practices in an attempt to "set the industry standard" and utilize per pound billing for the sole purpose of artificially and improperly inflating prices for police-initiated, nonconsensual tows of commercial motor vehicles. Moreover, Crete asserts that these companies changed their billing practices to per pound at or around the same time when the idea of per pound billing was conceived. Crete believes

discovery will reveal that the towing companies on the MSP approved list changed their billing practice around the same time, which is further evidence of collusion regarding billing practices. The substance of any billing documentation and/or information relating to MSP non-consensual tows, and any associated testimony, has direct bearing on the claims asserted in the Complaint, including, *inter alia*, whether Morton's engaged in per pound billing, if there were any communications with other MSP approved towing companies to that effect, and when any change to per pound billing went into effect as it relates to other tow companies.[4] As to the alleged burden, Morton's has failed to actually articulate the alleged monetary burden as discussed more fully below, however, regardless of said burden the benefit of receiving this information far outweighs any burden due to the importance of the issues in this litigation.

   **d.** *The Objections Fail to Establish the Alleged Burden*

Morton's also claims the Subpoena imposes an "undue burden and expense on Morton's that outweighs its likely benefit." *See* Exh. C. In the Objections, Morton's did not even attempt to quantify the monetary burden and how (or why) such a burden outweighs the benefit to Crete. The only potential support for the position that the Subpoena poses an undue hardship is the affidavit of Mr. Collins stating that Morton's does not maintain invoices in a manner that allows indexing or searching with respect to gross vehicle weight, Morton's would need to review every invoice to determine if responsive, and that Morton's does not have sufficient staff to review the invoices. Again, the burden falls to Morton's as the moving party to establish that the Subpoena subjects Morton's to an *undue* burden. Morton's has made no good faith attempt to establish what this alleged burden is, and provides no proof that it would lack the resources to respond to the Subpoena. Additionally, Morton's has failed to establish with any specificity how (or why) the

---

[4] Crete has no information regarding Morton's resources other than the self-serving affidavit regarding the time needed to respond to the Subpoena produced with the objections.

invoicing system does not have the capacity to assist with locating the responsive documents, or why some invoices would not have gross vehicle weight. Morton's cannot avoid a properly served Subpoena seeking relevant and discoverable materials through an ambiguous and unsupported statement regarding the alleged burden to Morton's. Moreover, in the event there is an undue burden to Morton's Crete will assist with the production and any sorting of the responsive invoices such that the burden would fall to Crete and not Morton's.

It is Morton's burden under Federal Rule of Civil Procedure 45(d)(3)(A) to show that any alleged burden is an *undue* burden. Morton's has chosen to operate a business. A normal and customary part of operating a business is responding to subpoenas and requests for information related to that business. While Morton's may view responding to the Subpoena as a burden, it is not an "undue burden," as it is a task that is intertwined with operating a business and is part of a business's normal costs of operation. In light of the above, Morton's should be compelled to respond to the Subpoena.

> e. *Morton's has Failed to Establish that the Subpoena is Overly Broad or Establish any other Privilege Applies*

Simply stating a discovery request is "overbroad" does "not suffice to state a proper objection." *Lynn v. Monarch Recovery Mgmt., Inc.*, 285 F.R.D. 350, 360 (D.Md. 2012) (internal citations omitted). Instead, the "objecting party must specify which part of a request is overbroad, and why." *Id.* Objections must be stated with particularity and specificity; objections may not be "boilerplate." *Id.* Similarly, "objections to discovery based on claims of privilege must be made with specificity." *See e.g. Adams v. Sharfstein*, 2012 WL 2992172, at *3 (D. Md. July 19, 2012) (denying a non-party's objections that a defendant's requests for medical records were privileged as the objections were not specific but rather general and made "in boilerplate fashion").

Here, Morton's has made cursory allegations that the Subpoena is overly broad and seeks information protected by the attorney-client and/or work-product privileges. In doing so, Morton's has not articulated any evidence whatsoever as to *how or why* the Subpoena is overly broad or seeks privileged information. Absent this evidence, Morton's cannot carry its burden of resisting production of documents and therefore, Morton's should be compelled to respond to the Subpoena.

## V.     CONCLUSION

WHEREFORE, for the foregoing reasons, Crete Carrier Corp. respectfully requests this Honorable Court grant the instant Motion to Compel and award Crete any other relief this Honorable Court deem just and proper under the circumstances, including but not limited to Crete's reasonable attorney's fees in bringing the instant Motion.

Respectfully submitted,

*/s/ Tamara B. Goorevitz*
Tamara B. Goorevitz (#25700)
Renee L. Bowen (#19623)
James K. Hetzel (#20158)
FRANKLIN & PROKOPIK, P.C.
Two North Charles Street, Suite 600
Baltimore, MD  21201
(410) 752-8700
(410) 752-6868 (fax)
tgoorevitz@fandpnet.com
rbowen@fandpnet.com
jhetzel@fandpnet.com
*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE WITH RULE 37

Undersigned counsel hereby certifies that she made good faith efforts to resolve the discovery dispute that is the subject of the instant motion. Specifically, undersigned counsel sent correspondence by e-mail on August 8, 2021, August 31, 2021, September 3, 2021, and October 1, 2021 requesting availability to discuss same. Undersigned counsel also contacted Morton's counsel and left voicemails. To date, no response has been received.

*/s/ Renee L. Bowen*
Renee L. Bowen (#19623)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of October, 2021, a copy of the foregoing Motion was served via the Court's ECF system upon:

Donald E. Pallett, Esq.
Kevin A. Clasing, Esq.
Robert M. Westra, Esq.
Parker, Pallett, Slezak & Russell, LLC
11450 Pulaski Highway
White Marsh Maryland 21162
*Attorneys for Defendant / Counter-Plaintiff*

Jennifer A. King, Esq.
DeCaro, Doran, Siciliano, Gallagher & DeBlasis, LLP
17251 Melford Boulevard, Suite 200
Bowie, Maryland  20715
jking@decarodoran,com
*Attorneys for Morton's*

                                          */s/ Tamara B. Goorevitz*
                                          Tamara B. Goorevitz (#25700)