IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CRETE CARRIER CORP.,

*Plaintiff*,

v.

SULLIVAN & SONS, INC. d/b/a
SULLIVAN'S GARAGE

*Defendant*.

Civil Action No. ELH-21-328

**MEMORANDUM OPINION**

This case involves a dispute between a long-haul trucking company, plaintiff Crete Carrier

Corp. ("Crete"), and a towing and recovery company, defendant Sullivan & Sons, Inc. d/b/a

Sullivan's Garage ("Sullivan").  The dispute is rooted in a single-vehicle accident on Interstate 95

in Harford County, Maryland, involving a 53-foot tractor-trailer (the "Vehicle") owned by Crete.

At the time of the accident on the evening of August 28, 2020, the Vehicle had been carrying a

load of cargo (the "Load").  As a result of the accident, the Vehicle could not be driven from the

scene, and the Maryland State Police ("MSP") asked Sullivan to recover the Vehicle.

Sullivan towed the Vehicle as well as the Load to its property, and thereafter sent an invoice

(the "Invoice") to Crete for its services.  However, based on the purportedly excessive rate of the

Invoice, Crete refused to pay Sullivan.  In turn, Sullivan refused to release the Vehicle and the

Load to Crete.

There is no dispute that the accident occurred; that Sullivan recovered and towed the

Vehicle; and that Crete has refused to pay for the services.  Crete has escalated a garden variety

billing dispute by launching an eight-count complaint against Sullivan that includes claims for

antitrust violations and a violation of the Racketeer Influenced and Corrupt Organizations Act

("RICO"), 18 U.S.C. §§ 1961, *et seq.  See* ECF 1 (the "Complaint").  In particular, in a suit filed on February 9, 2021, plaintiff alleged claims for replevin (Count I); injunctive relief (Count II); tortious interference with contract (Count III); tortious interference with economic and business relations (Count IV); conversion (Count V); violation of the Sherman Antitrust Act, 15 U.S.C. § 1 (Count VI); a RICO violation (Count VII);  and violation of the Maryland Antitrust Act, Md. Code (2021 Repl. Vol.), § 11-204 of the Commercial Law Article (Count VIII).  The Complaint is supported by two exhibits, which are docketed at ECF 1-2 and ECF 1-3.[1]

Sullivan answered the Complaint (ECF 6, the "Answer"), asserting numerous defenses.[2] *See id.* ¶¶ 86-107.   And, Sullivan also filed a separate "Counter-Complaint" (ECF 11, "Counterclaim"), asserting claims against Crete for quantum meruit (Count I); "Statutory/Regulatory Contract" (Count II); and "Contract" (Count III).  ECF 11. Sullivan seeks compensatory damages in the amount of $500,000, as well as attorneys' fees, interest, and costs. *See* ECF 11 at 4, 5, 6.  The Counterclaim is supported by one exhibit.  *See* ECF 11-1.

In this Memorandum Opinion, I construe the Counterclaim as a Motion to Amend the Answer to include the Counterclaim ("Motion to Amend").   I also consider Crete's motion to dismiss the Counterclaim  (ECF 21), supported by a memorandum of law.  ECF 21-1 (collectively, the "Motion to Dismiss").  Sullivan opposes the Motion to Dismiss.  *See* ECF 27.  Crete did not reply, and the time to so has expired.  *See* Local Rule 105.2(a).

In addition, I address a motion for contempt (ECF 54, "Contempt Motion") filed by Sullivan with respect to Crete's alleged failure to comply with the Court's Order of June 30, 2021

---

[1] Suit is founded on the Court's diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a), as well as its federal question jurisdiction, pursuant to 28 U.S.C. § 1331.  ECF 1, ¶¶ 5-6.

[2] Surprisingly, Sullivan never moved to dismiss the RICO claim or the antitrust claims.

(ECF 46).  That Order authorized Crete to remove the Vehicle and the Load from Sullivan's property.  The Contempt Motion is supported by an exhibit.  ECF 54-1.  Crete opposes the Contempt Motion (ECF 62), and has submitted several exhibits.  *See* ECF 62-1 through ECF 62-5.  Sullivan did not reply and the time do so has expired.  *See* Local Rule 105.2(a).

No hearing is necessary to resolve these matters.  *See* Local Rule 105.6.  As noted, I shall construe the Counterclaim as a Motion to Amend the Answer, so as to include the Counterclaim, and, for the reasons that follow, I shall grant it.  Moreover, I shall deny the Motion to Dismiss and the Contempt Motion.

## I.        Factual Background[3]

On August 28, 2020, "an employee and/or agent" of Crete was operating a tractor-trailer owned by Crete, transporting cargo from C.G. Sports in Linden, New Jersey to Variety Wholesale in Henderson, North Carolina.  ECF 11, ⁋ 5.  While traveling through Maryland, the Vehicle was involved in a single-vehicle accident on Interstate 95 ("I 95") in Harford County.  *Id.* ⁋ 7.  This portion of I 95 is known as the John F. Kennedy Memorial Highway ("Highway").  *See John F. Kennedy Memorial Highway*, MARYLAND TRANSP. AUTH., https://mdta.maryland.gov/Toll_Facilities/JFK.html (last visited Jan. 20, 2022) (stating that the John F. Kennedy Memorial Highway is "a 50-mile section of I-95 from the northern Baltimore City line to Delaware").[4]  The MSP was "called to the scene to investigate and assist with clearing the scene."  ECF 11, ⁋ 8.

---

[3] The factual allegations are derived from the Counterclaim.  Given that plaintiff has moved to dismiss the Counterclaim, I must assume the truth of the allegations in the Counterclaim.

[4] The Court may take judicial notice of matters of public record.  *See* Fed. R. Evid. 201.

According to Sullivan, the MSP "maintains a list of towing companies [that] are authorized by MSP to perform towing and recovery services at MSP's request," for the purposes of "clearing motor vehicle accidents from state highways . . . ." ECF 11, ⁋ 9. Specifically, after the MSP determines that clearing an accident will require towing services, the "MSP selects a towing company from its pre-approved list to perform the necessary . . . services." *Id.* When the MSP engages a towing company to perform such services, the resulting tow is referred to as a "'nonconsensual tow[ ].'" *Id.*

Sullivan alleges that "it is, and at all times pertinent was, one of the approved Permit Holding towing companies on the MSP list and authorized to perform nonconsensual towing and recovery services at the request and direction of the MSP." *Id.* ⁋ 10. "Following the Accident, MSP engaged Sullivan to perform the towing and recovery services related to the Vehicle and the Load." *Id.* ⁋ 11.

However, Sullivan also alleges that the "'nonconsensual tow' at issue became a 'consensual tow' during the recovery process.'" *Id.* ⁋ 9 (emphasis omitted). Sullivan asserts: "Crete, through its agent, had conversations with Sullivan during the Recovery process." *Id.* ⁋ 12. Through these conversations, Sullivan came to believe that Crete had "give[n] 'permission'" to Sullivan "to finish the Recovery and store vehicles [sic], cargo and various debris at Sullivan's Garage." *Id.* Thus, in Sullivan's view, it "had a verbal contract" with Crete to perform the services in issue. *Id.* And, "at the request of MSP, <u>and at the request of Crete</u>," Sullivan "performed the towing and recovery services following the Accident," which "included removing the Vehicles [sic], its cargo, cleanup of debris from the roadway and transportation to Sullivan's tow yard." *Id.* ⁋ 13 (underlining in original).

