IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CRETE CARRIER CORP.,

　　*Plaintiff*,

　　v.

SULLIVAN & SONS, INC. d/b/a
SULLIVAN'S GARAGE

　　*Defendant*.

Civil Action No. ELH-21-0328

**MEMORANDUM OPINION**

　　This Memorandum Opinion resolves multiple discovery disputes in a suit between plaintiff Crete Carrier Corp. ("Crete"), a long-haul trucking company, and defendant Sullivan & Sons, Inc. d/b/a Sullivan's Garage ("Sullivan"), a towing company. The events underlying the dispute began on August 28, 2020, when a 53-foot tractor-trailer (the "Vehicle") owned by Crete was involved in a single-vehicle accident on Interstate 95 in Harford County, Maryland.

　　As a result of the accident, the Vehicle could not be driven from the scene. The Maryland State Police responded to the scene of the accident and contacted Sullivan to recover the Vehicle, which included a load of cargo (the "Load"). Sullivan subsequently sent an invoice to Crete for its towing and recovery services. Although Sullivan recovered the vehicle, Crete refused to pay Sullivan, based on the purportedly excessive amount of Sullivan's invoice. In turn, Sullivan refused to release the Vehicle and the Load to Crete.

　　This suit followed on February 9, 2021. ECF 1. However, the action is not a conventional commercial clash over the amount of an invoice. In an eight-count Complaint launched by plaintiff, Crete has lodged claims against Sullivan for violations of the Sherman Antitrust Act, 15 U.S.C. § 1 (Count VI); the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§

1961, *et seq.* (Count VII); and the Maryland Antitrust Act, Md. Code (2021 Repl. Vol.), § 11-204 of the Commercial Article (Count VIII).[1]  In addition, the Complaint includes claims for replevin (Count I); injunctive relief (Count II); tortious interference with contract (Count III); tortious interference with economic and business relations (Count IV); and conversion (Count V).

Sullivan did not challenge any of the claims by way of a motion under Rule 12(b)(6). Instead, Sullivan timely answered the Complaint.  ECF 6.  Thereafter, on March 22, 2021, the Court issued a Scheduling Order.  ECF 9.  Among other things, the Scheduling Order set a discovery deadline of August 20, 2021.  *Id.*  But, in a matter of weeks, on May 5, 2021, Crete filed a "Motion To Modify The Scheduling Order," seeking to extend the discovery deadline to October 19, 2021.  ECF 30.  I granted the motion by Order of the same date.  ECF 32.

Crete also requested an expedited hearing on its request for replevin.  Following a hearing on May 28, 2021 (ECF 36), I issued a Memorandum (ECF 45) and Order (ECF 46) on June 30, 2021, granting the writ of replevin.  This allowed Crete to recover the Vehicle and the Load, subject to several conditions.

In all, the parties engaged in a nearly year-long period of discovery, which concluded on February 3, 2022.  Crete also sought discovery from five entities that are not parties to the case, four of which challenged the discovery.  During the course of discovery, Crete filed ten discovery motions for consideration by U.S. Magistrate Judge A. David Copperthite, to whom discovery disputes were referred.  *See* ECF 55; ECF 70; ECF 75; ECF 76; ECF 77; ECF 86; ECF 115; ECF 145; ECF 146; ECF 148; ECF 149.[2]

---

[1] As I said previously, the RICO and Sherman Act claims are rather heavy artillery for a dispute of this kind.  *See* ECF 45 at 2 n.1.

[2] One motion filed by Crete remains pending before Judge Copperthite.  ECF 146.  It is titled "Motion For Sanctions And Supplemental Motion To Compel Defendant's Supplemental Discovery Responses And Request For Attorneys' Fees."  *Id.*

Unhappy with some of Judge Copperthite's discovery rulings, Crete filed six objections in this Court. *See* ECF 91 (the "Flook Objection"); ECF 96 (the "Morton Objection"); ECF 98 (the "Extension Objection"); ECF 125 (the "Reconsideration Objection"); ECF 127 (the "Ted's Objection"); and ECF 163 (the "Expert Objection").[3]

By Order of December 13, 2021 (ECF 124), Judge Copperthite granted Crete's motion to compel Sullivan to provide supplemental discovery material. ECF 115 ("Supplemental Motion to Compel"). Sullivan then filed an objection. *See* ECF 126 (the "Supplemental Objection").

I shall sometimes refer collectively to all of the objections as the "Objections." The Objections are fully briefed. No hearing is necessary to resolve them. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Objections.

## I.   Background

The facts giving rise to this suit have been recounted in several prior memoranda, and I incorporate those summaries by reference. *See* ECF 45 (Mem. Op. of 6/30/21); ECF 142 (Mem. Op. of 2/1/22); ECF 160 (Mem. Op. of 3/4/22). The facts here are also drawn from the motions presented to Judge Copperthite, as well as exhibits submitted with the motions. However, the facts are largely limited to those pertinent to the resolution of the Objections. Generally speaking, I have organized the factual background by topic and then, within each topic, to the extent feasible, in chronological order.

### A.  Non-Parties

In July 2021, Crete served a number of document subpoenas on several entities that are not parties to the litigation. They include Ted's Towing Service, Inc. ("Ted's Towing"); Mullens

---

[3] Crete did not challenge the resolution of ECF 148 and ECF 149. And, it prevailed as to ECF 115.

Services ("Mullens"); Automotive Support Services ("Automotive Support"); Vinny's Towing and Recovery, LLC ("Vinny's Towing"); and Morton Towing and Recovery, Inc. ("Morton Towing"). These entities are apparently engaged in work similar to that of Sullivan.

In particular, on July 9, 2021, Crete served a subpoena for production of documents on Ted's Towing. *See* ECF 76-1 (Subpoena); ECF 76-4 at 3 (email from counsel for Ted's Towing to Crete's counsel). Then, on July 13, 2021, Crete served an identical subpoena on Mullens. *See* ECF 49 (Motion to Quash), ⁋ 1; ECF 49-1 (Subpoena). And, the following day, July 14, 2021, plaintiff served document subpoenas on Automotive Support, Vinny's Towing, and Morton Towing. *See* ECF 48 (Automotive Support Motion to Quash), ⁋ 1; ECF 48-1 (Automotive Support Subpoena); ECF 66-1 (Vinny's Towing Motion to Quash) at 8; ECF 66-4 (Vinny's Towing Subpoena); ECF 67-1 (Morton Towing Motion to Quash) at 8; ECF 67-4 (Morton Towing Subpoena). I shall refer to these subpoenas collectively as the "Record Subpoenas".

The Record Subpoenas requested each towing company to produce certain documents to Crete on August 23, 2021. *See, e.g.*, ECF 48-1 at 1. Specifically, the Record Subpoenas required each towing company to "produce all documents, records, or tangible items, regardless of the medium used to store them, in your custody and/or control regarding the following for the period of January 1, 2016 through present date." ECF 48-1 at 4. And, the Record Subpoenas enumerated six categories of documents to be produced, as follows, *id.* at 4-5:

> 1.      All invoices for towing and recovery services provided or performed by you for any vehicle with a GVW of 25,000 pounds or greater at the request of any law enforcement agency;[4]

---

[4] GVW is not defined in the subpoenas. Presumably, it refers to "Gross Vehicle Weight." *See* 49 C.F.R. 390.5 (defining "gross vehicle weight rating" as "the value specified by the manufacturer as the loaded weight of a single motor vehicle.").

2.      All invoices for towing and recovery services provided or performed by you for any vehicle with a GVW of 25,000 pounds or greater at the request of any vehicle owner or operator;

3.      Any and all documents that evidence, reflect, refer, and/or relate [to] your owners, agents, and/or employees' participation in any programs, webinars, seminars, conferences, continuing education, modules, presentations, or any other similar events during which any component of the event dealt with, mentioned, and/or otherwise related to billing practices or billing procedures for towing and recovery services, including, but not limited to, any program agenda, topics, outlines, registration documentation, and/or receipts;

4.      Any and all documents that evidence, reflect, refer, and/or relate to your placement on and/or participation in any list to and/or approval to perform towing and recovery services on behalf or at the request of any law enforcement agency in the State of Maryland, including, but not limited to, all applications, written policies or procedures, training manuals or documents, qualification requirements, correspondence, applicable standards that must be maintained or followed, documents provided to you by any law enforcement agency related to police-initiated tows, complaints to the law enforcement agency regarding your services, and any disciplinary actions taken against you by the law enforcement agency;

5.      Any and all documents that evidence, reflect, refer, and/or relate to any communications between you and any other individual or entity (excluding your attorneys), including but not limited to any law enforcement agency and/or any other towing companies approved to perform police-initiated tows, regarding billing practices, including, but not limited to, those communications related to rates charged, manner of calculating rates, and per pound billing; and

6.      Any and all documents that evidence, reflect, refer, and/or relate to all fee schedules and/or rates charged for your towing and recovery services for vehicles with a GVW of 25,000 pounds or greater, to include both services provided at the request of a law enforcement agency and those requested by an owner or operator of a vehicle, including, but not limited to, any fee schedules, rate schedules, website postings, tariffs, or other similar documents.

On July 14, 2021, counsel for Crete and Ted's Towing spoke by telephone to discuss the

subpoena.  *See* ECF 76-3 at 1 (email reflecting that telephone conference was held on July 14,

2021).  Nine days later, on July 23, 2021, Ted's Towing served Crete with its "Objection" to the

subpoena, pursuant to Fed. R. Civ. P. 45.  ECF 76-2 at 1-8.  Ted's Towing asserted that the

subpoena was overly broad, unduly burdensome, and sought confidential and proprietary

information.   ECF 76-2 at 1-8.  The Objection was supported by the Declaration of Paula Protani (*id.* at 9-12, the "Protani Declaration"), the general manager of Ted's Towing.

Thereafter, on August 8, 2021, Crete's counsel sent an email to counsel for Ted's Towing, "asking for availability to discuss" the objections.  ECF 76 at 4; *see* ECF 76-4 at 3.  Crete's counsel also indicated that counsel for Ted's Towing had previously stated that it was authorized to "accept service of a subpoena for Martin's deposition" and asked whether counsel could "accept service for Paula Protani as well?"  ECF 76-4 at 3.  Further, Crete's counsel asked about "availability for the depositions of Martin and Paula Protani in late September or early October[.]"  *Id.*  In another submission, Crete indicates that Martin is a reference to Martin Zigler, an official with Ted's Towing.  *See* ECF 70 at 6.

An attorney for Ted's Towing responded the same day, indicating that another attorney from his firm would "connect with [Crete's counsel] later in the week to discuss the objections." ECF 76-4 at 2.  Counsel for Ted's Towing also stated: "Go ahead and issue the subpoenas for dates in October that work for you and counsel for all parties.  We'll evaluate once we receive them." *Id.*  No further communication transpired between counsel for a period of approximately one month.

On July 26, 2021, Automotive Support and Mullens each filed motions to quash the relevant Record Subpoenas.  ECF 48 (Automotive Support); ECF 49 (Mullens).  Each motion was supported by an affidavit from an official of the relevant towing company, in which the official attested that compliance would be unduly burdensome.  *See* ECF 48-2 (Affidavit of John Hessman); ECF 49-2 (Affidavit of Dan Mullens).  I referred these matters to Judge Copperthite. ECF 50.

Then, on July 27, 2021, Vinny's Towing and Morton Towing lodged objections to the subpoenas, pursuant to Fed. R. Civ. P. 26 and 45(d), advancing many of the same arguments that had been made by Ted's Towing. *See* ECF 66-5 (Vinny's Towing); ECF 67-5 (Morton Towing).[5] On August 8, 2021, Crete's counsel sent an email to counsel for Vinny's Towing and Morton Towing, to determine availability to discuss the objections. ECF 75-4 (email from Crete's Counsel to counsel for Vinny's Towing and Morton Towing); ECF 77-4 (same). The record does not reflect that counsel for Vinny's Towing and Morton Towing responded.

On August 9, 2021, Sullivan asked the Court to impose sanctions against Crete, pursuant to Fed. R. Civ. P. 37(d), for failure to answer interrogatories. ECF 53 (the "Sanctions Motion"). At that juncture, I referred all discovery disputes and related scheduling matters to Judge Copperthite. ECF 55.[6]

Counsel for Crete sent an email to counsel for Morton Towing and Vinny's Towing on August 19, 2021, seeking to schedule the depositions of David Morton, an official for Morton Towing, and Vincent Flook, an official for Vinny's Towing. *See* ECF 75-5 at 2; ECF 77-5 at 2.

---

[5] Morton Towing and Vinny's Towing are represented by the same attorney.

[6] Although not directly pertinent for present purposes, Judge Copperthite issued an Order on August 31, 2021, indicating that he would defer ruling on the Sanctions Motion until the close of all discovery. *See* ECF 64. By Order of November 5, 2021, Judge Copperthite directed the parties to submit a status report to the Court regarding the Sanctions Motion. *See* ECF 89.