Sullivan subsequently issued Invoice No. 520803422 to Crete in the amount of $211,455 for the services rendered following the accident.  ECF 11, ⁋ 14; *see* ECF 11-1 (the Invoice).[5] However, Crete refused to pay for the towing and cleanup services that Sullivan provided.  ECF 11, ⁋ 15.

## II.   Motion to Dismiss the Counterclaim:  Standard of Review

Crete has challenged certain claims in the Counterclaim by way of a Motion to Dismiss under Rule 12(b)(6).  As discussed, *infra*, Rule 12(b)(6)is also pertinent to the analysis applicable to the Motion to Amend the Answer.

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint or, in this case, a proposed counterclaim.  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Services Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).   A Rule 12(b)(6) motion constitutes an assertion by a defendant (or a counterdefendant) that, even if the facts alleged by a plaintiff (or counterplaintiff) are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d

---

[5] In the Counterclaim, Sullivan refers to the Invoice as No. 520803442.  ECF 11, ⁋ 14.  But, a copy of the Invoice contained in ECF 11-1 identifies it as No. 520803422.

321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).  The rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in Twombly expounded the pleading standard for 'all civil actions'. . . ."); *see also Fauconier v. Clarke*, 996 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby, Miss.,* 574 U.S. 10, 11 (2014) (per curiam).  But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief.  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation.  *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555.  "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief.  *Iqbal*, 556 U.S. at 678.  Rather, to satisfy the minimal requirements of Rule 8(a)(2), the

complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . .  [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Glassman v. Arlington Cnty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir.

2009).    Because  Rule  12(b)(6) "is  intended  [only]  to  test  the  legal  adequacy  of  the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis in *Goodman*) (citation omitted).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are  limited  to  considering  the  sufficiency  of  allegations  set  forth  in  the  complaint  and  the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir.  2013), *abrogated  on  other  grounds  by  Reed.  v. Town  of  Gilbert*, 576  U.S.  155 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But,  under  limited  circumstances,  when  resolving  a  Rule  12(b)(6)  motion,  a  court  may consider  documents  beyond  the  complaint  without  converting  the  motion  to  dismiss  to  one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).   In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg.  v.  Pa.  Higher  Educ.  Assistance  Agency*, 745  F.3d  131,  136  (4th  Cir.  2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows. Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)); *see USA Eng. Language Ctr. v. Accrediting Council for Continuing Educ. & Training, Inc.*, No. 19-2308, 2021 WL 3162671, at *2 (4th Cir. July 27, 2021). And, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 882 F.3d at 167. In other words, the "general rule" is that "the exhibit prevails in the event of a conflict between an attached exhibit and the allegations of a complaint." *Id.* at 165. But, "in cases where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.* at 167.

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166 (citations omitted); *see also Fusaro,* 930 F.3d at 248; *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (emphasis in original) (citation omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

Sullivan attached a copy of the Invoice as an exhibit to the Counterclaim. *See* ECF 11-1. Moreover, the Counterclaim expressly references the Invoice. *See* ECF 11, ¶¶ 15, 34. And, Sullivan's statutory and common law claims are predicated on Crete's alleged obligation to pay for the charges imposed by Sullivan, as set forth in the Invoice. Thus, it is integral to Sullivan's Counterclaim. And, because there is no dispute concerning the Invoice's authenticity, I may consider it in resolving the Motion to Dismiss.

### III.   The Counterclaim

### A.   Counterclaims Generally

Sullivan did not include the Counterclaim with its Answer. *See* ECF 6. Rather, it filed a standalone Counterclaim. ECF 11. But, Crete contends that Rules 7 and 13 of the Federal Rules of Civil Procedure require a defendant to "assert any [of] its counterclaims in its Answer." ECF 21-1 at 5.

Rule 13 is titled "Counterclaim and Crossclaim." It provides, in pertinent part:

(a)   COMPULSORY COUNTERCLAIMS:

(1) *In General*.  A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim:

    (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and

    (B) does not require adding another party over whom the court cannot acquire jurisdiction

\* \* \* \* \*

(b)    PERMISSIVE COUNTERCLAIM.  A pleading may state as a counterclaim against an opposing party any claim that is not compulsory.

Fed. R. Civ. P. 7(a) "enumerates the pleadings permitted in federal civil practice" and, in so doing, "sharply limits the nature and number of pleadings available under the federal rules."  5 CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, FED. PRAC. AND PROC. CIV., § 1183 (4th ed. 2021 Update) (citations omitted).  Specifically, Rule 7(a) defines a "pleading" as a complaint; an answer to a complaint; an answer to a counterclaim designated as a counterclaim; an answer to a crossclaim; a third-party complaint; an answer to a third-party complaint; and if the court so orders, a reply to an answer.

Accordingly, because Rule 7(a) does not include a counterclaim as a pleading, a counterclaim alone is not a pleading within the meaning of the Federal Rules.  *See Erdman v. Falkner*, 1:18-cv-414-TFM-C, 2019 WL 2250276, at *2 n.6 (S.D. Ala. May 24, 2019) ("In sum, a counterclaim is not a 'pleading,' and a counterclaim cannot be filed (typically) as a stand-alone document.") (citations omitted); *Meierhenry Sargent LLP v. Williams*, Civ. 16-4180, 2019 WL 2105986, at *4 (D.S.D. May 14, 2019) (finding that "because Defendants have not asserted their Counterclaims within a pleading, the Counterclaims are not presently before the Court"); *KAABOOWorks Services, LLC v. Pilsl*, 17-cv-02530-CMA-KLM, 2019 WL 1979927, at *4 (D. Colo. May 3, 2019) ("In other words, a counterclaim filed as a standalone document is improper; a counterclaim incorporated into an answer is proper."); *Safety Today, Inc. v. Roy,* Nos. 2:12–cv–

11

510, 2:12–cv–929, 2013 WL 1282384, at *2 (S.D. Ohio Mar.27, 2013) ("A counterclaim is not a stand-alone pleading; rather, a counterclaim is to be included in a pleading.") (Internal quotation marks omitted).

As noted, Sullivan did not file the Counterclaim within a pleading, such as its Answer. However, this error does not compel dismissal of the Counterclaim.

The federal rules favor substance over form and technicality. *See* Fed. R. Civ. P. 1; *Parker v. Allentown, Inc.*, 891 F. Supp. 2d 773, 779 (D. Md. 2012) (stating that "the Court will not exalt form over substance"). Anticipating that the Court might find that the Counterclaim was improperly filed, Sullivan has expressly requested leave to amend the Answer to incorporate the Counterclaim. *See* ECF 27 at 6.

Thus, I shall construe the Counterclaim as a motion to amend Sullivan's Answer to include the Counterclaim. *See Safety Today, Inc.*, 2013 WL 1282384, at *2 (finding that where defendants filed an improper "motion for leave to file counterclaims," the court could, for purposes of efficiency, "construe defendants' motion to be filed properly as a motion for leave to amend the answer to add the counterclaims"). I turn to that request.