Four days later, on November 9, 2021, Crete submitted a status report, indicating that it had attempted to reach Sullivan's counsel to prepare a joint status report concerning the Sanctions Motion, but did not receive a timely response. ECF 99. Further, Crete maintained that it "served full and complete written discovery responses upon Defendant" in August 2021. *Id.* Crete also stated that Sullivan "ha[d] not contacted Plaintiff or raised any issues regarding the sufficiency of Plaintiff's written discovery responses since Plaintiff served same." *Id.* Sullivan did not respond to Judge Copperthite's Order.

By Order of November 10, 2021, Judge Copperthite denied the Sanctions Motion, as moot. ECF 103.

Counsel for the individuals responded on August 25, 2021, referring Crete's counsel to "the objections filed with respect to the subpoena for records." ECF 75-5 at 1; ECF 77-5 at 1. Counsel for Crete promptly replied: "I'm not sure what an objection to a subpoena for records has to do with taking depositions of witnesses. Can you please provide me with availability for the requested depositions?" ECF 70-10 at 1. The Court has no information as to whether counsel for Morton Towing and Vinny's Towing answered Crete's counsel.

Judge Copperthite issued a Memorandum and Order on August 31, 2021, denying the motions to quash filed by Automotive Support and Mullens. ECF 65 (the "Automotive/Mullens Order"). In sum, Judge Copperthite determined that the subpoenas sought documents relevant to Crete's allegations; that any hardship in connection with compliance could be mitigated by requiring plaintiff to compensate Automotive Support and Mullens; and that the non-parties had failed to identify any proprietary or confidential information protected from disclosure. *Id.* at 6-7.

Also on August 31, 2021, counsel for Crete again asked to schedule the depositions of Mr. Morton and Mr. Flook. ECF 75-5 at 1; ECF 77-5 at 1. And, Crete's counsel informed counsel for Morton Towing and Vinny's Towing of the Automotive/Mullens Order. In particular, she noted that the court had denied motions to quash that marshalled objections to the Record Subpoenas similar to those advanced by Vinny's Towing and Morton Towing. ECF 75-5 at 1; ECF 77-5 at 1. Crete's counsel advised that, in the absence of instructions to the contrary, by September 1, 2021, Crete would note depositions for both Mr. Flook and Mr. Morton, to be conducted on October 8, 2021, and would pursue the subpoenas as to documents. *Id.* I am unaware of any response by counsel for Morton Towing and Vinny's Towing.

Counsel for Crete followed up on September 3, 2021. *See* ECF 75-6; ECF 77-6 at 1. She wrote: "This email follows voicemails I just left for you on your direct line and your cell. Please

give me a call on my cell at your earliest convenience."  ECF 75-6 at 1; ECF 77-6 at 1.  To my

knowledge, counsel for Vinny's Towing and Morton Towing did not respond.

Then, on September 4, 2021, counsel for Crete sent an email to Ted's Towing, indicating

Crete's intention of "not[ing] the depositions of Ms. Protani and Martin for October 4, 2021."

ECF 76-4 at 2.  Crete's counsel also stated, *id.*:

> As you may be aware by now, we sent subpoenas for documents to some other
> towing companies seeking the same documents we are seeking pursuant to the
> subpoena to Ted's Towing.  Two of those other towing companies filed motions to
> quash/for protective orders on bases essentially identical to those asserted in your
> written objections.  This past week the Court entered an order denying those
> motions to quash and ordering compliance with our subpoenas.  As such, can you
> please advise as to when we can expect to receive your client's document
> production in response to the subpoena?

Counsel for Ted's Towing responded the following day.  He said: "If you send the orders

and subpoenas, we'll review."  *Id.* at 1.

Crete sent a copy of the Automotive/Mullens Order via email to counsel for Ted's Towing

on September 8, 2021.  *Id.*  On that same date, counsel for Ted's Towing replied, stating, in relevant

part, *id.*: "Ted's will stand on its objections.  Should [Crete] move to compel, we will evaluate the

same and take whatever action we deem appropriate."  As to scheduling the depositions that had

been previously requested, counsel for Ted's Towing stated: "[T]he dates we provided were sent

to you on August 8.  A month later, they are no longer good for us.  If you would like to propose

other dates in October, the remainder of that e-mail still stands."  *Id.*[7]  There is no indication that

Crete responded to this email.

---

[7] The reference to "that email" presumably pertains to the Ted's Towing email of August
8, 2021, in which counsel represented that if counsel for Crete issued subpoenas for depositions
for dates in October, counsel for Ted's Towing would "evaluate" the subpoena upon receipt.  *See*
ECF 76-4 at 2.

On an unspecified date, Crete mailed a notice of a deposition (ECF 66-3) and subpoena (ECF 66-2) to Mr. Flook at the address for Vinny's Towing.  Crete mailed a similar subpoena and notice to Mr. Morton at the address for Morton Towing.  ECF 67-2; ECF 67-3.[8]  The notices and subpoenas commanded Mr. Flook and Mr. Morton to appear at the office of plaintiff's counsel on October 8, 2021, at 2:00 p.m.  *See* ECF 66-2 at 1; ECF 66-3; ECF 67-2 at 1; ECF 67-3.  But, according to sworn affidavits of Mr. Flook and Mr. Morton, the subpoenas and notices were not personally served on or otherwise delivered to them.  *See* ECF 66-7 (Flook); ECF 67-8 (Morton).

Counsel for Vinny's Towing and Morton Towing sent an email to Crete's counsel on September 13, 2021, indicating that the subpoenas and notices for the depositions of Mr. Flook and Mr. Morton were defective.  *See* ECF 66-6 (Flook); ECF 67-7 (Morton).  Their counsel wrote: "Please be advised that I do not have authority to accept service of the subpoenas.  It is my understanding that a Subpoena was delivered to Morton's mailbox on Friday, September 10, 2021, and a signature was not required.  Service in this manner does not comply with Rule 45 . . . . Additionally, without waiving any objections and/or defenses as to service, please clarify whether your request is directed at David Morton and Vince Flook, individually, or to a corporate designee for each company."  ECF 66-6 at 1; ECF 67-7 at 1.

On September 22, 2021, Mr. Flook and Vinny's Towing moved to quash the subpoena for Mr. Flook's deposition.  ECF 66.  The motion was supported by a memorandum of law (ECF 66-1) (collectively, the "Flook Motion") and several exhibits.  The following day, on September 23, 2021, Mr. Morton and Morton Towing filed a nearly identical motion (ECF 67), accompanied by

---

[8] Neither Crete, Morton Towing, nor Vinny's Towing provided the date on which the notices and accompanying subpoenas were mailed to Mr. Flook or Mr. Morton.  But, the subpoenas were issued on September 3, 2021.  *See* ECF 66-2 at 1; ECF 67-2 at 1.  And, on that same date, Crete's counsel sent an email to counsel for Vinny's Towing and Morton Towing, attaching copies of the subpoenas and notices for the depositions.  ECF 75-7 at 3; ECF 77-7 at 3.

a memorandum of law (ECF 67-1) (collectively, the "Morton Motion") and numerous exhibits.  I

shall refer to the Flook Motion and the Morton Motion collectively as the "Motions to Quash".

Moreover, on October 1, 2021, counsel for Morton Towing and Vinny's Towing

transmitted an email to Crete's counsel "confirm[ing] that the depositions of [Mr. Flook and Mr.

Morton] scheduled for October 8, 2021, will not be going forward.  In the event the Court denies

the [Motions to Quash] filed last week, we can select mutually agreeable dates."  *See* ECF 75-7 at

1; ECF 77-7 at 1.  Crete's counsel responded, stating, in part, ECF 75-7 at 1; ECF 77-7 at 1:

> I have been trying to get in touch with you regarding your clients' subpoena
> responses in light of the Court's order denying 2 other companies' motions for
> protective orders based on the same grounds but have not received any response to
> my emails or my voicemails.  Can you please let me know when you have
> availability to discuss the productions and your objections?  I also want to clarify,
> as there seems to be some confusion, the depositions are not noted as 30(b)(6)
> depositions, they are noted as depositions of witness in their individual capacities.

It does not appear that counsel for Morton Towing and Vinny's Towing replied to this

email.  Nor is there any indication that Crete otherwise attempted to follow up on its request.

On October 5, 2021, approximately two weeks before the discovery deadline, Crete filed a

second "Motion To Modify the Scheduling Order," seeking to extend the discovery deadline until

February 19, 2022.  ECF 70 (the "Extension Motion").  The Extension Motion was accompanied

by several exhibits.   Crete argued, *inter alia*, that the various non-parties had, in effect,

"stonewall[ed] Crete's discovery efforts and prevent[ed] Crete from completing the necessary

discovery within the current discovery deadline of October 19, 2021 . . . ."  *Id.* at 10.  Thus,

according to Crete, an extension of 120 days was necessary so as to allow it to obtain the discovery

it required to litigate this case.  *Id.*  Sullivan did not consent to the Extension Motion.  *Id.* at 7.

Additionally, on October 21, 2021, Crete moved to compel Vinny's Towing (ECF 75),

Ted's Towing (ECF 76), and Morton Towing (ECF 77) to comply with the Record Subpoenas that

had been issued as to each towing company, supported by several exhibits.  Each motion was accompanied by a "Certificate Of Compliance With Rule 37."  *See* ECF 75 at 15; ECF 76 at 15; ECF 77 at 15.

Soon thereafter, Judge Copperthite issued orders that resolved the then pending motions, with the exception of the motion to compel as to Ted's Towing.[9]  On October 22, 2021, Judge Copperthite issued an Order striking the motions to compel as to Vinny's Towing and Morton Towing on the ground that they were duplicative of the Motions to Quash.  *See* ECF 80.  Further, the Order stated that the motions to compel as to the two entities were "untimely since they were filed after the motions to quash and responses [in opposition] were filed."  *Id.*

Four days later, on October 26, 2021, Judge Copperthite issued two orders granting the Motions to Quash.  *See* ECF 81 (Vinny's Towing); ECF 82 (Morton Towing).  In both orders, Judge Copperthite indicated that Crete "failed to comply with Fed. R. Civ. P. 45 by failing to personally serve the witness . . . with the subpoena as required by Fed. R. Civ. P. 45(b)(1)."  ECF 81; ECF 82.  Further, Judge Copperthite observed that, to the extent that either Mr. Flook or Mr. Morton were to be deposed in their capacities as corporate designees, Crete did not comply with

---

[9] Judge Copperthite did not resolve the motion to compel as to Ted's Towing at that time because it was not yet fully briefed.  On November 5, 2021, Judge Copperthite issued an Order (ECF 88) observing: "Plaintiffs [sic] counsel certified service [of the motion to compel] was by ECF."  However, Judge Copperthite noted: "Teds Towing [sic] is a non-party and counsel for Teds Towing have not entered any pleadings on the record in this case."  *Id.*  Accordingly, Judge Copperthite "direct[ed] Plaintiff to clarify how service was made in ECF 76 upon counsel for Teds Towing."  *Id.*

Thereafter, in correspondence filed on November 9, 2021, Crete's counsel said: "[C]ounsel for Crete mistakenly believed that counsel for Ted's Towing had registered to receive ECF filings in line with the other non-party towing companies and therefore, Counsel for Crete indicated that service of the Motion on Ted's was perfected be [sic] via ECF."  ECF 93.  Further, Crete's counsel "confirmed that Ted's Towing did not receive ECF 76 via electronic service through the Court's filing system."  *Id.*  Accordingly, "Crete served ECF 76 upon counsel for Ted's Towing on November 5, 2021 via e-mail and advised Ted's Towing counsel of the error."  *Id.*

Rule 30(b)(6), because the relevant subpoenas "fail[ed] to identify the categories of information and documents, if any, to be produced." ECF 81; ECF 82.

Crete timely objected to both orders. *See* ECF 91 (Flook Objection); ECF 96 (Morton Objection). The Flook Objection and the Morton Objection were each supported by one exhibit.

And, on October 26, 2021, Judge Copperthite issued an Order granting the Extension Motion in part and denying it in part. ECF 83. In particular, Judge Copperthite said: "It appears to the Court that Plaintiff waited too long to start discovery and then waited until nearly the close of discovery to request an enlargement of time." *Id.* Although "there may have been some delay from Defendant," Judge Copperthite pointed out that "Plaintiff began the process late." *Id.* Consequently, Judge Copperthite determined: "While I find that there is no good cause presented by Plaintiff to extend the discovery period for an additional 120 days, I will allow an additional 30 days for the parties to complete the depositions of any witness who was properly noticed prior to October 19, 2021. To date with respect to non-parties that includes only Automotive Support Services and Mullen's Services." *Id.* Judge Copperthite otherwise denied the Extension Motion. Crete timely objected to the Order. *See* ECF 98 (Extension Objection).

On October 27, 2021, Crete's counsel requested a conference with Judge Copperthite concerning his decision to strike Crete's "Motions to Compel Response to Subpoena" with respect to Vinny's Towing and Morton Towing. ECF 84. Crete's counsel explained: "We believe this Order was entered in error based on a mistake as to the issues being addressed in ECF 75 and ECF 77." *Id.* To that end, counsel sought to provide the court with a "clarification regarding what we believe to be a misunderstanding." *Id.* And, counsel stated: "If the Court declines to allow a telephone conference, Crete will file a Motion for Reconsideration of ECF 80 within the time

13

specified in Local Rule 105(10)."   ECF 84.[10]   The following day, October 28, 2021, Judge Copperthite issued an Order denying Crete's request for a conference.  *See* ECF 85.