### B.  The Motion to Amend to Add the Counterclaim

As noted, I shall construe the Counterclaim as a Motion to Amend the Answer to include the Counterclaim. A pleading may be amended "once as a matter of course" within twenty-one days after serving it or "21 days after service of a responsive pleading or 21 days after service of a motion under Fed. R. Civ. P. 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(A), (B). The Answer was docketed on March 1, 2021. *See* ECF 6. The Counterclaim was filed twenty-two days later, on March 23, 2021 (*see* ECF 11). Thus, strictly speaking, the Counterclaim is not governed by Fed. R. Civ. P. 15(a)(1).

Fed. R. Civ. P. 15(a)(2) provides: "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011). And, under Rule 15(a), the district court has "broad discretion concerning motions to amend pleadings . . . ." *Booth v. Maryland*, 337 Fed.Appx. 301, 312 (4th Cir. 2009) (per curiam); *see also Foman*, 371 U.S. at 182; *Laber v. Harvey*, 438 F.3d 404, 426-29 (4th Cir. 2006) (en banc).

Notably, the "court should freely give leave [to amend] when justice so requires." *See Foman*, 371 U.S. at 182; *Simmons*, 634 F.3d at 769; *Laber*, 438 F.3d at 426. Indeed, *Foman*, 371 U.S. at 182, "mandates a liberal reading of the rule's direction for 'free' allowance: motions to amend are to be granted in the absence of a 'declared reason' 'such as undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment, etc.'" *Ward Elecs. Serv., Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir. 1987) (quoting *Foman*, 371 U.S. at 182); *see Booth*, 337 F. App'x at 312.

"Delay alone is an insufficient reason to deny leave to amend." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (citation omitted); *see also Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980) ("Delay alone however, without any specifically resulting prejudice, or any obvious design by dilatoriness to harass the opponent, should not suffice as reason for denial."); *Brightwell v. Hershberger*, DKC-11-3278, 2015 WL 5315757, at *3 (D. Md. Sept. 10, 2015) ("Delay, however, 'cannot block an amendment which does not prejudice the opposing party.'") (quoting *Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 421 (4th Cir. 1990)). "Rather, the delay must be accompanied by prejudice, bad faith, or futility." *Edwards*, 178 F.3d at 242 (citation omitted); *see Simmons*, 634 F.3d at 769; *Equal Rights Center v. Niles Bolton*

*Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *Steinburg v. Chesterfield Cty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008).

The Counterclaim was not the product of undue delay.  Of note, it was filed roughly one month *before* the deadline to amend pleadings set forth in the then-operative Scheduling Order. *See* ECF 9 (establishing*, inter alia*, that the parties must move for joinder of additional parties and amendment of pleadings by April 22, 2021).  Nor is there any suggestion that the Counterclaim was filed in bad faith or for purposes of delaying the progress of the litigation.

Moreover, Crete can hardly claim that it would suffer prejudice if the Court were to grant Sullivan leave to amend the Answer by incorporating the Counterclaim.  As Crete recognizes (ECF 21-1 at 5), the allegations in the Counterclaim are predicated on the same events underlying the allegations at issue in the Complaint.  In addition, Sullivan does not seek to add any additional parties to the suit.  Thus, the discovery needed to investigate the Counterclaim would largely mirror the discovery pertinent  to the suit.

Even so, a proposed amendment must not be futile.  *See Foman*, 371 U.S. at 182.  Pursuant to Rule 15(a), a "proposed amendment is futile when it is 'clearly insufficient or frivolous on its face.'"  *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d at 503, 510 (4th Cir. 1986)).  A proposed amendment is also futile if it would add a claim that would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *See Save Our Sound OBX*, 914 F.3d at 228;  *Davison v. Randall*, 912 F.3d 666, 690 (4th Cir. 2019); *see also Martin v. Duffy*, 858 F.3d 239, 247-48 (4th Cir. 2017) (affirming denial of leave to amend on futility grounds where the plaintiff's "pleading deficiency cannot be cured by amendment of his complaint"), *cert. denied*, 138 S. Ct. 738 (2018); *Devil's Advocate, LLC v. Zurich Am. Ins. Co.*, 666 F. App'x 256, 267 (4th Cir. 2016) (per curiam)

(affirming district court's denial of leave to amend on the basis of futility, because the amended complaint would survive a motion to dismiss under Rule 12(b)(6)); *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 320 (4th Cir. 2010) (stating that a court need not grant leave to amend where the amendment would have "no impact on the outcome of the motion to dismiss"); *Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 420-21 (4th Cir. 1990)("There is no error in disallowing an amendment when the claim sought to be pleaded by amendment plainly would be subject to a motion to dismiss under Fed. R. Civ. P. 12(b)(6).").

But, the review for futility "is not equivalent to an evaluation of the underlying merits of the case.  To the contrary, '[u]nless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations . . . conjecture about the merits of litigation should not enter into the decision whether to allow amendment.'"   *Next Generation Grp., LLC v. Sylvan Learning Ctrs., LLC*, CCB-11-0986, 2012 WL 37397, at *3 (D. Md. Jan. 5, 2012) (quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)).

Crete does not challenge Count I of the Counterclaim.  Rather, Crete has challenged Counts II and III, for failure to state a claim.  ECF 21-1 at 5-8.  But, as I explain, Crete's arguments pack no punch.  Thus, I shall grant Sullivan leave to amend the Answer to incorporate the Counterclaim.

### C.  Count II: Statutory/Regulatory Contract

Count II of the Counterclaim contains a curiously styled claim, entitled "Statutory/Regulatory Contract."  ECF 11, ¶¶ 25-29.  Crete complains that the claim is subject to dismissal because "there is no such recognized cause of action."   ECF 21-1 at 5.  However, it is evident that Sullivan means to allege that Crete is liable to Sullivan based on State and local regulations that, in its view, obligate Crete to pay for the services provided to Crete by Sullivan.  ECF 11, ¶¶ 27-28.

In particular, Sullivan maintains that Code of Maryland Regulations ("COMAR") 11.07.03.16 as well as "Harford County Code 3.5.4 Police Initiated Towing" (the "HC Regulation"), provide two avenues for it to pursue the relief it seeks.[6]  And, as noted, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby, Miss.*, *supra*, 574 U.S. at 11.

The HC Regulation provides: "A towing company shall be required to release a disabled vehicle *upon payment of authorized charges* during normal business hours, but may release a motor vehicle to the owner or owner's authorized agent at other times without additional charges being applied."  (Emphasis added).[7]

And, COMAR 11.07.03.16 states, in relevant part (emphasis added):

> The *operator or owner* of a vehicle for which a permittee provides any services under these regulations is *responsible for any charge imposed for those services*. Neither the Authority nor the State is responsible or liable for any cost associated with services performed by a permittee.

Crete argues that these provisions have no bearing on this case.  In particular, it complains that COMAR 11.07.03.16 "applies to the Maryland Transit Authority" and the HC Regulation "applies to the Harford County Police Department."  ECF 21-1 at 6 (emphasis omitted).  And, Crete points out that Sullivan rendered towing and recovery services "at the direction and under the authority of the Maryland State Police.[ ]"  *Id.* (emphasis omitted).

---

[6] Sullivan appears to be referencing Section 3.5.4 of the "Harford County Police Initiated Towing Regulations."  These regulations are available online at: https://www.harfordcountymd.gov/DocumentCenter/View/321/Towing-Regulations-PDF?bidId= (last accessed Jan. 21, 2022).

[7] At this juncture, I decline to address plaintiff's contention that the Harford County Code required Sullivan to charge "by the hour, not on a 'per pound' basis."  ECF 21-1 at 6 n.1.