Accordingly, on October 29, 2021, Crete moved for reconsideration (ECF 86) of the Order (ECF 80) striking ECF 75 and ECF 77.  The motion was supported by a memorandum of law.  *See* ECF 86-1 (collectively, the "Reconsideration Motion").  Plaintiff argued that the motions to compel were not duplicative of the Motions to Quash because the former concerned the Record Subpoenas, whereas the latter addressed the depositions of Mr. Flook and Mr. Morton.  After briefing of the Reconsideration Motion, Judge Copperthite issued an Order on December 9, 2021 (ECF 121), denying Crete's Reconsideration Motion, without a written rationale.  Crete timely filed objections and exceptions to ECF 121, asking this Court to review the matter.  *See* ECF 125 (Reconsideration Objection).

By Order of December 16, 2021 (ECF 123), Judge Copperthite denied the motion to compel as to Ted's Towing.  Judge Copperthite observed that the motion to compel (ECF 76) "was filed after the discovery deadline and well after Crete knew of Ted's objections of July 23, 2021."  ECF 123 at 1.  He said: "Crete had 88 days to either attempt to resolve the dispute with Ted's or to move to compel after making a good faith effort to resolve the subpoena, yet Crete did neither but waited instead until after the discovery deadline closed."  *Id.*  Accordingly, Judge Copperthite found that the motion to compel was untimely and contravened Local Rule 104.7.  *Id.*

Moreover, Judge Copperthite relied on the assertions contained in the Protani Declaration, which represented that Ted's Towing "possesses approximately 82,500 invoices, each of which may take three minutes to review, resulting in more than 4,000 hours of employee time to

---

[10] Local Rule 105(10) states: "Except as otherwise provided in Fed. R. Civ. P. 50, 52, 59, or 60, any motion to reconsider any order issued by the Court shall be filed with the Clerk not later than fourteen (14) days after entry of the order."

complete."  ECF 123 at 3 (citing ECF 107 at 8); *see* ECF 76-2, ¶¶ 8-10.  Judge Copperthite said: "Ted's does not maintain invoices in a manner that allows indexing or searching with respect to gross vehicle weight."  ECF 123 at 3.  Thus, he determined that requiring Ted's Towing to comply with the Record Subpoena would be unduly burdensome.  *Id.*  And, in his view, this burden far outweighed "the benefits from obtaining the discovery, which [was] speculative at best."  *Id.*

Crete timely took exceptions to Judge Copperthite's Order.  ECF 127 (Ted's Objection). It also submitted numerous exhibits.

### B.  Sullivan

According to Crete, on July 19, 2021, it "propounded and served Interrogatories and Requests for Production of Documents" upon Sullivan.  ECF 115-1 at 2; *see* ECF 115-2 (the "Discovery Requests").  Sullivan responded to the Discovery Requests on August 25, 2021.  *See* ECF 115-3 (the "Discovery Responses").

In the interim, on August 5, 2021, and consistent with the Scheduling Order then in effect (*see* ECF 32), Sullivan provided plaintiff with an Expert Disclosure.  ECF 145-16.  As discussed, *infra*, defendant identified Wayne Sullivan as an expert.

With regard to Sullivan's Discovery Responses, Crete claimed that they were rife with deficiencies.  In particular, Crete maintained that Sullivan failed "to respond to portions of Interrogatories"; provided "evasive Answers which [did] not fairly apprise Crete of potential issues such as admissions against interest"; employed "objections utilized by non-parties in responding to records subpoenas which have already been deemed to be insufficient to preclude production of documents in this case"; and failed "to produce responsive documentation".  ECF 115-1 at 2.

Therefore, on October 2, 2021, Crete transmitted "an eighteen (18) page letter to Sullivan's outlining said deficiencies and requesting the deficiencies be remedied by October 8, 2021."  *Id.*;

*see* ECF 115-4 (the "Demand Letter").   Three days later, on October 5, 2021, counsel for Crete

"followed up requesting an update as to the status of supplemental discovery responses . . . ."  ECF

115-1 at 2; *see* ECF 115-5.  However, counsel for Sullivan did not respond to the Demand Letter

until October 17, 2021, at which time he informed Crete's counsel that Sullivan "was 'continuing

to work on supplementing the written discovery responses[.]'"  ECF 115-1 at 2 (quoting ECF 115-

6).  The record does not show that Sullivan ever provided the supplemental material.  *See* ECF

115-1 at 2 (stating that as of November 24, 2021, Sullivan had yet to provide the material); ECF

130 at 2 (indicating the same as of January 10, 2022).

On an unspecified date after October 5, 2021, Crete served a "Subpoena and Notice to take

Deposition to [Sullivan's] Rule 30(b)(6) designee and of Wayne P. Sullivan ('Mr. Sullivan'),

individually, to take place on October 19, 2021."  ECF 145-1 at 1; *see* ECF 145-2 (Corporate

Designee); ECF 145-3 (Mr. Sullivan).  In other submissions, Mr. Sullivan is referred to as Wayne

Sullivan, Sr.  *See* ECF 145-3 at 2; ECF 70 at 2.  He served as defendant's Rule 30(b)(6) designee.

ECF 145-1 at 2.

Because Mr. Sullivan had been exposed to COVID-19, counsel decided to postpone his

deposition to a mutually agreeable date.  *Id.*  And, as mentioned, on October 22, 2021, Judge

Copperthite extended the discovery deadline to November 26, 2021, for the limited purpose of

allowing Crete to complete the depositions of witnesses it had properly noticed by October 19,

2021.  *See* ECF 83.  In accordance with this Order, the parties rescheduled the deposition of Mr.

Sullivan for November 10, 2021, and Crete served amended subpoenas and deposition notices.

ECF 145-1 at 2; *see* ECF 145-6 (Corporate Designee); ECF 145-7 (Mr. Sullivan).

On November 10, 2021, plaintiff began the deposition of Mr. Sullivan in his capacity as

Sullivan's Rule 30(b)(6) designee.  However, the deposition was not completed on that date.  ECF

145-1 at 2.   Moreover, "the deposition of Mr. Sullivan individually did not commence."   *Id.*
Accordingly, the parties "reached an agreement on the record to file a joint motion to extend the
discovery deadline to allow the completion of Defendant's 30(b)(6) designee deposition and Mr.
Sullivan's individual deposition within the discovery deadline."   *Id.*

Therefore, on November 24, 2021, the parties filed a "Joint Motion To Modify The
Scheduling Order."   ECF 113 (the "Joint Motion").   The Joint Motion sought to modify ECF 83,
an Order of October 26, 2021.   The parties indicated that the deadline for Crete "to depose any
witness whose deposition was properly noticed" prior to October 19, 2021, was set to expire on
November 26, 2021.   *Id.* at 2.   The Joint Motion recounted the complications in completing the
"deposition of Defendant's corporate designee [and] the depositions of Defendant's President and
Vice president."   *Id.* at 3.   Accordingly, the parties agreed "to jointly move to extend the November
26, 2021 deadline and permit additional time to complete these discovery depositions."   *Id.*   They
asked the Court to extend the discovery deadline until February 3, 2022, for the purpose of
allowing "the depositions permitted under ECF 83 and as outlined in this Motion."   *Id.* at 3 n.4.

Notably, the Joint Motion made clear that Sullivan did not agree to "extend any discovery
referred to in ECF 83 [*i.e.*, the Extension Motion], other than for Defendants as enumerated above."
*Id.* at 3.   The parties submitted a proposed order (ECF 113-1), which I signed on November 24,
2021, in the belief that it reflected the parties' agreement.   *See* ECF 114.

By its terms, the Order (ECF 114) extended the discovery deadline to February 3, 2022,
without limitation.   However, the Order cannot be read in a vacuum.   In conjunction with the Joint

Motion (ECF 113), it is clear that the extension pertained only to the limited number of depositions to which the parties had agreed.[11]

Also on November 24, 2021, Crete moved to compel Sullivan's supplemental written discovery (ECF 115), supported by a memorandum of law (ECF 115-1) (collectively, the "Supplemental Motion to Compel"), and several exhibits.  Crete noted that, as of the time of filing the Supplemental Motion to Compel, Sullivan had yet to provide Crete with any supplemental responses and "the myriad of discovery deficiencies . . . are still at issue."  ECF 115-1 at 20.  And, Crete stated: "Sullivan's failure to provide complete Discovery Responses further precludes Crete from preparing for and conducting the necessary discovery depositions to support its allegations in the case *sub judice*."  *Id.*

Judge Copperthite granted the Supplemental Motion to Compel on December 17, 2021.  ECF 124.   After recounting the relevant procedural history, Judge Copperthite said: "[I]t is clear that the [Supplemental Motion to Compel] is timely, with the granting of ECF No. 113.  It is also clear that Crete relied in good faith on Sullivan's representations that they were continuing to respond to the written discovery."  ECF 124.  Further, Judge Copperthite observed that "Crete made good faith efforts to obtain the deficient discovery, and Sullivan did not respond."  *Id.*  Accordingly, in his view, "there [was] a sufficient factual basis" to warrant granting the Supplemental Motion to Compel.  *Id.*  Sullivan filed a timely objection to the Supplemental Motion to Compel.  ECF 126 (Supplemental Objection).

Pursuant to the Order of November 24, 2021 (ECF 114), the parties rescheduled the deposition of Mr. Sullivan for January 5, 2022.  ECF 145-1 at 2.  Accordingly, on December 13,

---

[11] The Court assumes that the choice of phraseology was inadvertent.  If so, ECF 114 is an example of imprecise draftsmanship; its text does not accurately capture the parties' agreement, as reflected in the Joint Motion.

2021, the Clerk issued "second amended deposition notices to Defendant's 30(b)(6) designee and Mr. Sullivan . . . ."  ECF 145-1 at 2; *see* ECF 145-10 (Corporate Designee); ECF 145-11 (Mr. Sullivan).  Crete does not specify how or on what date service of the notices was achieved, but states: "No objection was received to the Second Amended Deposition Notices."  ECF 145-1 at 2.

However, "[d]ue to a COVID-19 exposure to Crete's counsel, the depositions were postponed again."  *Id.*  Thereafter, the parties "proceeded to clear dates for the continuation of Defendant's 30(b)(6) deposition and Mr. Sullivan and cleared February 1 and February 2, 2022 . . . ." *Id.* at 3.  Notably, the parties also discussed reserving February 2, 2022, as an alternative date, "as a result of a potential conflict with a medical procedure for Crete's attorney."  *Id.*  This resulted in a "third set of amended deposition notices being served . . . ."  *Id.*; *see* ECF 145-13 (Corporate Designee); ECF 145-14 (Mr. Sullivan).

The "Third Amended Deposition Notice to Mr. Sullivan" stated that plaintiff intended "to take the 'oral deposition of witness, Wayne P. Sullivan for the purposes of discovery pursuant to the Federal Rules of Civil Procedure.'"  ECF 145-1 at 3 (quoting ECF 145-14 at 4).  Sullivan did not object to "the form, substance or manner of service of the Third Amended 30(b)(6) deposition notice or the Third Amended deposition notice to Mr. Sullivan."  ECF 145-1 at 3.

The parties completed the deposition of defendant's Rule 30(b)(6) designee on February 1, 2022.  *Id.*  "Crete's counsel then proceeded to examine Mr. Sullivan as an individual witness."  *Id.*  And, "Crete's counsel marked Defendant's Rule 26(a)(2) Expert Disclosure identifying Mr. Sullivan as an Expert Witness . . . ."  *Id.*; *see* ECF 145-16 (the "Expert Disclosure" or "Disclosure"); *see also* ECF 164-15 (Wayne Sullivan Dep. Tr.) at 2 (Tr. pages at 43-44).

In the Expert Disclosure, Sullivan "designate[d] Wayne P. Sullivan . . . as an expert in the field of towing and recovery [with] 45+ years experience as a Towing/Recovery operator, and

Licensed MD State Inspector of commercial vehicles." ECF 145-16 at 1. Further, the Disclosure indicated that Sullivan "expects to call Mr. Sullivan to testify at trial regarding the applicable industry standards and practices relevant to billing, charging, and invoicing for towing and recovery of commercial motor vehicles, along with Defendant's compliance with the relevant industry standards . . . ." *Id.* at 1-2.

After Crete's counsel marked the Expert Disclosure, "Defendant's counsel stated that Mr. Sullivan would not answer questions regarding the substance of the Disclosure or anything related to Mr. Sullivan as an expert witness because the deposition of Mr. Sullivan was not properly noted to depose Mr. Sullivan as an expert.[ ]" ECF 145-1 at 3-4; *see* ECF 164-15 at 2 (Tr. at 43-44). "At that time, a brief recess was taken," and then "a discussion was held on the record clarifying that Plaintiff's counsel was affirmatively instructing Mr. Sullivan not to answer questions regarding the Disclosure or his expert opinions." ECF 145-1 at 4; *see* ECF 164-15 at 3 (Tr. at 45-47).