There is a want of case law interpreting these provisions.  Moreover, the parties do not provide the Court with particularly useful analysis.  But, at the very least, Sullivan is entitled to argue that COMAR 11.07.03.16 permits Sullivan to seek payment for the services it provided to Crete.

As an initial matter, based on the allegations, Sullivan appears to qualify as a "permittee" within the meaning of COMAR 11.07.03.  "Permittee" is defined in COMAR 11.07.03.01(B)(11) as "a towing service company that has been granted a permit by the Chief of Police or the Chief's designee to provide towing, road service, and storage of vehicles on Authority property."  And, Sullivan alleges that it possessed such a permit. ECF 11, ¶ 10 (stating that "Sullivan is, and at all times pertinent was, one of the approved Permit Holding towing companies on the MSP list and authorized to perform nonconsensual towing and recovery services at the request and direction of the MSP").

Further, the provision indicates that the owner or operator of a vehicle is responsible for the charges imposed as to "*any* services under these regulations" that a permittee provides. COMAR 11.07.03.16 (emphasis added).  "Read naturally, the word 'any' has an expansive meaning . . . ." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008); *see United States v. Gonzales*, 520 U.S. 1, 5 (1997); *Alexander v. Carrington Mortg. Servs., LLC*, ___ F.4th ___, 2022 WL 164018, at *5 (4th Cir. Jan. 19, 2022).

COMAR 11.07.03.02, titled "Scope," is also pertinent.  It provides, in part: "These regulations govern the application for, and issuance of, permits to towing service companies that provide towing, road service, and storage of vehicles . . . for disabled vehicles . . . on Authority property."  Thus, it appears that 11.07.03.16 imposes a "responsibility" on the owner or operator

of a vehicle for which a permittee provides services to pay for services that are rendered on Authority property.

Notably,   COMAR 11.07.03.01(B)(2) defines "Authority" to mean "the Maryland Transportation Authority." And, COMAR 11.07.03.01(B)(3)(b) defines "Authority property," in relevant part, as "Transportation facilities project," as that term is defined in Md. Code (2020 Repl. Vol.), § 4-101 of the Transportation Article ("Trans."). Trans. § 4-101(h), in turn, defines "Transportation facilities project" to include the John F. Kennedy Memorial Highway.

As mentioned, the Highway is "a 50-mile section of I-95 from the northern Baltimore City line to Delaware," which, notably, runs through Harford County. *John F. Kennedy Memorial Highway*, MARYLAND TRANSP. AUTH., https://mdta.maryland.gov/Toll_Facilities/JFK.html (last visited Jan. 23, 2022). And, the Vehicle was travelling on Interstate 95, through Harford County, when it became disabled. ECF 11, ¶ 7. Further, Sullivan towed the Vehicle and the Load away from that location. *Id.* ¶ 13. Thus, it appears that the Highway constitutes "Authority property" within the meaning of COMAR 11.07.03.01(B)(3)(b).

Moreover, COMAR 11.07.03.16 does not, on its face, limit a vehicle owner's "responsibility" to instances in which a permittee acts under the direction of the Maryland Transportation Authority. To the contrary, COMAR 11.07.03 expressly contemplates scenarios wherein a permittee works under the direction of the MSP. For example, COMAR 11.07.03.11(B) states: "When there is a disabled vehicle, impounded vehicle, improperly parked vehicle, or unattended vehicle on Authority property, the police shall request their Police Communications Center to contact the permittee for that Authority property or zone to provide towing or repair services, as required." Further, COMAR 11.07.03.12(F)(1) states, in part: "Upon notification or request by the police for service, a permittee shall respond and shall provide prompt service to an

identified vehicle within 30 minutes of receipt of notification, at the location of the vehicle, provided by the police."

And, "police" is defined in COMAR 11.07.03.01(13), in relevant part, as a "police officer as defined under Public Safety Article, § 3-201(e), Annotated Code of Maryland."  In turn, Md. Code (2018 Repl. Vol.), § 3-201(f) of the Public Safety Article ("P.S.") defines "police officer" as a member of a law enforcement agency, including the "Department of State Police" or, in other words, the MSP.

In sum, at the Rule 12(b)(6) stage, Crete's argument carries no water.  COMAR 11.07.03 expressly identifies situations where, like here, a permittee is directed by the MSP to provide towing services for disabled vehicles on Authority property, such as the Highway.  And, as mentioned, COMAR 11.07.03.16 provides that an "operator or owner of a vehicle for which a permittee provides *any* services under these regulations is responsible for any charge imposed for those services."  (Emphasis added).

Sullivan alleges that it was acting within its authority as a permittee, pursuant to COMAR 11.07.03.16, when it recovered the Vehicle and the Load from the Highway.  Thus, it has stated a claim that Crete, as the owner of the Vehicle, is "responsible" for the charges associated with the services that Sullivan provided for the Vehicle.

Even so, Crete contends: "[A]ssuming *arguendo* that the regulations cited by Defendant are controlling, there is no support in applicable law to suggest that the existence of a statute or regulation somehow morphs into a contract between two (2) parties."  ECF 21-1 at 6.  In response, Sullivan maintains that "the Countercomplaint describes the lien that is established under COMAR and the Harford County Code, which entitle[s] Sullivan to recovery for the services rendered . . . ."  ECF 27 at 5.  Further, Sullivan avers that the COMAR 11.07.03.16 establishes that "[a]

recovery/tow company is entitled to recovery through the lien established under regulations and the County Code." *Id.*

In support of its claim, Sullivan directs the Court's attention to a decision from the Maryland Court of Special Appeals in *T.R., Ltd. v. Lee*, 55 Md. App. 629, 635, 465 A.2d 1186, 1191 (1983), *cert. denied*, 289 Md. 395, 470 A.2d 353 (1984). *See* ECF 27 at 5.   In *Lee,* 55 Md. App. at 630, 465 A.2d at 1188, a stolen tractor-trailer ran off a ramp connecting two interstate highways.   An MSP officer directed T.R. Ltd., trading as Raley's Emergency Road Services ("Raley's"), to tow and store the vehicle. *Id.* The agent of the owner and lessor of the tractor-trailer made a demand for its return, but Raley's refused the demand until all towing and storage charges were paid. *Id.*

Thereafter, the owner filed an action for replevin. *Id.* In response, Raley's filed suit, "causing the tractor-trailer to be seized upon a writ of attachment on original process." *Id.* The owner "subsequently voluntarily dismissed his replevin action and . . . posted a bond to dissolve the writ of attachment and to cover the storage and towing claim." *Id.* at 631, 465 A.2d at 1188. But, Raley's contended that it had acquired a lien on the tractor-trailer by operation of law, and thus refused to release possession until the amount of the purported lien was tendered. *Id.* at 631, 465 A.2d at 1189.   Of relevance here, Raley's urged the court to consider Section 26-160 of the Prince George's County Code ("§ 26-160").   That provision, titled "Removal and impounding of unattended vehicles," stated:

> If any motor vehicle is left unattended upon any public road, highway, alley or parking lot of the County in violation of any law, ordinance or order regarding the parking of motor vehicles, or if any motor vehicle is left unattended upon any road, highway, alley or parking lot for an unreasonable length of time so as to impede the movement of traffic or constitute a threat to public safety, the County Police Department shall have authority to impound and remove such motor vehicle and charge the owner thereof the costs of towing, storage and any other charges incurred in connection therewith.