According to Crete, its counsel "attempted in good faith to resolve the dispute, offering to conduct the deposition the following day when Mr. Sullivan, Crete's counsel and Defendant's counsel had previously indicated they would be available." ECF 145-1 at 4; *see* ECF 164-15 at 5 (Tr. at 54-55). However, "Defendant's counsel declined, stating the availability was only provided as a courtesy due to the medical procedure and that the availability was limited to Mr. Sullivan's role as a 30(b)(6) designee." ECF 145-1 at 4; *see* ECF 164-15 at 7 (Tr. at 62-64). "Crete's counsel then offered to consent to an extension of the discovery deadline to allow Mr. Sullivan and Defendant's counsel to prepare for the deposition relating to the Disclosure." ECF 145-1 at 4-5; *see* ECF 164-15 at 7 (Tr. at 62-64). However, "Defendant's counsel declined to consent to an extension." ECF 145-1 at 5; *see* ECF 164-15 at 7 (Tr. at 62-64).

On February 3, 2022, Crete filed a "Motion To Compel Wayne P. Sullivan To Answer Questions At Deposition Related to Expert Opinions Or To Exclude Testimony From Wayne P. Sullivan As An Expert Witness And For Sanctions" (ECF 145), supported by a memorandum of law (ECF 145-1) (collectively, the "Expert Motion") and several exhibits.  On March 8, 2022, Judge Copperthite denied the Expert Motion.  *See* ECF 163.

Judge Copperthite reasoned that the federal Rules and the Local Rules implicitly require that "the party seeking to depose an expert witness must detail the areas of inquiry, providing notice that the individual is being deposed as an expert witness."  *Id.* at 1.  In Judge Copperthite's view, "Mr. Sullivan did not receive notice to testify as an expert," and therefore "deposing him as an expert witness was improper."  Further, Judge Copperthite determined: "Mr. Sullivan was . . . not under any obligation to answer questions as an expert witness.[ ]"  *Id.* at 2.

Crete timely filed "Objections and Exceptions To Order Denying Crete Carrier Corp's Motion To Compel Wayne P. Sullivan To Answer Deposition Questions Related To Expert Opinions Or Motion To Exclude Wayne P. Sullivan As An Expert Witness And For Sanctions."  *See* ECF 164 (Expert Objection).  It is supported by numerous exhibits.

## II.      Standard of Review

Under Rule 72(a) of the Federal Rules of Civil Procedure, a "pretrial matter not dispositive of a party's claim or defense" may be referred to a magistrate judge  for resolution.  *See* 28 U.S.C. § 636(b)(1)(A); Local Rule 301.5(a); *Mvuri v. Am. Airlines, Inc.*, 776 F. App'x 810, 810 (4th Cir. 2019) (per curiam).  Rule 72(a) also provides for the review of the magistrate judge's ruling.  A party who opposes the magistrate judge's order must "file objections to the order within 14 days after being served with a copy."  Fed. R. Civ. P. 72(a).  In such a case, the district court must "modify  or  set  aside  any  part  of  the  order  that  is  clearly  erroneous  or  is  contrary  to

law." *Id.*; *see Stone v. Trump*, 356 F. Supp. 3d 505, 511 (D. Md. 2019); *United Bank v. Buckingham*, 301 F. Supp. 3d 547, 551 (D. Md. 2018); *Stonecrest Partners, LLC v. Bank of Hampton Roads*, 770 F. Supp. 2d 778, 782 (E.D.N.C. 2011).  In performing this review, the court may "receive further evidence or recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636.

"[C]lear error review is deferential" but "it is not toothless."  *Butts v. United States*, 930 F.3d 234, 238 (4th Cir. 2019).  The clearly erroneous standard does not permit the reviewing court to ask whether the judge's ruling "is the best or only conclusion permissible based on the evidence" or to "substitute its own conclusions for that of the magistrate judge."  *Huggins v. Prince George's Cty.*, 750 F. Supp. 2d 549, 559 (D. Md. 2010); *see Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (observing that the clearly erroneous standard "does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently").  Rather, a "finding is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"  *Butts*, 930 F.3d at 238 (quoting *Anderson*, 470 U.S. at 573).  An order is contrary to law if it "'fails to apply or misapplies relevant statutes, case law, or rules of procedure.'"  *Sandoval v. Starwest Servs., LLC*, 1:17-cv-01053 (AJT/TCB), 2018 WL 2426269, at *1 (E.D. Va. Feb. 16, 2018) (citation omitted).

A magistrate judge's resolution of a discovery dispute is ordinarily accorded substantial deference.  *See Stone*, 356 F. Supp. 3d at 511; *In re Outsidewall Tire Litig.*, 267 F.R.D. 466, 470 n.5 (E.D. Va. 2010) (collecting cases).  Therefore, the objecting party carries a heavy burden in persuading a district court to disturb a magistrate judge's ruling on a discovery matter.  *See Stone*, 356 F. Supp. 3d at 511; *see also* 12 Charles A. Wright & Arthur R. Miller, Federal

PRACTICE AND PROCEDURE CIVIL § 3069 (3d ed. 2019) (noting that review of a magistrate's discovery ruling "might better be characterized as suitable for an abuse-of-discretion analysis").  Put simply, an objection is not a vehicle to nit-pick the magistrate judge's ruling.  *See Buchanan v. Consol. Stores Corp.*, 206 F.R.D. 123, 124 (D. Md. 2002); 12 FEDERAL PRACTICE AND PROCEDURE CIVIL § 3069 (describing setting aside a magistrate judge's ruling as "extremely difficult to justify").

Notably, the Fourth Circuit has given district courts a wide berth to control discovery. *See United States v. Ancient Coin Collectors Guild*, 899 F.3d 295, 323 (4th Cir. 2018); *see Hinkle v. City of Clarksburg*, 81 F.3d 416, 426 (4th Cir. 1996) ("District courts enjoy nearly unfettered discretion to control the timing and scope of discovery.").  As a result, "discovery rulings are generally not overturned on appeal 'absent a showing of clear abuse of discretion,'" which "will only be identified where discovery restrictions prevent a litigant from 'pursuing a litigation theory.'" *Ancient Coin Collectors Guild*, 899 F.3d at 323 (alteration and citation omitted).

In undertaking review here, Rule 26 of the Federal Rules of Civil Procedure is relevant.  Rule 26(b)(1) was amended in 2015, regarding the scope of discovery in civil cases, in an effort to curb widespread abuse in discovery.  *See generally Symposium, The Future of Discovery*, 71 VAND L. REV. (Nov. 2018).  The Rule provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense *and proportional to the needs of the case . . . .*" (Emphasis added).  The party seeking discovery has the burden to establish its relevancy and proportionality, at which point the burden shifts to the party resisting discovery to demonstrate why the discovery should not be

permitted. *Mach. Sols., Inc. v. Doosan Infracore Am. Corp.*, 323 F.R.D. 522, 526 (D.S.C. 2018); *United Oil Co. v. Parts Ass'n*, 227 F.R.D. 404, 411 (D. Md. 2005).

Although Rule 26 does not define relevancy, it has been "'broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party.'" *Revak v. Miller*, 7:18-CV-206-FL, 2020 WL 1164920, at *2 (E.D.N.C. Mar. 9, 2020) (citation omitted); *see Fish v. Air & Liquid Sys. Corp.*, GLR-16-496, 2017 WL 697663, at *2 (D. Md. Feb. 21, 2017) (Copperthite, M.J.); *see also Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Carr v. Double T Diner*, 272 F.R.D. 431, 433 (D. Md. 2010). Nonetheless, a party is not entitled to limitless discovery. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) (noting that "'discovery, like all matters of procedure, has ultimate and necessary boundaries'") (citation omitted). Indeed, discovery "'must be measured against the yardstick of proportionality.'" *Fish*, 2017 WL 697663, at *3 (citation omitted); *see Lynn v. Monarch Recovery Mgmt., Inc.*, 285 F.R.D. 350, 355 (D. Md. 2012). Whether a discovery request is proportional is determined by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Moreover, pursuant to Rule 26(b)(2)(C), a court may limit discovery *sua sponte* or at a party's request for any one of three reasons: "the discovery sought is unreasonably cumulative or duplicative"; it is "obtainable from some other source that is more convenient, less burdensome, or less expensive"; or "the burden or expense of the proposed discovery outweighs the likely benefit." *See Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004) ("The simple fact that requested information is discoverable . . . does not mean that discovery must be had.").

Notably, "[o]ne of the most important, but apparently least understood or followed, of the discovery rules is Fed. R. Civ. P. 26(g), enacted in 1983." *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 357 (D. Md. 2008) (Grimm, M.J.).[12]  This rule is titled "Signing Disclosures and Discovery Requests, Responses, and Objections."  It states, in relevant part., *id.*:

> (1) *Signature Required; Effect of Signature.*  Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name—or by the party personally, if unrepresented—and must state the signer's address, e-mail address, and telephone number.  By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:
>
>> (A) with respect to a disclosure, it is complete and correct as of the time it is made; and
>>
>> (B) with respect to a discovery request, response, or objection, it is:
>>
>>> (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;
>>>
>>> (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and
>>>
>>> (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.
>
> * * * * *
>
> (3) *Sanction for Improper Certification.*  If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both.  The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

---

[12] Judge Grimm now serves as a United States District Judge.  But, he authored *Mancia* when he was a United States Magistrate Judge.

As provided by the Advisory Committee Notes, Rule 26(g) "imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37." This is because "Rule 26(g) is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions." *Id.* Accordingly, "[t]he subdivision provides a deterrent to both excessive discovery and evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection." *Id.* As Judge Grimm explained in *Mancia*, 253 F.R.D. at 360:

> Rule 26(g) charges those responsible for the success or failure of pretrial discovery—the trial judge and the lawyers for the adverse parties—with approaching the process properly: discovery must be initiated and responded to responsibly, in accordance with the letter and spirit of the discovery rules, to achieve a proper purpose (i.e., not to harass, unnecessarily delay, or impose needless expense), and be proportional to what is at issue in the litigation, and if it is not, the judge is expected to impose appropriate sanctions to punish and deter.

Also, pursuant to the Court's Local Rules, "parties and counsel have an obligation to cooperate in planning and conducting discovery . . . ." Local Rule, App'x A, Guideline 1(a). This obligation, at a minimum, requires counsel to "be[ ] open to, and reasonably available for, discussion of legitimate differences in order to achieve the just, speedy, and inexpensive resolution of the action and every proceeding." Local Rule, App'x A, Guideline 1(d). Indeed, the Court expects counsel to be capable of "communicat[ing] with each other in good faith throughout the discovery process to resolve disputes without the need for intervention by the Court, and [to] do so promptly after becoming aware of the grounds for the dispute." Local Rule, App'x A, Guideline 1(f). *See also Mancia*, 253 F.R.D. at 357 (noting that Rule 26(g) "is intended to impose an 'affirmative duty' on counsel to behave responsibly during discovery, and to ensure that it is conducted in a way that is consistent 'with the spirit and purposes' of the discovery rules, which

are contained in Rules 26 through 37") (quoting Fed. R. Civ. P. 26(g) advisory committee's notes to the 1983 amendments).

### III.   Discussion

### A.  Morton Objection & Flook Objection

### 1.

Crete objects (ECF 91; ECF 96) to Judge Copperthite's orders (ECF 81, Vinny's Towing; ECF 82, Morton Towing) granting the Motions to Quash filed by Vinny's Towing (ECF 66) and Morton Towing (ECF 67).  As stated, Vinny's Towing and Morton Towing are not parties to the case.  They filed largely identical motions to quash the subpoenas for the depositions of Vince Flook and David Morton, respectively.  And, Crete's objections marshalled nearly identical exceptions to ECF 81 and ECF 82.  *See* ECF 91; ECF 96.  Therefore, I shall discuss the Flook Objection and the Morton Objection together.

Fed. R. Civ. P. 45, titled "Subpoena," is relevant here.  Rule 45(a) permits a party in a legal proceeding to compel a non-party to: (1) appear and testify at a designated time and location; (2) produce documents; and (3) permit an inspection of premises.  Rule 45(d) is titled: "Protecting A Person Subject To A Subpoena; Enforcement."  It provides that a party serving a subpoena may move the court for an order compelling production.  Fed. R. Civ. P. 45(d)(2)(B)(i).  But, Fed. R. Civ. P. 45(d) also protects a person or entity subject to a subpoena from undue burden or expense associated with compliance.  Rule 45(d)(1) states, in part: "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Failure to comply may result in sanctions.  *Id.*

Under Fed. R. Civ. P. 45(d)(2)(B), a person who is served with a document subpoena may object to the production associated with the subpoena.  Notably, the objection must be served

27

within 14 days after service of the subpoena, or by the date production is required, whichever is earlier.  *Id.*  Fed. R. Civ. P. 45(d)(2)(B) provides that a person served with a subpoena may object in writing to the production associated with the subpoena.  And, a court order requiring compliance "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance."  Rule 45(d)(2)(B)(ii).  Rule 45(d)(3) pertains to quashing or modifying a subpoena.