20

The Circuit Court for Prince George's County found that the provision did not create an avenue for Raley's to recover the costs of the services it rendered in unloading, righting, towing, and storing the vehicle. *See T.R., Ltd.,* 55 Md. App. at 631, 465 A.2d at 1189. But, the Maryland Court of Special Appeals reversed. *Id.* at 631, 465 A. 2d at 1189. The *Lee* Court determined, pursuant to § 26-160 of the County Code, that "a debt in the amount of reasonable towing and storage charges was incurred by [the owner of the tractor-trailer] . . . when the state police officer . . . order[ed] [Raley's] to remove and store [the tractor-trailer] without first obtaining the consent of the owner." *Id.* at 634, 465 A.2d at 1190 (internal citation omitted).[8] But, the *Lee* Court also said: "Certainly, § 26-160 did not create or purport to create any lien as security for debts arising thereunder. There is no mention of a lien, and none can be implied from the mere establishment of a monetary obligation on the owner of a vehicle." *Id.* at 635, 465 A.2d at 1191. In this regard, the court recognized that consent is "an important element of a common law lien . . . ." *Id.* And here, Sullivan alleges that it took possession of the Vehicle at the direction of the MSP but also with the consent of Crete. *See* ECF 11, ⁋ 13.

As stated, COMAR 11.07.03.16 provides: "The operator or owner of a vehicle for which a permittee provides any services under these regulations is responsible for any charge imposed." Although COMAR does not define the term "responsible," as a matter of statutory construction, terms that are not defined are "'interpreted as taking their ordinary, contemporary, common meaning.'" *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014) (citation omitted); *accord United States v. George*, 946 F.3d 643, 645 (4th Cir. 2020).

---

[8] The court also relied on State law. *See* Md. Code Ann., Art. 88B, § 4, now codified at P.S. §§ 2-204, 2-412.

Black's Law Dictionary defines "responsible," in part, as "[m]orally or legally answerable for the discharge of a duty . . . or other obligation; specif[ically] marked by accountability to some higher authority for the execution of certain duties." *Black's Law Dictionary* (11th ed. 2019). Other dictionary definitions are to like effect. *See*, *e.g.*, *Merriam-Webster's Collegiate Dictionary* 1062 (11th ed. 2014) (defining "responsible" as, among other things, "liable to be called on to answer," and "marked by or involving responsibility or accountability"); *New Oxford American Dictionary* 1488 (3d ed. 2010) (defining "responsible" as "having an obligation to do something, or having control over or care for someone, as part of one's job or role").

Thus, under a straightforward reading of the provision, COMAR 11.07.03.16 renders an "owner or operator of a vehicle for which a permittee provides any services" liable for the charges "imposed" by the permittee. Therefore, COMAR 11.07.03.16 provides Sullivan with an avenue to seek recovery of the costs associated with the services at issue. *See Cade v. Montgomery Cnty.*, 83 Md. App. 419, 428 n.6, 575 A.2d 744, 748 n.6 (1990) (involving nonconsensual towing of vehicle that was unlawfully parked, and recognizing that the obligation of an owner of a vehicle to pay for towing and storage services may "arise by statute or ordinance") (citing *T.R. Ltd.*, 55 Md. App. 629, 465 A.2d 1186), *cert. denied*, 320 Md. 350, 578 A.2d 190 (1990), *cert. denied*, 498 U.S 1085 (1991).

Accordingly, Count II is not futile. Therefore, I shall grant Sullivan leave to amend the Answer to include Count II of the Counterclaim.

### D.  Count III: Contract

Count III asserts a claim for "Contract." ECF 11, ¶¶ 30-34. Crete argues that the Court should dismiss the claim because "there is no cause of action for 'Contract' in the State of Maryland." ECF 21-1 at 7. Without question, the allegations included in Count III make clear

that Sullivan asserts that Crete is liable under a theory of breach of contract.  The title of the count does not govern the content or the disposition.

The parties dispute whether a contract was formed.  But, resolution of that issue is not appropriate at this juncture.  The question here is limited to determining whether Sullivan has stated a claim for breach of contract.  Plainly, it has.

In particular, Sullivan alleges that an agent of Crete orally authorized Sullivan to render the services in issue.  ECF 11, ¶¶ 31, 32.  Further, Sullivan avers that it performed, as requested, and thereafter sent Crete an invoice for the services rendered.  *Id.* ¶¶ 13-14.  The Counterclaim also alleges that "Crete has refused to pay for recompense for Sullivan."  *Id.* ¶ 15.  According to Sullivan, the conversation between agents of Crete and Sullivan established a contract between the parties, and Crete's subsequent failure to pay for the agreed-upon services constitutes a breach of that contract.

Crete insists that Count III fails to state a claim for breach of contract because, "[a]s averred in the Counter-Complaint, there are no facts from which a 'verbal contract' can be found."  ECF 21-1 at 7.   In support of this contention, Crete asserts: "There is no clear offer and acceptance. Moreover, there are no averments regarding the services allegedly offered by Defendant and agreed to by Crete and no discussion of the compensation agreed to prior to the working having been performed."  *Id.*

Sullivan counters that the "lack of a definitive price amount" does not defeat its breach of contract claim because "many contracts, especially those for emergency services, do not have fixed price amounts determined beforehand."  ECF 27 at 6.  Further, it points out that Crete, an "international carrier" that has been "in business for decades," is "savvy enough to know the potential costs and billing common with recovery and towing."  *Id.*  Accordingly, Sullivan claims:

"The contract between Sullivan and Crete should be construed as being one where there was a meeting of the minds, for Sullivan to perform the services of recovery and towing at a marketable rate, and a claim on which relief can be granted." *Id.*

"[I]nterpretation of private contracts is ordinarily a question of state law." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989); *accord James v. Circuit City Stores, Inc.*, 370 F.3d 417, 421-22 (4th Cir. 2004). Here, the Court's jurisdiction over the Counterclaim, including Count III, is predicated on its diversity jurisdiction. *See* ECF 11, ⁋ 3; 28 U.S.C. § 1332(a)(1). And, "[w]hen choosing the applicable state substantive law while exercising diversity or supplemental jurisdiction, a federal district court applies the choice of law rules of the forum state." *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011). The forum state is, of course, Maryland.

As to contract claims, Maryland applies the law of the state in which the contract was formed ("*lex loci contractus*"), unless the parties to the contract agreed to be bound by the law of another state. *See, e.g.*, *Am. Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995); *TIG Ins. Co. v. Monongahela Power Co.*, 209 Md. App. 146, 161, 58 A.3d 497, 507 (2012), *aff'd*, 437 Md. 372, 86 A.3d 1245 (2014). The parties appear to agree that Maryland law governs Sullivan's contract claim, albeit without discussing the issue. *See* ECF 21-1 at 7-8 (citing Maryland law); ECF 27 at 5 (same). Therefore, I shall apply Maryland law.