Also of relevance, "the scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26."  *Phillips v. Ottey*, DKC-14-0980, 2016 WL 6582647, at *2 (D. Md. Nov. 7, 2016) (quoting *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 240–41 (E.D. Va. 2012)) (internal quotation marks omitted); *accord EEOC v. Performance Food Grp., Inc.*, MJG-13-1712, 2017 WL 2461977, at *2 (D. Md. June 7, 2017).  Under Rule 26(b)(1), a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense *and proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1) (emphasis added).  Subpoenas that are overbroad and that seek information "'irrelevant to the case' should be considered unduly burdensome."  *Bierman Family Farm, LLC v. United Farm Family Ins. Co.*, ADC-17-0004, 2017 WL 3311206, at *3 (D. Md. Aug. 2, 2017) (citation omitted).

In *Maxtena, Inc. v. Marks*, 289 F.R.D. 427 (D. Md. 2012), Judge Chasanow explained, *id.* at 439:

> "Whether a subpoena subjects a witness to undue burden within the meaning of Rule 45[(d)](3)(A)(iv) usually raises a question of the reasonableness of the subpoena," an analysis that requires "weighing a subpoena's benefits and burdens" and "consider[ing] whether the information is necessary and whether it is available

from any other source."  9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2463.1 (3d ed. 2008).  This inquiry is "highly case specific" and involves "an exercise of judicial discretion."  *Id.*  "The burden of proving that a subpoena is oppressive is on the party moving to quash." *Fleet Bus. Credit, LLC v. Solarcom, LLC*, No. Civ. AMD 05–901, 2005 WL 1025799, at *1 (D. Md. May 2, 2005) (internal quotation marks omitted).

**2.**

Judge Copperthite granted the Motions to Quash based on the procedural arguments of the non-parties.  He explained: "It is clear to the Court and uncontested, that Plaintiff Crete Carrier failed to comply with Fed. R. Civ. P. 45 by failing to personally serve the [relevant witness] as required by Fed. R. Civ. P. 45(b)(1)."  ECF 81; ECF 82.  Further, he observed that Crete "also failed to properly serve the deposition notice by failing to request [the relevant towing company] designate a Rule 30(b)(6) witness and failing to identify the categories of information and documents, if any, to be produced."  ECF 81; s*ee* ECF 82 (stating the same as to Morton Towing).

Crete objects to these rulings, arguing that it properly served Mr. Flook and Mr. Morton with the notices and subpoenas.  ECF 91 at 4; ECF 96 at 4.  In particular, plaintiff states that it only sought to depose Mr. Flook and Mr. Morton in their individual capacities, not as Rule 30(b)(6) designees.  ECF 91 at 2 n.1; ECF 96 at 2 n.1.  As to the viability of the subpoenas as to Mr. Flook and Mr. Morton in their individual capacities, plaintiff maintains that there is a presumption that service of process was valid, absent "corroborative evidence by independent, disinterested witnesses" that shows otherwise. ECF 91 at 4 (internal quotation marks omitted); ECF 96 at 4 (same).

Further, plaintiff points the Court to a return receipt reflecting the signature of "D M", which are Morton's initials, to establish that Morton was personally served with the subpoena for his deposition.  ECF 96 at 4; *see* ECF 96-1.  With respect to Mr. Flook, plaintiff provided a return

receipt reflecting the signature of "S M" to bolster its assertion that it effected service on Mr. Flook.  ECF 91 at 4; *see* ECF 91-1.

Vinny's Towing and Morton Towing oppose Crete's objections, advancing identical arguments.  ECF 109 (Morton Towing); ECF 110 (Vinny's Towing).  Relevant here, they assert that Mr. Morton and Mr. Flook were not "served with the Summons in accordance with" Rule 4(e) and Rule 45(b)(1).  ECF 109 at 5; ECF 110 at 5.

### 3.

Fed. R. Civ. P. 45(b) addresses the means by which a subpoena may be served on an individual.  Specifically, it provides that service of a subpoena may be effected by "[a]ny person who is at least 18 years old and not a party" by "delivering a copy [of the same] to the named person . . . ."  Fed. R. Civ. P. 45(b)(1).  As the Fourth Circuit recently observed, "[a]ctual notice with no delivery to the named person fails to satisfy the Rule's demands.[ ]"  *In re Application of Newbrook Shipping Corp.*, ___F.4th___, 2022 WL 1162408, at *7 (4th Cir. Apr. 20, 2022).

Notably, Rule 45 does not define the term "delivering".  However, the "use of the word 'delivering' in [this subsection] with reference to the person to be served has been construed literally."  9A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE, CIV., § 2454 (3d ed. Apr. 2021); *see OceanFirst Bank v. Hartford Fire Ins. Co.*, 794 F. Supp. 2d 752, 753-54 (E.D. Mich. 2011) (collecting cases and recognizing that "[t]he majority of lower courts also have held that Rule 45 requires personal service").  Indeed,"[t]he predominant view appears to be that the delivery must be directly delivered by a process server personally (often referred to as 'personal service')."  *In re Application of Newbrook Shipping Corp.*, 2022 WL 1162408, at *7 n.9.

However, a minority view has emerged.  "[A] number of courts have upheld service by certified mail or other forms of service that are reasonably calculated to achieve actual notice." STEVEN S. GENSLER & LUMEN N. MULLIGAN, 1 FEDERAL RULES OF CIVIL PROCEDURE, RULES AND COMMENTARY, RULE 45 (Feb. 2022); *see Ott v. City of Milwaukee*, 682 F.3d 552, 557 (7th Cir. 2012) (determining that service of a subpoena through certified mail by the United States Postal Service satisfied Rule 45's delivery requirement).  Indeed, some judges of this Court have adopted the position that service of a subpoena may satisfy Rule 45(b) by means other than personal delivery.  *See*, *e.g.*, *Hall v. Sullivan*, 229 F.R.D. 501, 505-06 (D. Md. 2005) (finding that service of a subpoena duces tecum via delivery by Federal Express was proper under the Federal Rules).

The Motions to Quash asserted, among other things, that service was insufficient because the relevant subpoena and notice were not personally delivered either to Mr. Morton or Mr. Flook. ECF 66-1 at 9-10; ECF 67-1 at 10.  Further, Morton Towing and Vinny's Towing provided Judge Copperthite with affidavits from Mr. Morton and Mr. Flook, respectively, in which they averred that the subpoenas had not been personally delivered to them.  *See* ECF 66-7 (Flook); ECF 67-8 (Morton).

In its objections, Crete does not argue that it effected service of the subpoena via personal delivery to Mr. Morton or Mr. Flook.  Rather, plaintiff contends only that service via certified U.S. mail was sufficient, as evidenced by the return receipts it presented to the Court.  *See* ECF 91 at 4; ECF 96 at 4.

Although there appears to be a split of authority on the question of how a subpoena may be properly served, Judge Copperthite adopted what appears to be the majority position.  He construed Rule 45(b)(1) as requiring a subpoena to be personally served on the witness to be deposed.  *See* ECF 81; ECF 82.  He said: "Crete Carrier failed to comply with Fed. R. Civ. P. 45

by failing to personally serve the witness . . . as required by Fed. R. Civ. P. 45(b)(1)."  ECF 81 (Flook); ECF 82 (Morton).  In the absence of any indication that the relevant subpoenas and notices were personally delivered to Mr. Flook or Mr. Morton, I cannot say that Judge Copperthite clearly erred, acted contrary to law, or otherwise abused his discretion in determining that Crete failed to serve the relevant subpoenas and notices on Mr. Morton and Mr. Flook in compliance with Rule 45(b)(1).

Crete also argues that Judge Copperthite erred "in failing to afford Crete the opportunity to re-serve the Deposition Notice" on both Mr. Morton and Mr. Flook.  ECF 91 at 6; ECF 96 at 6. It notes that "the disputed service took place on September 8, 2021," or, put another away, one month prior to the expiration of the then-operative discovery deadline.  ECF 91 at 7; ECF 96 at 7. Accordingly, plaintiff argues that it "was justified in relying on its position that service was proper unless and until this Court ruled otherwise."  ECF 91 at 7; ECF 96 at 7.

To be sure, in the exercise of his discretion, Judge Copperthite could have provided Crete with another opportunity to serve Mr. Morton and Mr. Flook with the subpoenas.  But, Crete does not point to any authority that suggests it was clear error, contrary to law, or an abuse of discretion for him to decline to do so.

More to the point, Crete knew of the claim raised by the non-parties, *i.e.*, Crete was well aware that it did not personally effect service.  And, there was ample case law at the time that suggested that its method of service was not proper.  Yet, Crete made no effort to correct the service once the issue was raised by the movants.  Under the circumstances, Judge Copperthite was not required to allow Crete additional time to correct a matter that Crete had chosen to ignore.

Thus, I shall deny the Flook Objection and the Morton Objection.

## B.  Extension Objection

As discussed above, on October 5, 2021, Crete sought an extension of 120 days to complete discovery.  ECF 70.  Sullivan opposed the motion.  *See id.* ¶ 29; *see also* ECF 71 (Sullivan's "Response To Motion For Extension Of Time").  Judge Copperthite granted the motion in part and denied it in part, allowing the parties 30 days to complete depositions but only as to any witness who, by October 19, 2021, had been properly noticed.  ECF 83.  Principally, Judge Copperthite observed that Crete had waited too long to begin to discovery, and "then waited until nearly the close of discovery to request an enlargement of time."  *Id.* at 1.  Thus, in his view, an extension of 120 days, over Sullivan's objection would be inappropriate.  *Id.* at 2.

Crete challenges the ruling.  ECF 98.  It argues that this decision was "clearly erroneous" because it overlooks that "Crete served records subpoenas to non-parties **102 days** prior to the close of the then operative October 19, 2021 discovery deadline ('Discovery Deadline'), served Interrogatories and Requests for Production of Documents **92 days** prior to the Discovery Deadline, commenced the process of clearing dates for Defendant's discovery deposition **76 days** prior to the Discovery Deadline, and commenced the process of clearing dates for discovery deposition [sic] of various employees of the Towing Companies **72 days** prior to the Discovery Deadline."  *Id.* at 4 (emphasis in original). Further, Crete argues that Judge Copperthite should have considered that the non-parties had, in effect, precluded Crete from obtaining the discovery it sought by refusing to cooperate in the scheduling of depositions.  *Id.* at 4-5.

According to Sullivan, Crete overlooks that it had already obtained a sixty-day extension of discovery in May 2021.  ECF 108 at 1.  And, Sullivan points out that Crete did not propound any discovery whatsoever until June 2021, nearly three months after the Court issued the original Scheduling Order.  *Id.* at 1-2.  Thus, in Sullivan's view, Judge Copperthite's ruling properly

recognized that Crete's need for additional time to complete discovery was a predicament of its own making.  ECF 108 at 2.

Analysis of the Extension Objection is guided by Fed. R. Civ. P. 16, which concerns scheduling and case management.  Scheduling orders serve a vital purpose in helping a court manage its civil caseload.  *Gestetner Corp. v. Case Equipment Co.*, 108 F.R.D. 138, 141 (D. Me. 1985); *see also Naughton v. Bankier*, 14 Md. App. 641, 653, 691 A.2d 712, 718 (1997) (recognizing that a scheduling order helps "to maximize judicial efficiency and minimize judicial inefficiency").  Notably, "[i]n an era of burgeoning case loads and [crowded] dockets, effective case management has become an essential tool for handling civil litigation." *Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 45 (1st Cir. 2002) (alteration added).  To that end, a scheduling order is an important vehicle in "'securing the just, speedy, and inexpensive determination of every action.'" *Miller v. Transcend Services, Inc.*, 10 CV 362, 2013 WL 1632335, at *4 (M.D.N.C. Apr. 16, 2013) (citation omitted).

A scheduling order is also mandatory.  Rule 16(b)(1) states that, subject to certain exceptions, "the district judge . . . must issue a scheduling order."  Further underscoring the importance of a scheduling order to case management, Rule 16(b)(2) commands that a scheduling order be issued "as soon as practicable" after a defendant has been served or has appeared in a case. Moreover, Rule 16(b)(4) provides: "A schedule may be modified only for good cause and with the judge's consent."  Thus, Rule 16 "recognize[s] ... that the parties will occasionally be unable to meet . . . deadlines [in a scheduling order] because scheduling order deadlines are established relatively early in the litigation."  *O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 154 (1st Cir. 2004).  But, under Rule 16(b)(4), a movant must demonstrate good cause to satisfy the requirement for a modification. *See Faulconer v. Central Health, Inc.*, 808 F. App'x

148, 152 (4th Cir. 2020); *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008); *Wonasue v. Univ. of Md. Alumni Ass'n*, 295 F.R.D. 104, 106-07 (D. Md. 2016); *see also United States v. Hartford Accident & Indem. Co.*, JKB-14-2148, 2016 WL 386218, at *5 (D. Md. Feb. 2, 2016) ("The burden for demonstrating good cause rests on the moving party.").