In general, under Maryland law, a contract is defined as "a promise or set of promises for breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." RICHARD A. LORD, 1 WILLISTON ON CONTRACTS, § 1:1 (4th ed. 1990); *accord* RESTATEMENT (SECOND) CONTRACTS, § 1 (1981); *see also Maslow v. Vanguri*, 168 Md. App. 298, 321, 896 A.2d 408, 421-22, *cert. denied*, 393 Md. 478, 903 A.2d 416 (2006). "'A

contract is formed when an unrevoked offer made by one person is accepted by another.'" *Cty. Comm'rs for Carroll Cty. v. Forty W. Builders, Inc.*, 178 Md. App. 328, 377, 941 A.2d 1181, 1209 (2008) (quoting *Prince George's Cty. v. Silverman*, 58 Md. App. 41, 57, 472 A.2d 104, 112 (1984)), *cert. denied*, 405 Md. 63, 949 A.2d 652 (2008)).   Thus, mutual assent is an integral component of every contract.  *See, e.g.*, *Joseph Saveri Law Firm Inc. v. Michael E. Criden, P.A.*, 759 F. App'x 170, 173 (4th Cir. 2019) (recognizing as a "bedrock principle of law" that an offeree must accept an offer to form a contract); *Cochran v. Norkunas*, 398 Md. 1, 14, 919 A.2d 700, 708 (2007); *Advance Telecom Process LLC v. DSFederal, Inc.*, 224 Md. App. 164, 177, 119 A.3d 175, 183 (2015).

In determining whether there is an enforceable contract, courts begin the analysis "by discussing the essential prerequisite of mutual assent to the formation of a contract . . . ." *Falls Garden Condo. Ass'n, Inc. v. Falls Homeowners Ass'n, Inc.*, 441 Md. 290, 302, 107 A.3d 1183, 1189 (2015); *see also Mitchell v. AARP*, 140 Md. App. 102, 116, 779 A.2d 1061, 1069 (2001) ("An essential element with respect to the formation of a contract is 'a manifestation of agreement or mutual assent by the parties to the terms thereof; in other words, to establish a contract the minds of the parties must be in agreement as to its terms.'" (citations omitted)).  "Manifestation of mutual assent includes two issues: (1) intent to be bound, and (2) definiteness of terms."  *Cochran*, 398 Md. at 14, 919 A.2d at 708.  Generally, "[s]ilence is . . . not to be considered an acceptance of an offer."  *Id.* at 23-24, 919 A.2d at 714.  But, "acceptance may be manifested by actions as well as words."  *Galloway*, 819 F.3d at 87 (citing *Porter v. General Boiler Casing Co.*, 284 Md. 402, 396 A.2d 1090, 1095 (1979) ("The purpose of a signature is to demonstrate 'mutuality or assent' which could as well be shown by the conduct of the parties.")); *see also* RESTATEMENT (SECOND) OF

CONTRACTS, § 53(1) ("An offer can be accepted by the rendering of a performance only if the offer invites such acceptance.").

A contract may be oral or written, as well as express or implied. "'An express contract has been defined as an actual agreement of the parties, the terms of which are openly uttered or declared at the time of making it, being stated in distinct and explicit language, either orally or in writing.'" *Maryland Cas. Co. v. Blackstone Int'l Ltd.*, 442 Md. 685, 706, 114 A.3d 676, 688 (2015) (quoting *Cnty. Comm'rs of Caroline Cnty v. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 94, 747 A.2d 600, 606 (2000)). Whether oral or written, a contract must express with certainty the nature and extent of the parties' obligations and the essential terms of the agreement. *Forty W. Builders, Inc.*, 178 Md. App. at 377-78, 941 A.2d at 1209-10; *see Canaras v. Lift Truck Services*, 272 Md. 337, 346, 322 A.2d 866, 871 (1974). If an agreement omits an important term, or is otherwise too vague or indefinite with respect to an essential term, it is not enforceable. *Mogavero v. Silverstein*, 142 Md. App. 259, 272, 790 A.2d 43, 51 (2002), *cert. denied*, 369 Md. 181 (2002); *see L & L Corp. v. Ammendale*, 248 Md. 380, 385, 236 A.2d 734, 737 (1967); *Schloss v. Davis*, 213 Md. 119, 123, 131 A.2d 287, 290 (1956).

The Maryland Court of Appeals explained the requirements of contractual certainty in *Robinson v. Gardiner*, 196 Md. 213, 76 A.2d 354 (1950). It said, *id.* at 217, 76 A.2d at 356:

> Of course, no action will lie upon a contract, whether written or verbal, where such a contract is vague or uncertain in its essential terms. The parties must express themselves in such terms that it can be ascertained to a reasonable degree of certainty what they mean. If the agreement be so vague and indefinite that it is not possible to collect from it the intention of the parties, it is void because neither the court nor jury could make a contract for the parties. Such a contract cannot be enforced in equity nor sued upon in law. For a contract to be legally enforceable, its language must not only be sufficiently definite to clearly inform the parties to it of what they may be called upon by its terms to do, but also must be sufficiently clear and definite in order that the courts, which may be required to enforce it, may be able to know the purpose and intention of the parties.

*See also Meyers v. Josselyn,* 212 Md. 266, 271, 129 A.2d 158, 161 (1957) ("There has never been any doubt that when an alleged agreement is so vague and indefinite that the court finds it impossible to determine substantially the full intention of the parties, it must be held unenforceable, because the court cannot make an agreement for the parties.").

And, under Maryland law, "a contract may be so vague and uncertain as to price or amount as to be unenforceable." *Schloss*, 213 Md. at 123, 131 A.2d at 290 (1956). But, a contract that lacks a specific price can be enforced if the party seeking enforcement of the contract can provide the court with "'a practicable method by which the amount can be determined by the court without any new expression by the parties themselves.'" *Hanna v. Baugess*, 49 Md. App. 87, 93, 430 A.2d 104, 108 (1981) (quoting *Foard v. Snider*, 205 Md. 435, 445, 109 A.2d 101, 105 (1954)). Indeed, the Maryland Court of Special Appeals has recognized that "where a contract specifies that the price is to be measured by the 'fair market value,' 'reasonable value,' or 'current market value,' of the services or the property involved, courts have generally held that price is sufficiently certain in order to have an enforceable obligation." *Hanna*, 49 Md. App. at 95, 430 A.2d at 108 (citing, *inter alia*, *Miller v. Bloomberg*, 26 Ill. App. 3d 18, 324 N.E. 207, 208 (1975) (rehearing denied); *Portnoy v. Brown*, 430 Pa. 401, 243 A.2d 444, 447 (1968)).

The Counterclaim includes allegations that Crete agreed to Sullivan's services, including "recovery, cleanup and debris storage, where possible," which Sullivan subsequently provided. ECF 11, ¶¶ 31-32. These assertions adequately describe a meeting of the minds, such that a court could identify the parties' respective obligations pursuant to the contract. *Cf. Mogavero*, 142 Md. App. at 265, 790 A.2d at 46 (finding that oral contract was so vague as to be unenforceable where plaintiff promised to "help . . . with the construction end of [a] project").

The Counterclaim does not provide the Court with specific information as to the agreed-upon price.  But, in the context of the case, the exact price could not be determined prior to performance of the work, because Sullivan could not know the full extent of the work that would be required.  Nonetheless, Sullivan alleges that Crete is "familiar with the industry and billing standards for towing/recovery/cleanup operations."  ECF 11, ⁋ 33.  Further, Sullivan requests "the lawful and legal rate of compensation," as set forth in the Invoice," which, in Sullivan's view "is based upon the reasonable value of their [sic] services within the geographical area."  *Id.* ⁋ 34; *see* ECF 11-1.