The "'touchstone'" of Rule 16(b)(4)'s "good cause requirement is 'diligence.'" *Faulconer*, 808 F. App'x at 152 (citation omitted). The Fourth Circuit has endorsed this proposition several times, in line with other circuits. *Id.* at 152 n.1 (collecting cases). "[O]nly diligent efforts to comply with the scheduling order can satisfy Rule 16's good cause standard." *Id.* at 152; *accord Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 374 (D. Md. 2002) ("Lack of diligence and carelessness are 'hallmarks of failure to meet the good cause standard.'") (citation omitted).

In my view, far from containing clear error, Judge Copperthite's Order (ECF 83) is entirely reasonable. To be sure, Crete plainly experienced difficulties in scheduling the depositions of the various non-party witnesses. But, the Court issued the first Scheduling Order on March 22, 2021 (ECF 9), and Crete did not serve the Record Subpoenas until July 2021. *See* ECF 70 at 3. Likewise, it did not attempt to schedule the depositions of Mr. Flook or Mr. Morton until mid August of 2021. *See* ECF 70-10 at 1-2.

Moreover, the various delays that Crete experienced with respect to scheduling the depositions are not solely attributable to evasive or obstructive tactics on the part of the non-parties. For instance, on August 8, 2021, Crete sent an email to counsel for Ted's Towing for the purpose of scheduling depositions for two officials of Ted's Towing. ECF 70-2 at 2-3. Counsel for Ted's Towing promptly responded, indicating that the witnesses could be available for a deposition in October 2021. *Id.* at 2. However, it appears that Crete did not reply, or otherwise seek to note a

deposition for these officials, for nearly one month. ECF 70-2 at 2.  By that time, counsel for Ted's Towing indicated that the date Crete had previously proposed to conduct these depositions was no longer available.  *Id.* at 1.  Thus, it is readily apparent that Crete's inability to complete discovery was, at least in part, a result of Crete's failure to promptly pursue discovery.

As stated earlier, Judge Copperthite did not err in ruling that Crete had failed properly to serve Mr. Flook or Mr. Morton with subpoenas for their respective depositions.  And, even if he had erred, this would not, on its own, constitute a basis to sustain Crete's objection with respect to Crete's requested extension.

In sum, I am persuaded that Crete failed to demonstrate good cause so as to warrant the requested 120-day extension.  And, I see no basis to find that Judge Copperthite's decision was clearly erroneous, contrary to law, or an abuse of discretion.  Accordingly, I shall deny the Extension Objection.

### C.  Reconsideration Objection

By Order of October 22, 2021 (ECF 80), Judge Copperthite denied Crete's motions to compel (ECF 75; ECF 77) as to documents it sought from Vinny's Towing and Morton Towing. *See* ECF 66-4; ECF 67-4.  In ECF 80, Judge Copperthite reasoned that the motions to compel were "duplicitous" and "address[ed] the same issues" as the Motions to Quash filed by Vinny's Towing and Morton Towing (ECF 66, ECF 67), discussed earlier.  Further, Judge Copperthite indicated that the motions to compel were untimely because "they were filed after the motions to quash and responses were filed."  *Id.*  Thereafter, Crete filed its Reconsideration Motion (ECF 86), which Judge Copperthite denied by Order of December 9, 2021. ECF 121.  In ECF 125, Crete has taken exception to ECF 121.

In the Reconsideration Objection (ECF 125), Crete argues that Judge Copperthite erred in his rulings with respect to the motions to compel because the motions addressed issues distinguishable from those presented by the Motions to Quash.  Specifically, Crete claims that the Motions to Quash pertained to the "**Deposition Notices** and the subpoenas accompanying same," whereas the motions to compel sought "production of documents in response to the **Records Subpoenas**[.]"  *Id.* at 2 (emphasis in original).  In addition, Crete contends that the motions to compel were not untimely because Fed. R. Civ. P. 45 "explicitly permits the filing of a Motion to Compel compliance with a subpoena at any time."  *Id.* at 7.  And, Crete asserts: "There is no limitation set forth in the Operative Scheduling Order (which has since been extended to permit discovery through February), precluding Crete from filing discovery motions after the discovery deadline . . . relating to records subpoenas served on Non-Parties within the discovery deadline." *Id.*

Morton Towing and Vinny's Towing maintain that Judge Copperthite did not err.  *See* ECF 128 (Morton Towing); ECF 129 (Vinny's Towing).  In particular, they contend that the motions to compel were duplicative of the Motions to Quash insomuch as the Motions to Quash necessarily implicated the issue of whether "Crete had waived its right to question [the relevant witness], or any other designee of [the relevant towing company], regarding information that would have been disclosed in the documents [the relevant towing company] had objected to producing."  ECF 128 at 5-6; ECF 129 at 5-6.

Stated differently, the non-parties maintain that the Motions to Quash concerned, among other issues, "whether Crete had waived its right to obtain at the October 8, 2021 deposition the information which [the towing company at issue] had previously objected to producing in its July 27, 2021 Objection to Subpoena for records, and for which Crete had failed to timely file a motion

to compel." ECF 128 at 5; ECF 129 at 5 (emphasis omitted).  Moreover, in responding to the Motions to Quash, "Crete addressed the issue of the waiver, and apparently chose to argue that the documents should be produced at the deposition, even though Crete had not [previously] filed a Motion to Compel." ECF 128 at 9; ECF 129 at 9.  And, according to Morton Towing and Vinny's Towing, Judge Copperthite "properly concluded that Crete had already addressed the waiver issue, and properly concluded that Crete's Motions were duplicitous and raised the same issues that Crete had raised in its Opposition to the Motion to Quash." ECF 128 at 9; ECF 129 at 9.

As to the timeliness of the Motions to Compel, Morton Towing and Vinny's Towing argue: "While Rule 45(d)(2)(B)(i) does not place a specific time limit on when a motion to compel must be filed, Crete was aware that the Court had issued a Scheduling Order which set a deadline for completion of discovery, which already had been extended to October 19, 2021 at the request of Crete." ECF 128 at 10; ECF 129 at 10.  Moreover, they point out that "Crete has not offered any reason or excuse as to why it did not timely challenge [the relevant towing company's] July 27, 2021 Objection to Subpoena for Records by filing a Motion to Compel within the extended time period for completion of discovery." ECF 128 at 10; *see* ECF 129 at 10 (arguing the same as to Vinny's Towing).

In my view, regardless of whether the motions to compel were duplicative of the Motions to Quash, the motions to compel were manifestly untimely.  Thus, I shall deny the Reconsideration Objection.

Crete served the Record Subpoenas on Vinny's Towing and Morton Towing on July 14, 2021. ECF 66-1 at 8; ECF 67-1 at 8.  Then, on July 27, 2021, Vinny's Towing and Morton Towing each served timely objections on Crete.  *See* ECF 66-5 at 6; ECF 67-5 at 6.  Yet, almost three months passed before Crete moved to compel;  the motions to compel were not filed until October

38

19, 2021 (*see* ECF 75; ECF 77), two days after the expiration of the then-operative discovery deadline. *See* ECF 32. Significantly, Crete has not offered any reason to excuse its delay in filing the motions to compel.

In assessing the timeliness of a motion to compel compliance with a request for discovery, "courts generally look[ ] to the deadline for completion of discovery . . . ." *Days Inn Worldwide, Inc. v. Sonia Invests.,* 237 F.R.D. 395, 396-97 (N.D. Tex. 2006) (collecting cases); *see Owen v. No Parking Today, Inc.*, 280 F.R.D. 106, 112 (S.D.N.Y. 2011) ("A party ordinarily must file a motion to compel *before* the close of discovery and if it fails to do so, the motion will be deemed untimely.") (emphasis in original); *Wellness Group, LLC v. King Bio, Inc.*, 1:12-cv-281, 2013 WL 5937722, at *1 (W.D.N.C. Nov. 4, 2013) ("Discovery motions such as motions to compel, motions to quash, or motions for protective orders seeking to limit the scope of discovery must be filed prior to the close of discovery"). And, "[u]ntimeliness is sufficient ground, standing alone, to deny a discovery motion." *KST Data, Inc. v. DXC Tech. Co.*, 344 F. Supp. 3d 1132, 1136 n.1 (C.D. Cal. 2018) (quotation marks and citation omitted). Indeed, a Scheduling Order "'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 375-376 (D. Md. 1999) (quoting *Gestetner Corp. v. Case Equipment Co.,* 108 F.R.D. 138, 141 (D. Me. 1985)).

As discussed above, Judge Copperthite's Order of October 26, 2021 (ECF 83), granted Crete a thirty-day extension for the limited purpose of allowing Crete to conduct the depositions of those witnesses who had been properly noticed prior to the expiration of the discovery deadline of October 19, 2021 (*i.e.*, witnesses from Sullivan, Automotive Support, and Mullens). And, by Order of November 24, 2021 (ECF 114) discovery was further extended. Affording the Order of November 24, 2021, the broad import that its terms might imply when read in isolation, the

extension embodied in ECF 114 was nonetheless granted after the motions to compel (ECF 75; ECF 77) had been filed, and after they were denied by Judge Copperthite. *See* ECF 80. The Order of November 24, 2021, did not transform untimely motions into timely ones.

Accordingly, because plaintiff did not move to compel Vinny's Towing and Morton Towing to comply with the Record Subpoenas until after the expiration of the operative discovery deadline (ECF 32), Judge Copperthite did not err, act contrary to law, or abuse his discretion in denying the Reconsideration Motion. On this basis, I shall deny the Reconsideration Objection.

### D. Ted's Objection

### 1.

Crete has objected (ECF 127) to Judge Copperthite's denial (ECF 123) of Crete's motion to compel (ECF 76) compliance with the Record Subpoena issued to Ted's Towing. The motion to compel was filed by Crete on October 21, 2021. Ted's Towing opposes the objection (ECF 131) and also asks the Court to award it the costs of litigating the objection. *Id.* at 6-7.

In his ruling, Judge Copperthite observed that Crete issued the relevant document subpoena on July 9, 2021, and Ted's Towing objected to the scope of that subpoena fourteen days later. ECF 123 at 1. Further, Judge Copperthite noted that Crete made no effort "to narrow the scope or resolve the dispute except to file the Motion to Compel on October 21, 2021." *Id.* And, in light of the fact that "[t]he discovery deadline closed on October 19, 2021," he found that the "Motion to Compel was filed after the discovery deadline and well after Crete knew of Ted's objections . . . ." *Id.* Thus, in Judge Copperthite's view, "Crete failed to comply with the requirements of Loc. R. 104.7 (D. Md. 2021) and failed to file the motion within the discovery deadline despite having ample opportunity to do so." *Id.*

Additionally, Judge Copperthite determined that Ted's Towing "successfully set forth facts to support its argument that the burden on [it] far outweigh[ed] the benefits from obtaining the discovery, which [was] speculative at best." ECF 123 at 3. In particular, he observed that Ted's Towing "possesses approximately 82,500 invoices, each of which may take three minutes to review." *Id.* Thus, compliance with the Record Subpoena would require "more than 4,000 hours of employee time to complete." *Id.* (citing ECF 107 at 8); *see* ECF 76-2 at 9-12 (Protani Declaration).

In its objection, Crete points out that Judge Copperthite previously granted the Automotive/Mullens Order (ECF 65), which required two other towing companies to comply with identical document subpoenas. ECF 127 at 9-11. Thus, in Crete's view, Judge Copperthite could not have reasonably determined that the identical document subpoena was overly burdensome as to Ted's Towing. *Id.* at 11.

The position is without merit. As Ted's Towing indicates, Crete's bald assertion ignores that the Automotive/Mullens Order, and the motions practice that preceded it, "did not involve Ted's Towing or the specific, detailed evidence regarding the potential burden that Ted's Towing provided in support of its Subpoena Objection." ECF 131 at 5-6. Indeed, although the Record Subpoenas were identical, it does not necessarily follow that the cost of compliance for each towing company is the same. To that end, it is plain that the Protani Declaration (ECF 76-2 at 9-12) provided considerable detail concerning the cost of compliance for Ted's Towing, particularly as compared to the affidavits supporting the motions to quash filed by Automotive Support and Mullens. *See* ECF 48-2; ECF 49-2.

Crete also argues that the cost of compliance proffered by Ted's Towing "is not credible on its face." ECF 127 at 11. Specifically, it maintains that "the position in the Protani declaration

that Ted's would have to sort through 82,5000 invoices to respond to the Subpoena seeking information over a 5 year period means that Ted's would have to perform on average 45 tows per day, every day, for five years." ECF 127 at 11. And, Crete states: "In requesting information from Sullivan's, Ted's,[13] and Automotive Support for the same time period, those parties produced a **total** of 66 invoices." *Id.*

At bottom, this argument asks the Court to disturb Judge Copperthite's ruling because the record on which it relies strikes Crete as implausible, in light of the number of responsive documents produced by other towing companies. But, the number of responsive documents produced by other towing companies does not pertain to Ted's Towing.

More to the point, Crete's contention amounts to no more than pure conjecture. Indeed, it is striking to the Court that Crete does not offer any factual basis to support the insinuation that Ted's Towing has supplied the Court with inaccurate information. Such a naked assertion is plainly insufficient to demonstrate that Judge Copperthite clearly erred by crediting the evidence presented to him.