As with a complaint, when considering a challenge to the legal sufficiency of a counterclaim, the court "must accept as true all of the factual allegations" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).  In the light most favorable to Sullivan, the Counterclaim alleges that Crete agreed to pay Sullivan the fair market price for towing and recovery services.

Accordingly, I am persuaded that the Counterclaim states a plausible claim for breach of contract.  *See Hanna*, 49 Md. App. at 95, 430 A.2d at 108.  Therefore, I shall grant Sullivan leave to amend its Answer to incorporate Count III of the Counterclaim.

## IV. Contempt Motion

Sullivan asks the Court to hold Crete in contempt of court for failure to comply with the Order of June 30, 2021.  *See* ECF 54.  In particular, Sullivan complains that Crete failed to retrieve certain debris and hazardous materials associated with the Vehicle and the Load, allegedly in violation of the Order requiring Crete to "remove the tractor and the trailer as well as the

Load . . . ."  ECF 46 at 1; *see* ECF 54.  But, the evidence submitted to the Court does not evidence

Crete's failure to comply with the Order.   Therefore, I shall deny the Contempt Motion.

## A.  Factual and Procedural Background[9]

As mentioned, Crete asserted a claim for replevin in Count I of the Complaint  ECF 1, ¶¶

31-35.  In particular, Crete averred that it had "repeatedly demanded that Defendant return the

Vehicle and the Load," *id.* ¶ 33, but, Sullivan "continue[d] to improperly detain Crete's property

and exercise control over same."  *Id.* ¶ 34.  According to Crete, Sullivan had "no legal right to

possession of or to exercise control over the Vehicle or the Load."  *Id.* ¶ 35.

Thereafter, Crete sought an expedited hearing on its request for replevin.  Specifically, on

April 19, 2021, Crete submitted a "Memorandum In Support Of Writ Of Replevin" (ECF 24) (the

"Replevin Motion"), in which it asked the Court to hold a "preliminary show cause hearing, prior

to a full adjudication on the merits, on the issue of possession of the Property."  *Id.* at 1-2.  The

Replevin Motion was supported by several exhibits.  Sullivan opposed the Replevin Motion.  *See*

ECF 28.  Crete did not reply.

On May 27, 2021, the parties submitted joint "Stipulations of Fact".  ECF 34.  Then, the

Court held an evidentiary hearing on May 28, 2021.  ECF 36.[10]  Following the hearing, the parties

submitted supplemental memoranda.  ECF 38 (Crete); ECF 44 (Sullivan).

On June 30, 2021, the Court issued a Memorandum Opinion (ECF 45) and Order (ECF 46)

granting the writ, subject to a number of conditions.  Of import here, the Order directed Crete to

"remove the tractor and trailer as well as the Load using its own agents, servants, employees,

---

[9] I incorporate by reference the factual and procedural background contained in my Memorandum of June 30, 2021.  As necessary, I have supplemented the facts.

[10] Due to the COVID-19 pandemic, the hearing was held via video.  Notably, the Docket inaccurately reflects that the hearing was held on the Motion to Dismiss.  ECF 36.

equipment, vehicles, and materials, at its own cost, and within 30 days of this Order . . . ."  ECF 46 at 1.  Thereafter, on August 9, 2021, Sullivan filed the Contempt Motion.  ECF 54.  In particular, Sullivan claims that Crete violated the Order of June 30, 2021, by failing to remove "the entirety of items relating to the accident of August 27, 2020 . . . ."  *Id.* at 1.[11]

Sullivan recounts that on July 29, 2021, Crete "sent agents to the property of [Sullivan], presumably to recover all the property in question."  ECF 54 at 2.  But, according to Sullivan, "it became obvious that those agents would not be taking everything."  *Id.*  In particular, Sullivan avers that Crete did not retrieve "items and debris from the accident including vehicle parts, various fluids from the tractor involved in the accident, wheels including tires, and other assorted items," including "hazardous materials," all of which were stored in a dumpster on Sullivan's premises. *Id.*  Sullivan included a photograph of the dumpster with the described debris in an exhibit attached to the Contempt Motion.  *See* ECF 54-1.

When Sullivan "became aware [that] those items were not going to be taken," it "called its counsel while the other items were still being agglomerated."  ECF 54 at 2.  Sullivan's counsel then "contacted counsel for [Crete] and warned that departure was impending and that all the items were not being taken."  *Id.*  Further, Sullivan's counsel "warned that there were hazardous materials that would have to be taken in a legal manner for disposal."  *Id.*  Even so, "[n]othing was done, and the material was not removed."  *Id.*

Sullivan complains that, as a result of Crete's refusal to remove this debris from its property, it will be forced either to "accrue storage charges, or . . . spend approximately $7500.00 to legally dispose of the material in the dumpster."  *Id.*  Accordingly, Sullivan asks the Court to

---

[11] According to the earlier submissions, the accident occurred on August 28, 2020.  *See* ECF 1, ⁋ 8; ECF 11, ⁋ 5.

hold Crete in contempt for violating the Order, "and to order [Crete] to either remove the material in the dumpster in a lawful fashion, or to award damages to [Sullivan] as assessed in a damages hearing in an amount sufficient to cover the expense of properly and lawfully removing the material." *Id.*[12]

### B. Legal Principles

The Contempt Motion is civil in nature. Contempt is civil rather than criminal "[w]hen the nature of the relief and the purpose for which the contempt sanction is imposed is remedial and intended to coerce the contemnor into compliance with court orders or to compensate the complainant for losses sustained . . . . If the relief provided is a fine, it is remedial when it is paid to the complainant." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 537 (D. Md. 2010). Sullivan seeks remedial relief. *See* ECF 54 at 2.

To establish civil contempt, a movant must show each of the following elements by "clear and convincing evidence":

> "(1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's "favor"; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) that the movant suffered harm as a result."

*United States v. Ali*, 874 F.3d 825, 831 (4th Cir. 2017) (quoting *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000)).

"To be clear and convincing, evidence must 'place in the ultimate factfinder an abiding conviction that the truth of [the party's] factual contentions are 'highly probable.'" *Ali*, 874 F.3d

---

[12] Of course, rather than seeking contempt, Sullivan could have sought to amend its Counterclaim to request damages based on Crete's alleged duty to remove the debris. In filing the Contempt Motion, Sullivan seems to have adopted the "fight fire with fire approach."

at 831 (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)).  Significantly, willfulness is not an element of civil contempt.  *In re General Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995).

Once the moving party meets its burden, the burden shifts to the contemnor to demonstrate that it "'ma[de] in good faith all reasonable efforts to comply with'" the court's order.  *Ali*, 874 F.3d at 832 (quoting *United States v. Darwin Const. Co.*, 873 F.2d 750, 754 (4th Cir. 1989)).  "The only exception is 'present inability to comply' i.e., an inability to comply that arises after the enforcement proceeding and exists at the time of the contempt proceeding."  *Ali*, 874 F.3d at 829 (quoting *Rylander*,460 U.S. at 756-57).

Where the contemnor cannot comply, "neither the moving party nor the court has any reason to proceed with the civil contempt action."  *Rylander*, 460 U.S. at 757.  But, the nonmovant has the burden of production in raising an impossibility defense. *Rylander*, 460 U.S. at 757 (citing *McPhaul v. United States*, 364 U.S. 372, 379 (1960)).