In addition, Crete claims, without citation to legal authority, that "[e]ven assuming the number of invoices referenced in the Protani declaration were accurate, the proper remedy under the circumstances is . . . [to] limit[ ] the temporal scope of the Subpoena to alleviate the potential burden to Ted's and/or shifting the cost of the burden to Crete." ECF 127 at 11. To that end, Crete offers that it is "ready, willing and able to assist in any way with the sorting and production of the responsive documents to alleviate any concerns regarding timing of production of responsive documents or financial burden associated with same.[ ]" *Id.*

---

[13]   The reference to Ted's is probably a typo; presumably Crete meant to refer to Mullens, the other non-party that was forced to produce documents in response to a subpoena served on it by Crete. *See* ECF 65.

In short, I see no basis to find that Judge Copperthite committed clear error, acted contrary to law, or abused his discretion by refusing to compel Ted's Towing to comply with a modified version of the document subpoena. Moreover, as stated above, the federal rules make clear that the party or attorney seeking to serve a subpoena has the responsibility to do so in a way that avoids imposing an undue burden or expense. Fed. R. Civ. P. 45(d)(1). Adopting Crete's position would be tantamount to shifting this responsibility onto Judge Copperthite. I decline to do so.

Moreover, as stated above, a party may not move to compel a discovery response after the close of discovery. *See Days Inn Worldwide, Inc.,* 237 F.R.D. at 396-97. For reasons that remain entirely opaque to the Court, Crete did not move to compel compliance with the subpoena in the eighty-eight days that elapsed between plaintiff's receipt of objections to the subpoena lodged by Ted's Towing and the expiration of the then-governing discovery deadline. Nor has plaintiff offered any reason to excuse its delay. And, as discussed above, even if ECF 114 were read to extend all discovery, it did not retroactively render timely a motion that was untimely at the time it was filed.

Judge Copperthite also found that Crete failed to satisfy the requirements of Local Rule 104.7 before lodging the motion to compel as to Ted's Towing. ECF 123 at 1. The rule is titled "Conference of Counsel Required," and states, Local Rule 104.7:

> Counsel shall confer with one another concerning a discovery dispute and make sincere attempts to resolve the differences between them. The Court will not consider any discovery motion unless the moving party has filed a certificate reciting (a) the date, time, and place of the discovery conference, and the names of all persons participating therein, or (b) counsel's attempts to hold such a conference without success; and (c) an itemization of the issues requiring resolution by the Court.

In its motion (ECF 76), Crete filed a "Certificate Of Compliance With Rule 37" in the motion. *Id.* at 15.[14]  Crete stated, *id.*:

> Undersigned counsel hereby certifies that she made good faith efforts to resolve the discovery dispute that is the subject of the instant motion. Specifically, undersigned counsel had a telephone call on July 14, 2021 to discuss the Subpoena and subsequently sent correspondence by e-mail on August 8, 2021, September 4, 2021 and September 8, 2021. In response to these e-mails, Ted's stated it would "stand on its objections."

Judge Copperthite reasonably determined that these efforts were insufficient to satisfy Local Rule 104.7.  Notably, Ted's Towing objected to the document subpoena on July 23, 2021. *See* ECF 76-2.  Crete's counsel responded by sending an email to counsel for Ted's Towing on August 8, 2021, which sought availability to discuss the objections.  ECF 76-4 at 2-3.  Soon thereafter, counsel for Ted's Towing replied, indicating that it would confer with Crete's counsel by the end of the week.  *Id.* at 2.  But, there is no indication that the conference materialized.

Nonetheless, counsel for Crete did not follow up until September 4, 2021.  *Id.*  At that time, Crete's counsel asked only whether Ted's Towing would comply with the document subpoena, in light of the Automotive/Mullens Order.  *See id.* at 2.  Counsel for Ted's Towing responded: "At this time, Ted's will stand on its objections."  *Id.* at 1.  Thereafter, and apparently without any further discussion with counsel for Ted's Towing, Crete moved to compel on October 21, 2021. *See* ECF 76.

As Judge Copperthite noted (ECF 123 at 1), Crete's counsel did not attempt to narrow the scope of the document subpoena, offer to share the cost of compliance, or otherwise facilitate the resolution of the differences in position between Crete and Ted's Towing with respect to the

---

[14] Like Local Rule 104.7, Fed. R. Civ. P. 37(a)(1) requires that a party who moves for an order compelling discovery "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."

document subpoena.  On this record, Judge Copperthite reasonably concluded that counsel did not

engage in "sincere attempts" to resolve a discovery dispute, as contemplated by Local Rule 104.7.

Thus, I shall deny the Ted's Objection.

## 2.

As mentioned, Ted's Towing asks the Court to award it the "fees and costs associated with

responding" to the Ted's Objection.  ECF 131 at 7.  Ted's Towing argues that Judge Copperthite

reasonably denied the motion to compel because it "was untimely and because it failed to present

any factual support."  *Id.*  Thus, in its view, the Ted's Objection was not "substantially justified,"

and the Court should "require that Plaintiff pay Ted's Towing's fees and costs associated with

responding to Plaintiff's Objection."  *Id.*

 In response, Crete states: "'[T]he underlying Motion and ECF 124 are meritorious.  Crete

has outlined . . . the factual support in the record for its arguments that Magistrate Copperthite

erred in determining that Crete did not comply with the Local Rules, that Crete's Motion was

untimely and that the ruling in ECF 123 is not supported by the record[.]"  ECF 139 at 6. [15]  Thus,

in Crete's view, "[t]he issues before the court in ECF 124 are bona fide disputes that a reasonable

person could think is correct and the arguments in ECF 124 have a reasonable basis in law and

fact."  *Id.* (internal quotation marks omitted).

Fed. R. Civ. P. 37(a)(5) governs the payment of expenses related to motions to compel

discovery.  Relevant here, Rule 37(a)(5) provides:

> (B) *If the Motion is Denied.*  If the motion is denied, the court may issue any
> protective order authorized under Rule 26(c) and must, after giving an opportunity
> to be heard, require the movant, the attorney filing the motion, or both to pay the
> party or deponent who opposed the motion its reasonable expenses incurred in

---

[15] ECF 124 contains Judge Copperthite's Order of December 17, 2021, in which he granted
the Supplemental Motion to Compel.  Thus, the import of Crete's repeated references to ECF 124
in this context is not immediately apparent to the Court.

opposing the motion, including attorney's fees.  But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

"A motion is substantially justified if 'a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.'"  *Hare v. Comcast Cable Commc'n Mgmt., LLC*, 564 F. App'x 23, 24 (4th Cir. 2014) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565-66 n.2 (1988)); *see also CoStar Realty Info., Inc. v. Field*, 737 F. Supp. 2d 496, 515 (D. Md. 2010) ("An individual's conduct is found to be 'substantially justified' if it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'" (citation omitted)).

Several courts have found that a court may award costs and attorney fees to a prevailing party in a discovery appeal under the authority granted to the court by Rule 37(a)(5).  *See*, *e.g.*, *Lawson v. Spirit Aerosystems, Inc.*, 18-1100-EFM, 2021 WL 4844058, at *6-7 (D. Kan. Oct. 18, 2021); *V5 Tech., LLC v. Switch, LTD*, 2:17-cv-2349-KJD-NJK, 2020 WL 1042515, at *2 (D. Nev. Mar. 3, 2020); *Chung v. Lamb*, 14-cv-03244-WYK-KLM, 2018 WL 7141325, at *2 (D. Colo. Jun. 7, 2018); *MAS, Inc. v. Nocheck, LLC*, 10-cv-13147, 2011 WL 1135367, at *4 (E.D. Mich. Mar. 28, 2011).  This is because "'[t]he purposes underlying Rule 37(a)'s fee-shifting provision would be thwarted by not awarding attorneys' fees incurred in opposing a Rule 72(a) objection to an order [resolving] a motion to compel.'"  *City of Las Cruces v. United States*, 17-809 JCH/GBW, 2022 WL 704123, at *9 (D.N.M. Mar. 9, 2022) (quoting *Marrocco v. Hill*, 291 F.R.D. 586, 590 (D. Nev. 2013) (second alteration in *City of Las Cruces*)).  Moreover, Crete has not opposed the request for costs and attorneys' fees on the ground that Rule 72 does not permit such an award.

As I see it, Judge Copperthite properly denied the motion to compel as to Ted's Towing. But, the issues raised therein were not so far from doubt such that I am persuaded that Crete acted

without substantial justification in bringing the Ted's Objection.   Indeed, in light of the Automotive/Mullens Order, Crete could have plausibly, if erroneously, believed that it was also entitled to an Order requiring Ted's Towing to provide it with the same discovery as was ordered in regard to Automotive Support and Mullens.

Moreover, Ted's Towing has not submitted any evidence establishing the costs it expended in litigating the Ted's Objection.   The format is specified by the Local Rules.   *See* Local Rule 109.1(b); *see also* Local Rule, App'x B.

In sum, I am persuaded that Crete acted with reasonable justification in filing the Ted's Objection.   Thus, I shall deny the request of Ted's Towing for costs associated with litigating the Ted's Objection.

## E.  Supplemental Objection

Crete filed the Supplemental Motion to Compel on November 24, 2021.  ECF 115.  Judge Copperthite granted the motion by Order of December 17, 2021.  ECF 124.  Sullivan has objected to that Order.  *See* ECF 126.

In his Order of December 17, 2021 (ECF 124), Judge Copperthite recognized that "Crete served written discovery upon Sullivan" on July 19, 2021, and Sullivan responded on August 25, 2021.  Thereafter, on October 2, 2021, Crete sent a letter to Sullivan, "outlining areas Crete argued were deficient."  *Id.*  And, on October 17, 2021, "Sullivan responded by email that they were 'continuing to work on supplementing the written discovery responses . . . .'"  *Id.* (quoting ECF 115-6).

As mentioned earlier, Judge Copperthite also observed that by Order of November 24, 2021 (ECF 114),  the discovery deadline was extended to February 3, 2021.  In light of that Order, Judge Copperthite found that the Supplemental Motion to Compel, which was submitted on

November 24, 2021, was timely filed. ECF 124. And, Judge Copperthite said: "It is also clear that Crete relied in good faith on Sullivan's representations that they were continuing to respond to the written discovery." *Id.* Accordingly, he found that "Crete made good faith efforts to obtain the deficient discovery, and Sullivan did not respond," and therefore "there is a sufficient factual basis for the [Supplemental] Motion to Compel." *Id.*

Sullivan maintains that the Supplemental Motion to Compel should have been denied on the ground that it was untimely. In particular, Sullivan notes that, in consenting to the filing of the Joint Motion, it did not agree to a reopening of all discovery. ECF 126 at 2. Rather, it agreed only to an extension of discovery for the limited purpose of allowing Crete to complete the depositions of those witnesses whose depositions were timely noticed prior to the discovery deadline. *Id.* Thus, Sullivan contends that because the Supplemental Motion to Compel was not filed until after the expiration of the discovery deadline of October 19, 2021, it should be denied as untimely. *Id.*

In addition, defendant argues that Judge Copperthite's ruling "was based on a misunderstanding of other communications." *Id.* With respect to defense counsel's email of October 17, 2021, Sullivan stresses that it had previously "provided its responses [to Crete's discovery request] in August," and thereafter "a vague statement was provided in an email that Sullivan would be working on supplementing some responses . . . ." *Id.* In Sullivan's view, "[t]his statement should in no way have been construed to mean that [Sullivan] was relenting to those requests which it objected to." *Id.*

Crete rejects Sullivan's characterization of the events preceding the filing of the Supplemental Motion to Compel. It points out that Judge Copperthite "extend[ed] discovery for a period of 30 days to permit Crete to depose Defendant's corporate designee, Defendant's employees, and numerous other third party witnesses . . . ." ECF 130 at 4. Further, with respect

48

to the Joint Motion, Crete states: "Defendant had the opportunity to revise [the Joint Motion] (including the proposed Order), and took advantage of that opportunity" by including an "express statement that Defendant was not in agreement to any discovery referred to in ECF 83, other than for Defendant." *Id.* (emphasis omitted).  Thus, in Crete's view, "there is no doubt that the Court was well aware of the extension of the discovery deadline and events leading thereto." *Id.*

Moreover, Crete asserts that granting the Supplemental Motion to Compel was warranted because Sullivan had represented to Crete that it was going to file supplemental discovery in response to the Deficiency Letter. *Id.* at 5.  To that end, Crete points out that Judge Copperthite "considered the information before the Court, including Defendant's response to Crete's deficiency letter, and properly granted Crete's Motion." *Id.*  As Crete sees it, "Defendant's argument regarding how its response to Crete's deficiency letter should have been construed . . . does not support the requested denial of Crete's Motion." *Id.*

With respect to Sullivan's claim that the Supplemental Motion to Compel was untimely, Judge Copperthite relied on the plain text of the Order found at ECF 114.  Notably, the Joint Motion (ECF 113) included as a proposed order (ECF 113-1) what culminated in ECF 114.  In the Joint Motion, the parties outlined challenges in deposing Sullivan's representatives.  And, of import here, the Joint Motion made clear that Sullivan was "not in agreement to extend any discovery referred to in ECF 83, other than for Defendants as enumerated above."  ECF at 113 at 3.  Thus, in my view, ECF 114 granted the Joint Motion to the extent that the parties agreed, *i.e.*, for the limited purpose of allowing the parties to complete the outstanding depositions of "Defendant's corporate designee" and the "depositions of Defendant's President and Vice president . . . ." *Id.*  All other discovery concluded on October 19, 2021.  *See* ECF 32.