A court has the inherent power to order sanctions, so as "to preserve the integrity of the judicial process," *In re Jemsek Clinic, P.A.*, 850 F.3d 150, 157 (4th Cir. 2017), and "to punish bad-faith conduct intended to delay or disrupt the course of litigation or to impede enforcement of a court order." *Life Technologies Corp. v. Govindaraj*, 931 F.3d 259, 267 (4th Cir. 2019); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991); *Buffington v. Baltimore Cty.*, 913 F.2d 113, 132 n.15 (4th Cir. 1990).  However, a court may not exercise its contempt power if there is "fair ground of doubt as to the wrongfulness of" the conduct in question.  *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) (citation and emphasis omitted); *see also Gascho v. Glob. Fitness Holdings, LLC*, 875 F.3d 795, 800 (6th Cir. 2017) (concluding that contempt finding is unwarranted if court's decree is "'too vague to be understood'") (quoting *Int'l Longshoremen's Ass'n v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76 (1967)).

Notably, "a party must be able to discern from the language of a court's order the actions necessary to comply with the court's directive." *Life Technologies Corp.*, 931 F.3d at 268. In *Taggart*, 139 S. Ct. at 1802, the Court said: "[P]rinciples of basic fairness require that those enjoined receive explicit notice of what conduct is outlawed before being held in civil contempt." (Citations, quotation marks, and brackets omitted); *see Gascho*, 875 F.3d at 800 (contempt sanctions are "reserved for those who 'fully understand' the meaning of a court order and yet 'choose to ignore its mandate.'") (quoting *Phila. Marine Trade Assoc.*, 389 U.S. at 76) (alterations omitted).

As mentioned, sanctions for civil contempt are remedial. *See Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 822 (4th Cir. 2004); *Buffington*, 913 F.2d at 133. The purpose of sanctions for civil contempt is "to coerce obedience to a court order and to compensate a party for losses sustained as a result of the contumacy." *In re General Motors*, 61 F.3d at 258 (quoting *Connolly v. J.T. Ventures*, 851 F.2d 930, 932 (7th Cir. 1998)). Indeed, civil contempt sanctions are "employed not to vindicate the court's authority but to make reparation to the injured party and restore the parties to the position they would have held had the injunction been obeyed." *Vuitton et Fils S. A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979).

The aggrieved party is entitled to be made whole "for damages caused by the contemnor's conduct." *In re Kave*, 760 F.2d 343, 351 (1st Cir. 1985). The district court "can impose a fixed, monetary, civil contempt sanction to compensate for losses sustained by violation of a discovery order[.]" *Buffington*, 913 F.2d at 134. But, "in selecting contempt sanctions, a court is obliged to use the 'least possible power adequate to the end proposed." *Spallone v. United States*, 493 U.S. 265, 276 (1990) (internal quotation omitted). Moreover, a fine may not be punitive.

33

A compensatory fine "must be based upon evidence of the complainant's actual losses, and his right to recover, as in any civil litigation, is dependent upon the outcome of the underlying controversy." *In re Kave*, 760 F.2d at 351.  Accordingly, the "fine imposed . . . must not exceed the actual damages caused the offended party by a violation of the court's order." *Quinter v. Volkswagen of Am.*, 676 F.2d 969, 975 (3d Cir. 1982).  "If monetary assessment of a specific amount is neither compensatory nor conditioned on the occurrence of future violation of court orders, it raises a presumption that the fine is punitive in nature" and therefore cannot be imposed as part of a civil contempt proceeding.  *In re Kave*, 760 F.2d at 352.

A court may impose a coercive fine to obtain compliance with its order.  *Bagwell*, 512 U.S. at 833.  When ordering a coercive fine, a court must provide the contemnor with an opportunity to purge.  And, in imposing a coercive fine, a court must "consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947).

### C.  Discussion

As noted, Sullivan contends that Crete violated the Order of June 30, 2021 (ECF 46), which granted Crete's replevin request with respect to the Vehicle and the Load.  ECF 54 at 1-2. In Crete's opposition, it indicates that the Contempt Motion is without merit because it does not meet three of the four factors outlined in *Ali*, 874 F.3d at 831.  ECF 62 at 4-7.  In particular, Crete avers that the Order was not entered in Sullivan's favor.  *Id.* at 5.  Further, Crete advises that it did not violate the terms of the Order, because the Order did not require it to remove the debris.  *Id.* at 5-6.  And, Crete posits that Sullivan has not been harmed by Crete's refusal to remove the debris because Sullivan already charged Crete for the disposal of the debris.  *Id.* at 6-7.

34

As an initial matter, the Order granted Crete a writ of replevin, over Sullivan's objection, and thus allowed Crete to remove the "tractor and the trailer as well as the Load" from Sullivan's premises.  ECF 46 at 1. It would be odd to construe such a ruling as having been entered in Sullivan's favor.  And, Sullivan has not explained how the Court should read the Order in its favor.

Moreover, I am not persuaded that the evidence presented to the Court clearly and convincingly shows that Sullivan suffered harm by Crete's failure to remove the debris.  As Crete suggests (ECF 62 at 6), the Invoice reflects that Sullivan charged Crete in the amount of $19,125.00 in a line item titled "08-30-2020 equipment for debris removal, debris cleanup, and debris disposal."  ECF 11-1 at 3 (emphasis omitted).  Notably, Sullivan has not explained the import of this line item.  Nor has it responded to Crete's argument on this ground.  In any event, the issue of whether Sullivan may recover for the charges enumerated in the Invoice, and if so, in what amount, lies at the heart of this suit.  Its resolution is not appropriate at this juncture.

Moreover, and perhaps most significant, the Contempt Motion must fail because it is clear that Crete did not flout the Order.  In the Replevin Motion, Crete stated that it sought recovery of a "Freightliner tractor, a 53-foot trailer, and the cargo in the trailer belonging to Crete's customer consisting of fleece apparel . . . ."  ECF 24-1 at 1.  The parties' briefing did not discuss debris or address whether Crete would be required to remove debris.  *See generally* ECF 24; ECF 28; ECF 38; ECF 44.  Nor did the Court address the issue in resolving the Replevin Motion.  *See* ECF 45.  Indeed, contrary to Sullivan's assertions, there is no basis to conclude that the Order "comprehended debris in the matter to be included in the items to be picked up."  ECF 54 at 1.

Notably, the text of the Order itself is paramount.  It does not specify that Crete was to remove the debris.  Rather, it merely instructed Crete to remove "the tractor and the trailer as well as the Load."  ECF 46 at 2.

In sum, I am persuaded that the Order did not require Crete, expressly or otherwise, to remove from Sullivan's premises the debris associated with the "tractor and the trailer as well as the Load."  Thus, Crete's failure to do so did not violate the Order.  It follows that the Contempt Motion must fail because Sullivan has not shown "that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations."  *Ali*, 874 F.3d at 831.

## V.     Conclusion

I shall construe the Counterclaim as a Motion to Amend the Answer and I shall grant it. Specifically, Sullivan shall be granted leave to amend the Answer to add the Counterclaim.   And, I shall deny both the Motion to Dismiss and the Contempt Motion.

An Order follows, consistent with this Memorandum Opinion.

Date: February 1, 2022                                         _____/s/_____
                                                                              Ellen L. Hollander
                                                                              United States District Judge