49

Given the statements in the underlying Joint Motion (ECF 113), ECF 114 was not intended by me as an open-ended extension of all discovery through February 3, 2022. But, this would not have been apparent to Judge Copperthite, given the text of ECF 114. And, Sullivan does not explain why or how it joined in the submission of a proposed order (ECF 113-1), in which, by its terms, discovery was extended to February 3, 2022. If the phraseology in ECF 114 was not what Sullivan meant or intended, it should not have agreed to that Order, which was jointly submitted to the Court for signature. *See* ECF 113-1.

In any event, I am persuaded that Judge Copperthite correctly determined that Crete's delay in filing the Supplemental Motion to Compel was attributable to Sullivan and therefore excusable. In particular, on October 17, 2021, *i.e.*, prior to the governing discovery deadline, Sullivan expressly represented to Crete that it was working on supplementing its written discovery responses. ECF 124; *see* ECF 115-6 ("We are continuing to work on supplementing the written discovery responses as you requested."). Given this communication, Judge Copperthite soundly reasoned that Crete's failure to move to compel prior to the end of discovery was induced by Sullivan's representation that it would comply with Crete's request. ECF 124; *cf. Armenian Assembly of American, Inc. v. Cafesjian*, 692 F. Supp. 2d 20, 56 (D.D.C. 2010) (explaining that a motion to compel filed ten days after the close of discovery was nonetheless timely because defendants did not respond to the plaintiffs' request for production of documents until the day before discovery closed, "and therefore [the plaintiffs] were not able to assess the extent of Defendants' production and file their motion to compel until after the discovery deadline").

Sullivan also urges the Court to consider that "Crete was denied its motion to compel Morton's towing [sic] to produce on subpoena the same things that it is seeking from Sullivan, which Sullivan had properly objected to, with this Honorable Court considering and taking note

of the extremely immense amount of material being sought, the boundless fishing expedition being sought, with the costs of time and expense well outweighing the probative value."  ECF 126 at 3. To the extent that Sullivan means to assert that the Court should sustain the Supplemental Objection in light of the fact that the Court denied the motions to compel as to Morton Towing and Vinny's Towing, I disagree.

As Crete rightly points out (ECF 130 at 6), Judge Copperthite did not consider the merits of these motions; he found them duplicative and untimely.  *See* ECF 80.  Moreover, these motions concerned the potential burden imposed by the Record Subpoenas on non-parties, whereas the Supplemental Motion to Compel pertained to discovery from a party to the suit.  Thus, even if the motions to compel as to Morton Towing and Vinny's Towing had been resolved on the merits, the resulting Order would not necessarily have been dispositive of the Supplemental Motion to Compel.

In sum, I am persuaded that Judge Copperthite's decision to grant the Supplemental Motion to Compel was not clearly erroneous, contrary to law, or an abuse of discretion.  Accordingly, I shall deny the Supplemental Objection.

### F.  Expert Objection

Crete has objected (ECF 164) to Judge Copperthite's Order of March 8, 2022 (ECF 163), denying the Expert Motion.  *See* ECF 145.  In reaching this conclusion, Judge Copperthite examined a wide array of federal and Local Rules, including Fed. R. Civ. P. 26 and 30, Guideline 3 of Appendix A to the Local Rules, and Local Rule 104.11(a).  He found an implicit requirement that a party who seeks to depose an expert witness must "provid[e] notice that the individual is being deposed" in that capacity.  ECF 163 at 1.

Judge Copperthite determined that "Crete served Mr. Sullivan with two subpoenas to provide deposition testimony"—as Sullivan's Rule 30(b)(6) designee and in his personal capacity. ECF 163 at 1.  But, Crete did not provide any notice that it sought to depose Mr. Sullivan in his capacity as an expert witness.  *Id.*[16]  Judge Copperthite also explained that "Crete's argument that Mr. Sullivan was obligated to answer questions as an expert witness despite his stated objections is without merit," because "Mr. Sullivan did not receive notice to testify as an expert, so deposing him as an expert witness was improper."  *Id.* at 2.  Accordingly, in Judge Copperthite's view, "Mr. Sullivan was not under any obligation to answer questions as an expert witness.[ ]"  *Id.*

Crete maintains that Judge Copperthite's finding was clearly erroneous and contrary to law because there is no implicit requirement that it was "required to provide 'specific notice' to Mr. Sullivan, a designated expert, that [he] would be asked questions regarding his expert opinions." ECF 164 at 8-9 (quoting ECF 163 at 1).  Crete claims: "The rules only require that a deponent be given written notice of the time and place of the deposition."  ECF 164 at 9.  Further, Crete argues that Judge Copperthite's decision "effectively gut[ted] long standing and well-established precedent regarding the presumptive invalidity of providing an instruction not to answer and ignore[d] the plain text of the Federal Rules."  *Id.* at 8.

In response, Sullivan, echoing Judge Copperthite, contends: "To expect a witness situated like Mr. Sullivan—as corporate designee and Defendant's President to appear for deposition testimony as an expert witness without notice is nonsensical, an ambush at best."  ECF 165 at 1. According to Sullivan, "an expert witness would not know to prepare for their expert testimony or request a reasonable fee" without proper notice.  *Id.*  Thus, "[w]ithout proper notice to testify as

---

[16] As mentioned above, Mr. Sullivan is Wayne Sullivan, Sr.  *See* ECF 145-7 at 2; ECF 70 at 2.

an expert, Mr. Sullivan was not under any obligation to answer questions as an expert witness." ECF 165 at 2.

Fed. R. Civ. P. 30 governs the procedural requirements surrounding depositions by oral examination. In particular, the requirements for notices of depositions are enumerated in Rule 30(b)(1). This subsection provides: "A party who wants to depose a person by oral questions must give reasonable written notice to every other party" that "state[s] the time and place of the deposition and, if known, the deponent's name and address."

Additionally, as Judge Copperthite noted, Rule 26(b)(4) is pertinent here. In subsection (A), it states: "A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided." And, Rule 26(a)(2)(B) states: "Unless otherwise stipulated or ordered by the court, [the disclosure of an expert witness] must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony."[17]  Rule 26(b)(4)(E) is also relevant. It provides, in part: "Unless manifest injustice would result, the court must require that the party seeking

---

[17] The parties do not indicate whether they stipulated that Mr. Sullivan was excused from submitting a report to accompany the Disclosure. But, the Disclosure indicates that Mr. Sullivan intends to testify "consistent with his report." ECF 145-16 at 2.

Nonetheless, the parties have not provided the Court with a copy of this report, or otherwise indicated whether Mr. Sullivan had made this report available to the parties prior to his deposition. Accordingly, it is not readily apparent whether Crete's counsel could have deposed Mr. Sullivan in his capacity as an expert witness, in compliance with Rule 26(b)(4)(A). Nonetheless, Sullivan did not object to the propriety of the deposition on this ground. Nor did Judge Copperthite consider the issue in resolving the Expert Motion.

discovery . . . pay the party a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D)".

The Court's Local Rules are also of import.  Subsection (a) of Guideline 3 of Appendix A states: "Unless counsel agree that each party will pay its own experts, the party taking an expert witness's deposition ordinarily pays the expert's fees for the time spent in deposition and related travel."  *See also* Local Rule 104.11(a) (providing the same).  In contrast, under Local Rule 104.11(a), "[t]he fee charged by the expert for time spent preparing for the deposition shall be paid by the party designating the expert."

In considering the interplay between the rules, Judge Copperthite found that "providing notice that the individual is being deposed as an expert witness is implicit in both the federal and local rules."  ECF 163 at 1.  First, he pointed out that under Rule 26(b)(4)(E) and Guideline 3 of Appendix A to the Local Rules, "Crete would ordinarily have been required to pay Mr. Sullivan 'a reasonable fee' for his time in the deposition."  *Id.*  Accordingly, Judge Copperthite reasoned that "Mr. Sullivan and counsel for Sullivan would need to know Mr. Sullivan was being deposed as an expert to ensure he received a 'fair and reasonable fee' for his time spent at this deposition." *Id.* at 2.  Further, Judge Copperthite said: "To expect a witness situated like Mr. Sullivan—as corporate designee and Defendant's President—to appear for deposition testimony as an expert witness without notice is nonsensical; expert witnesses would not know to prepare for their expert testimony or to request a reasonable fee." *Id.*

Notably, there is no indication in any of the deposition notices for Mr. Sullivan that Crete intended to depose him in his capacity as an expert witness.  *See*, *e.g.*, ECF 145-2 (Subpoena and Notice as to Sullivan's Rule 30(b)(6) designee); ECF 145-3 (Subpoena and Notice as to Mr. Sullivan in his individual capacity).  Crete objects to Judge Copperthite's ruling on the ground that

the relevant rules do not expressly require a notice indicating that a party seeks to depose a witness in his capacity as an expert witness.  *See* ECF 164 at 8-13.  But, Crete does not point to any authority that suggests Judge Copperthite's interpretation of the aforementioned Rules is clearly erroneous, contrary to law, or an abuse of discretion.  And, the Court has not identified any such authority through its own efforts.  Further, as I see it, Judge Copperthite's construction of the relevant federal and Local Rules, so as to require a party to expressly notice its intention to depose a witness in his or her capacity as an expert, is not an unreasonable one.[18]

Crete also appears to argue that Judge Copperthite erred by denying the Expert Motion because, in effect, the decision condoned Sullivan's instruction to Mr. Sullivan to refrain from answering Crete's questions.  *Id.* at 8.

Indeed, it is generally improper to instruct a witness not to answer questions during depositions.  *See* Rule 26(b)(1); *Ralston Purina Co. v. McFarland,* 550 F.2d 967, 973 (4th Cir.1977).  However, under Fed. R. Civ. P. 30(c)(2), there are three circumstances in which a lawyer may instruct a witness not to answer at a deposition: protection of a privilege; enforcement of a judicial limitation on evidence; or in anticipation of a motion for protective order barring questions presented in bad faith, or to embarrass, annoy, or harass the deponent.  Guideline 6(b) of Appendix A to our Local Rules states: "[I]t is presumptively improper for an attorney to make objections which are not consistent with Fed. R. Civ. P. 30(c)(2)."  Further, it provides that objections should be stated so as to avoid coaching the deponent and "to minimize interruptions in the questioning of the deponent . . . ."  *Id.*

In this case, Sullivan did not object to the questions posed by Crete to Mr. Sullivan to protect a privilege; the Court placed no limitation on Crete's ability to depose Mr. Sullivan as an

---

[18] At the very least, such a notice is consistent with the custom and practice in this District.

expert witness; and Sullivan did not file a motion with the Court to preclude Crete from questioning Mr. Sullivan as to his expert opinions.

Arguably, defense counsel's instruction did not fall within the circumstances outlined above. On the other hand, Crete ambushed Sullivan by attempting to question Mr. Sullivan as an expert, without notice. Therefore, defendant was hardly in a position to pursue any protective measures prior to the deposition.

As explained above, I am persuaded that Judge Copperthite did not commit clear error or abuse his discretion in finding that Crete failed to notice its intention to depose Mr. Sullivan in his capacity as an expert witness. Therefore, Crete's attempt to question Mr. Sullivan about his expert opinions was objectionable. And, it was understandable that Sullivan's counsel sought to preclude Crete's counsel from flouting the rules by instructing the witness not to answer. The witness had no opportunity to request or obtain a reasonable fee, as contemplated by Rule 26(b)(4)(E) and the Local Rules. And, even if a court were to later rule that Crete's conduct was improper, the damage could not be fully undone; Crete would have heard the answers, to which it was not entitled. Thus, I shall deny the Expert Objection.

However, given the unusual circumstances attendant here, and in the exercise of my discretion, I shall grant Crete its request (ECF 166 at 3) for an opportunity to serve an amended notice and subpoena for the deposition of Mr. Sullivan as an expert witness, compliant with the requirements as set forth in Judge Copperthite's Order of March 8, 2022 (ECF 163). Said deposition must be completed within 28 days of the date of docketing of the attached Order.

## IV.    Conclusion

In light of the foregoing, I shall deny the Objections. And, I shall deny Ted's Towing its request for costs associated with litigating the Ted's Objection.

I shall grant Sullivan 21 days from the date of docketing of the attached Order to supply Crete with the supplemental discovery material sought in ECF 115.

Further, I shall grant Crete 28 days from the date of docketing of the attached Order to serve Mr. Sullivan with an amended notice of deposition that complies with the requirements set forth in ECF 163, and to complete the deposition.

Accordingly, I shall also extend the deadline for the parties to file dispositive motions, if any, until June 3, 2022.

An Order follows, consistent with this Memorandum Opinion.

Date: April 21, 2022                                             /s/
                                                          Ellen L. Hollander
                                                          United States District Judge